## Case No. 23-3874

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

———

GARRY MATTHEWS; DOMINIC ROSS HUNN; JAMAR HEARNS,
individually and as class representatives,,
*Plaintiffs-Appellants,*

v.

CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT;
LOS ANGELES BOARD OF POLICE COMMISSIONERS,
*Defendants-Appellees.*

———

*Appeal from the United States District Court for the Central District of California (Los Angeles),
Case No. 2:22-cv-02944-FLA-PD · Honorable Fernando L. Aenlle-Rocha, District Judge*

## APPELLANTS' OPENING BRIEF

WILLIAM C.C. CLAIBORNE III
**CLAIBORNE LAW**
717 D Street NW, Suite 300
Washington, D.C. 20004
Telephone: (202) 824-0700
claibornelaw@gmail.com

*Attorney for Plaintiffs and Appellants,
Garry Matthews, Dominic Ross Hunn
and Jamar Hearns, individually and as
class representatives*

 

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ............................................................................... 1

JURISDICTIONAL STATEMENT ...................................................... 5

STATEMENT OF THE ISSUES FOR REVIEW .................................. 5

STATEMENT OF THE CASE ............................................................. 7

SUMMARY OF THE ARGUMENT .................................................. 14

ARGUMENT ................................................................................... 15

I.      Standard of Review ................................................................. 15

II.     The City Defendants violated Plaintiffs' Second Amendment rights by adopting and implementing a policy of a total ban on carriage of handguns in public and enforcing it against Plaintiffs ....................................... 16

      A.     The State of California has a regulatory scheme under which it prohibits open carry of handguns but allows concealed carry of handguns for persons who have a CCW issued at the discretion of the local licensing authority, the sheriffs of counties and the police chiefs of cities ............................................. 17

      B.     California has a regulatory scheme which prohibits open carry of handguns but allows concealed carry of handguns for persons who have a CCW issued by the chief of the municipality where they live ............................................. 18

      C.     California delegates unfettered discretion to Police Chiefs to issue or to deny CCWs for cities ......................................... 19

      D.     The Chief acting pursuant to the City Defendants' policies exercised his discretion to grant or to deny CCWs to refuse to issue CCWs ............................................................. 21

           1.     The City Defendants' "no-issue" CCW policy ............ 22

           2.     Plaintiffs challenged gun policy in *toto*, not just the City Defendants' definition of the "good cause" provision ................. 26

           3.     The City Defendants' and the Chief's CCW polices amounted to municipal policies under *Monell* ............ 26

i

4.    LAPD's enforcing the concealed carry prohibitions in Los Angeles as a total ban on the carriage of handguns in public was a municipal policy not a state policy because the concealed carry prohibitions and the exemptions made the statutes a prohibition on carrying a concealed handgun without a CCW, not a total ban on the carriage of handguns in public .........................................................................27

5.    The City Defendants' enforcement of the California statutes banning carriage of handguns in public against Plaintiffs and putative class members as implemented by them was a municipal policy that violated Plaintiffs' Second Amendment rights ..............................................30

6.    The City Defendants are liable under *Monell* for enforcing their unconstitutional municipal policy against Plaintiffs ...........36

7.    Plaintiffs and putative class members did not need to apply for CCWs to establish standing to bring this lawsuit ..................39

III.   The City Defendants violated Mr. Matthews's Fourteenth Amendment Right To Travel by adopting and implementing a policy of a total ban on carriage of handguns in public and enforcing it against Plaintiffs....................44

IV.    CONCLUSION.................................................................................45

CERTIFICATE OF COMPLIANCE.......................................................47

ADDENDUM OF STATUTORY AUTHORITIES

# TABLE OF AUTHORITIES

**CASES**                                                              **Page(s)**

*Amnesty Am. v. Town of W. Hartford,*
    361 F.3d 113 (2d Cir. 2004) ...........................................................38

*Ashcroft v. Iqbal,*
    556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ...........................15

*Baker v. Kealoha,*
    679 Fed. Appx. 625 (9th Cir. 2017) ................................................42

*Bd. of Comm'rs of Bryan Cty. v. Brown,*
    520 U.S. 397 (1997)..............................................................37, 38

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...........................15

*Birdt v. San Bernardino Sheriff's Dep't,*
    2014 U.S. Dist. LEXIS 80482 ((C.D. Cal. 2014)...........................20, 26, 27

*Birdt v. San Bernardino Sheriff's Dep't,*
    2014 U.S. Dist. LEXIS 81126 (C.D. Cal. 2014) ....................................20

*Brewster v. City of Los Angeles,*
    2019 U.S. Dist. LEXIS 225770, 2019 WL 7707886
    (C.D. Cal. July 29, 2019)........................................................27, 28

*Caltex Plastics, Inc. v. Lockheed Martin Corp.,*
    824 F.3d 1156 (9th Cir. 2016).......................................................16

*Castro v. Cty. of L.A.,*
    833 F.3d 1060 (9th Cir. 2016).......................................................13

*Cooper v. Dillon,*
    403 F.3d 1208 (11th Cir. 2005)......................................................30

*Davis v. City of Los Angeles,*
    No. B241631 (Cal. Ct. App. Opinion Oct. 14, 2014) (unpublished)................25

*Desert Outdoor Advertising v. City of Moreno Valley,*
    103 F.3d 814 (9th Cir. 1996)...............................................40, 41, 42, 43, 44

*District of Columbia v. Heller,*
    554 U.S. 570 (2008).............................................................*passim*

*Evers v. County of Custer,*
    745 F.2d 1196 (9th Cir. 1984)....................................................13, 29

iii

*Fitzpatrick v. City of Los Angeles,*
  2023 U.S. Dist. LEXIS 17220 (C.D. Cal. 2013) ................................................28

*Gifford v. City of L.A.,*
  88 Cal.App.4th 801 (Cal. 2001) ..................................................................19

*Grossman v. City of Portland,*
  33 F.3d 1200 (9th Cir. 1994).................................... 12, 13, 16, 37, 38, 40, 41

*Harper v. Va. Dep't of Taxation,*
  509 U.S. 86 (1993)......................................................................................12

*Lemus v. Lynch,*
  842 F.3d 641 (9th Cir. 2016).......................................................................12

*Lowry v. City of San Diego,*
  858 F.3d 1248 (9th Cir. 2017)......................................................................13

*Mann v. Cty. of San Diego,*
  907 F.3d 1154 (9th Cir. 2018)................................................................13, 37

*McDonald v. Chicago,*
  561 U.S. 742 (2010)......................................................................................9

*Monell v. Department of Social Services of the City of New York,*
  436 U.S. 658 (1978).............................................................13, 16, 36, 37, 38

*N.Y. State Rifle & Pistol Ass'n v. Bruen,*
  597 U.S. 1 (2022).................................................................................*passim*

*N.Y.S. Rifle & Pistol Ass'n, Inc. v. Bruen,*
  142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022).............................................12, 40

*Nat'l R.R. Passenger Corp. v. Morgan,*
  536 U.S. 101 (2002)....................................................................................45

*Nelson v. City of L.A.,*
  2015 U.S. Dist. LEXIS 195190 (C.D. Cal. June 15, 2015)............................8

*Owen v. City of Independence,*
  445 U.S. 622 (1979)...............................................................................12, 13

*Pembaur v. City of Cincinnati,*
  475 U.S. 469 (1986)....................................................................................36

*Peruta v. Cnty. of San Diego,*
  824 F.3d 919 (9th Cir. 2016)...................................................................19, 21

*Safari Club Int'l v. Jewell,*
  842 F.3d 1280 (D.C. Cir.2016). ...................................................................44

*Sanchez v. Young Cty.*,
　956 F.3d 785 (5th Cir. 2020), *cert. denied*,
　141 S. Ct. 901 (2020) ......................................................... 30

*Sandoval v. Cty. of Sonoma*,
　912 F.3d 509 (9th Cir. 2018) ........................................ 29, 38

*Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*,
　788 F.2d 600 (9th Cir. 1986) ............................................. 8

*Shuttlesworth v. Birmingham*,
　394 U.S. 147 (1969) ..................................................... 12, 40

*Skilstaf, Inc. v. CVS Caremark Corp.*,
　669 F.3d 1005 (9th Cir. 2012) .......................................... 15

*Smith v. District of Columbia*,
　568 7 F. Supp. 3d 55 (D.D.C. 2021) ................................... 35

*Soldal v. Cook County*,
　506 U.S. 56 (1992) ........................................................... 44

*Streit v. Cnty. of L.A.*,
　236 F.3d 552 (9th Cir. 2001) ............................................. 8

*Taniguchi v. Schultz,*
　303 F.3d 950 (9th Cir. 2002) ............................................ 43

*United States v. Blizzard*,
　27 F.3d 100 (4th Cir. 1994) .............................................. 45

*United States v. Denton*,
　611 F.3d 646 (9th Cir. 2010) ............................................ 11

*United States v. Perez-Garcia*,
　96 F.4th 1166 (9th Cir. 2024) ................................... 9, 32, 33

*Vives v. City of New York*,
　524 F.3d 346 (2d Cir. 2008) .......................................... 28, 30

*Wilson v. Seiter*,
　501 13 U.S. 294 (1991) .................................................... 31

*Wrenn v. District of Columbia*,
　864 F.3d 650 (D.C. Cir. 2017) ................ 12, 17, 25, 26, 35, 36, 37

v

## STATUTES

28 U.S.C. § 1291 ...........................................................................5

28 U.S.C. § 1331 ...........................................................................5

28 U.S.C. § 1343 ...........................................................................5

28 U.S.C. § 2201 ...........................................................................5

28 U.S.C. § 2202 ...........................................................................5

42 U.S.C. § 1983 ...........................................................5, 7, 8, 13

42 U.S.C. § 1988 ...........................................................................5

Cal. Gov. Code § 811.2 ................................................................8

Cal. Penal Code § 25400 ..............................9, 11, 18, 10, 27, 30

Cal. Penal Code § 25655 .............................................................19

Cal. Penal Code § 25850 ..............................9, 11, 18, 19, 27, 30

Cal. Penal Code § 26045 .............................................................24

Cal. Penal Code § 26150 .............................................19, 20, 22

Cal. Penal Code § 26155 .............................19, 20, 24, 25, 26

Cal. Penal Code § 26350 .............................................................18

Cal. Penal Code § 26362 .............................................................24

Los Angeles Municipal Code § 55.00 .........................................23

Los Angeles Municipal Code § 55.01 .........................................23

Los Angeles Municipal Code § 55.02 .........................................23

## RULES

Fed. R. App. P. 4 ...........................................................................5

## OTHER AUTHORITIES

Breaking the Code of Silence: Rediscovering "Custom" in § 1983 Municipal
     Liability, 80 B.U.L. Rev. 17 ................................................37

California's Unloaded Open Carry Bans: A Constitutional and Risky,
     but Perhaps Necessary, Gun Control Strategy, 61 UCLA L. Rev. 464
     (January 2014) ......................................................................24

vi

# INTRODUCTION

Plaintiffs appeal from the district court's grant of Defendants' motion to dismiss Plaintiffs' First Amended Complaint with prejudice without leave to amend in their civil lawsuit for money damages and expungement of their arrest records because of the City Defendants' policy of implementing a criminal prohibition of carrying a handgun in public without a license, known as a CCW, as a complete prohibition on the carriage of handguns in public for Los Angeles residents and out of state residents. The State of California has amended many of the laws in effect during the class period in response to the Supreme Court's decision in so the class period ends generally about when the decision came out.[1]

Each of the Named Plaintiffs was arrested, detained, and referred for prosecution in the City by members of the LAPD simply for the constitutional conduct of carrying a concealed handgun in public for the general purpose of self-defense.

Plaintiffs are law-abiding people without any arrests before the arrests complained of in this complaint. Mr. Hearns and Mr. Hearns are both lifelong residents of Los Angeles, and they were residents of Los Angeles when they were arrested. Mr. Hearns and Mr. Hearns were arrested by the LAPD in Los Angeles on

---

[1] https://oag.ca.gov/ogvp/bruen#:~:text=Bruen%2C%20142%20S.,general%20member%20of%20the%20community.

1

June 22, 2022, and November 24, 2020, respectively. Mr. Matthews was a resident of Tennessee when arrested and he held a CCW issued by the State of Tennessee.

The moving force and the cause of their arrests, detentions and referrals for prosecution was the City Defendants' policy implementing a total ban on the carriage of handguns in public for Los Angeles residents and out of state residents.

The City Defendants implemented the total ban on carriage of handguns in public in Los Angeles in two steps: (1) **step one**: California statutes grant the chief of each municipality the unfettered discretion to grant or to deny CCWs to residents of their municipalities, and the Chief of the LAPD, acting pursuant to the City Defendants' policies which prohibited carriage of handguns in public, exercised his discretion by implementing a written policy of refusing to issue CCWs; (2) **step two**: the California criminal statutes constituting the California prohibition on carrying a concealed handgun in public without a CCW are a permissive California criminal regime which left discretion to the City Defendants and the Chief on how to implement it. The City Defendants made use of the discretion left to them on how to implement the California regime to convert the reasonable California state policy of criminalizing the carriage of a handgun in public without a CCW into an unconstitutional municipal policy of criminalizing the carriage of all concealed handguns in public period. The only way for a Los Angeles resident to carry a handgun in public was to obtain a CCW from the Chief, but this was impossible

2

because the Chief, pursuant to the City Defendants' policies, refused to issue them CCWs. The criminal prohibitions the Chief implemented in Los Angeles were a Catch-22 because the statutes, as implemented by the Chief, criminalized carrying a concealed handgun in public without a CCW, and the Chief refused to issue any CCWs.

The City Defendants enacted the same type of regulation the Supreme Court invalidated in *District of Columbia v. Heller*.[2] The City Defendants effectively implemented a regulation criminalizing the use of a handgun in public without a license, and then refused to issue the license. The use of the handguns at issue in *Heller* was use in the home, and the use of the handguns at issue in this case was in public, but the principle is the same because Plaintiffs had a constitutional right to both types of uses: a licensing regime which implements a total ban on the use of handguns as the City Defendants did is invalid under the Second Amendment.

In *Heller*, both regulations which blocked Plaintiff's use of guns in the home were District of Columbia statutes. Both prongs of the regulation criminalizing the possession of a handgun without a license and the policy of never granting licenses were District policies. The same is true here. The Chief's refusal to grant CCWs pursuant to the City's total ban policies is a Los Angeles City policy. And the California statutes criminalizing carrying a handgun in public without a CCW were

---

[2] 554 U.S. 570 (2008).

permissive state statutes that the City Defendants converted to a municipal policy because the City Defendants used the discretion left them in the statute to choose the implement the statutes as a total ban on carriage of handguns in public (by refusing to issue CCWs) instead of choosing to implement statutes as part of a reasonable enforcement of its licensing regime.

The California statutes did not mandate that the City Defendants implement a total ban on the carriage of handguns in Los Angeles. The City Defendants made a conscious choice from amongst options to exercise the discretion left them by the statutes to implement an unconstitutional total ban on the carriage of handguns in public in Los Angeles for Los Angeles residents and non-Californians.

Finally, the Named Plaintiffs did not have to apply for CCWs and be denied just to bring this lawsuit because it is a post-enforcement lawsuit and the City Defendants' enforcement of their unconstitutional policies against Named Plaintiffs injured them and gave them standing. An additional and independent reason is that "a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license."

Alternatively, applying for a CCW would have been futile because the Chief had a "no-issue" CCW policy, and he never granted CCWs. The face of the Chief's policy on good cause and the other City Defendant policies challenged by Plaintiffs

established futility for Named Plaintiffs and putative class members because they could not have satisfied the standards such as the "good cause" requirement.

Mr. Matthews pled a Fourteenth Amendment claim in addition to his Second Amendment claim. The City Defendants are liable under *Monell* for his injuries under the Fourteenth Amendment as well as the Second Amendment. In both claims the real cause he would not have been issued a CCW is not because he was a non-resident of California but because the Chief never gave anyone CCWs for self-defense.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983 and § 1988. This Court has jurisdiction over this appeal under 28 U.S.C. § 1291.

The district court's final judgment was entered on October 31, 2023. *See* ER-4. The Appellants timely filed a notice of appeal on November 28, 2023. *See* ER-152; *See also* Fed. R. App. P. 4(a)(1)(A).

## STATEMENT OF THE ISSUES FOR REVIEW

1. Did the district court err in dismissing Plaintiffs' Section 1983 claim where Plaintiffs alleged that the City Defendants' and the Chief's "no-issue" CCW policy in conjunction with City Defendants' implementation of the carrying a concealed handgun in public without a CCW statutes as implemented by City

Defendants infringed Plaintiffs' Second Amendment rights by implementing a total ban on the carriage of handguns in public, without applying the test in *Bruen* for evaluating regulations burdening Second Amendment rights, and where the City Defendants did not even attempt to establish that their total ban policies are consistent with this Nation's historical tradition of firearm regulation by identifying a historical analogue.

    2.    Did the district court err in dismissing Plaintiffs' Section 1983 claim where Plaintiffs alleged that the City Defendants' and the Chief's "no-issue" CCW policy in conjunction with City Defendants' implementation of the carrying a concealed handgun in public without a CCW statutes as implemented by City Defendants infringed Plaintiffs' Second Amendment rights by implementing a total ban on the carriage of handguns in public, when the Supreme Court has held that a total ban on the use of handguns in public is invalid because there is no historical precedent of using a total ban to regulate urban gun violence.

    3.    Whether the City Defendants' conscious choice to implement the California statutes prohibiting carrying a concealed handgun in public without a CCW as a total ban on carrying handguns in public may give rise to *Monell* liability because the statutes are permissive and leave room for discretion in their implementation because they gave the Chief discretion to deny all CCWs.

4. Whether Plaintiffs stated a direct *Monell* claim against the City Defendants by alleging that the City Defendants, the city policymakers, consciously adopted and promulgated unconstitutional policies and enforced them against Named Plaintiffs and the putative class members, and Plaintiffs alleged that enforcing the unconstitutional policies was the moving force of their constitutional injuries, without further alleging that the City Defendants' policies amounted to deliberate indifference to the Plaintiff's constitutional rights.

## STATEMENT OF THE CASE

On May 5, 2022, Gary Matthews, together with plaintiff Dominick Hunn, filed the class-action complaint under § 1983 for damages and declaratory relief, which initiated this action. [ECF No. 1] The operative first amended complaint was filed on September 7, 2022 adding Jamar Hearns as a Named Plaintiff, and it alleged that City Defendants violated Plaintiffs' and the putative class members' Second Amendment rights by implementing a total ban on the carriage of handguns without a license by refusing to issue licenses (known as CCWs) for the concealed carry of handguns in public, and then enforcing the ban against Plaintiffs and the absent class members. ER-127–129.

Defendants are the City of Los Angeles (sometimes the "City" or "LA" or "Los Angeles") and the Los Angeles Board of Police Commissioners (sometimes the "Board of Police Commissioners" or the "Board") and the Los Angeles Police

7

Department (sometimes "LAPD" or the "Department") (collectively the "City Defendants"). ER-127–129. All three entities are "public entities" who are § 1983 persons capable of being sued under § 1983. Cal Gov Code § 811.2; *see also Streit v. Cnty. of L.A.*, 236 F.3d 552, 565-66 (9th Cir. 2001) (looking to Cal. law to determine that L.A. Sheriff's Dep't was separately suable entity); *Shaw v. State of Cal. Dep't of Alcoholic Beverage Control*, 788 F.2d 600, 604-05 (9th Cir. 1986) (looking to Cal. law to determine that San Jose police department was separately suable entity); *Nelson v. City of L.A.*, 2015 U.S. Dist. LEXIS 195190, at *6 n .2 (C.D. Cal. June 15, 2015).

Mr. Matthews, a non-resident of Los Angeles at the time, also additionally alleged that the City Defendants violated his Fourteenth Amendment rights. ER-145.

During the Class Period the City Defendants and the Chief violated the Second Amendment rights of the Named Plaintiffs and the putative class members by arresting them just for engaging in the constitutionally protected conduct of carrying a concealed handgun in public because the Chief of the LAPD, acting pursuant to the City Defendants' municipal policies, refused to exercise his discretion to issue CCWs which would have allowed the Named Plaintiffs and the putative class members to qualify for exemptions from the criminal prohibitions. ER-129, ¶¶ 3-4; ER-142, ¶ 109; ER-143, ¶ 114; ER-145, ¶ 125; *McDonald v. Chicago*, 561 U.S. 742

(2010)(Second Amendment applies to the States through the Fourteenth Amendments); *United States v. Perez-Garcia*, 96 F.4th 1166, 1177 (9th Cir. 2024).

Each of the Named Plaintiffs was arrested, detained, and referred for prosecution in the City by members of the LAPD simply for the constitutional conduct of carrying a concealed handgun in public for the general purpose of self-defense. ER-128–129, ¶¶ 1,2. California Penal Code § 25400(a)(1) and (a)(3) California Penal Code § 25850(a). *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 10, 33 (2022)(recognizing a pre-existing right to carry a handgun in public for self-defense). All because the Chief of the LAPD, pursuant to policies of the City Defendants, refused to exercise his discretion to issue licenses, known as CCWs, to carry concealed handguns in public. ER-129, ¶¶ 3-4, ER-143, ¶ 109, 114; ER- 145, ¶ 125.

Each Named Plaintiff was a law-abiding citizen with no prior arrest history let alone convictions before the arrests they complain of in this case. ER-133-136, ¶¶ 30-73; (Hunn, ER-133, ¶ 35, no prior arrests; Hearns, ER-134, ¶ 42, no prior arrests; Matthews, ER-136, ¶ 68, no prior record). Defendants arrested and detained each Named Plaintiff, (Hunn, ER-133, ¶ 34, 36; Hearns ER-134, ¶¶ 41, 43; Matthews, ER-134—135, ¶¶ 48, 51, 54, 64) caused each Named Plaintiff to be detained in the local jail (Hunn, ER-133, ¶¶ 37-38; Hearns, ER-134¶ 44, 46; Matthews, ER-135, ¶¶ 65-66), and Defendants referred Mr. Hearns' and Mr.

Matthews' arrests to the prosecuting authority for prosecution. (Hearns, ER-134, ¶ 46; ER-135, Matthews, ¶65). Moreover, each Named Plaintiff incurred the expense of posting bail. (Hunn, ER-134, ¶ 39; Hearns, ER-134, ¶ 46; Matthews, ER-136 ¶ 67).

Mr. Hearns and Mr. Hearns are both lifelong residents of Los Angeles. Both were residents of Los Angeles when arrested. ER-126 (Hearns arrest report); ER-124 (Hunn arrest report). Mr. Hearns and Mr. Hearns were arrested by the LAPD in Los Angeles on June 22, 2022, and November 24, 2020, respectively. ER-133-134; ER-126 (Hearns arrest report); ER-124 (Hunn arrest report). Mr. Matthews was a resident of Tennessee when arrested and he held a CCW issued by the State of Tennessee. ER-134-135; ER-122 (Matthews arrest report).

The prosecutor declined to prosecute Mr. Hearns. ER-134, ¶ 47 and Mr. Hunn, ER-133. But the prosecutor did in fact initiate a prosecution against Mr. Matthews. ER-136, ¶¶ 69-72.

Mr. Matthews had to pay a lawyer to defend him. ER-136, 73. Mr. Matthews entered into a deferred sentencing agreement; he successfully completed the terms of the agreement; and the Court allowed Mr. Matthews to withdraw his plea without sentencing. ER-136, ¶¶ 69-71. The docket sheet shows that his case was dismissed 12/16/2021, and the Court may take judicial notice of the date of dismissal. ER-18-

10

27. The injury to Mr. Matthews caused by Defendants' policies continued from the time of his arrest until the dismissal of the prosecution against him. ER-136, ¶ 72.

The California statutes prohibiting concealed carry in public, Section 25400(a)(1) and (a)(3) California Penal Code § 25850(a), are regulatory offenses. Both offenses are "wobbler" offenses, and, for law-abiding persons such as Named Plaintiffs, arrests for the offenses usually result in declinations to prosecute, or misdemeanors prosecuted by the City Attorney carrying a maximum of one year.[3]

On October 31, 2023, almost 11 months after entry of a Scheduling Order initiating discovery, [ECF No. 39 (October 3, 2022)], the district court granted defendants' Motion to Dismiss with prejudice without Leave to Amend, ER-4, which amounted to a final judgment.

The district court erred to the extent that it suggested that Plaintiffs needed to apply for CCWs. Order Granting Defendants' Motion to Dismiss. ER-11.

The district court also erred when it framed the issue as Plaintiffs claim a constitutional right to carry publicly a concealed firearm without a license. ER-130, ¶ 7. The Supreme Court itself in *Bruen* confirmed a longstanding Supreme Court precedent that "a person faced with such an unconstitutional licensing law may

---

[3] A "wobbler" is a California offense which can be punished either as a felony or as a misdemeanor. *See e.g., United States v. Denton*, 611 F.3d 646, 651 (9th Cir. 2010). Under Circuit law, for an uncharged wobbler offense, no presumption applies as to whether the offense is punishable as a felony (more than one year's imprisonment) or a misdemeanor (less than one year's imprisonment). *Id.* 651-652.

ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *N.Y. State Rifle & Pistol Ass'n v.* 11 *Bruen*, 142 S. Ct. at 2138 n.9 (*quoting Shuttlesworth v. Birmingham*, 394 U.S. 147, 12 151 (1969)). Under *Heller*, "complete prohibition[s]" of Second Amendment rights are always invalid even when effected through a licensing regime. *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008); *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (D.C. Cir. 2017); *see also Grossman*, 33 F.3d at 1203 (city's arresting plaintiff for violating a local ordinance requiring permit that violated the First Amendment violated the First Amendment rights of plaintiff even though plaintiff did not apply for a permit).

Moreover, the right to carry a handgun in public for self-defense is a right pre-existing the adoption of the Second Amendment and at any rate, under the Court's retroactivity jurisprudence, *Bruen* applies retroactively to this case because this case was ongoing when the Supreme Court decided *Bruen*. *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 96, 1 97 (1993)("a rule of federal law, once announced and applied … must be given full retroactive effect by all courts adjudicating federal law," especially to "cases still open on direct review."); *Lemus v. Lynch*, 842 F.3d 641, 647-648 (9th Cir. 2016).

Under *Owen*, qualified immunity does not apply to municipalities as an "incentive for officials who may harbor doubts about the lawfulness of their intended

actions to err on the side of protecting citizens' constitutional rights, …the threat that damages might be levied against the city might encourage those in a policymaking position to institute internal rules and programs designed to minimize the likelihood of unintentional infringements on constitutional rights." *Evers v. County of Custer*, 745 F.2d 1196, 1204 (*Owen*, 445 U.S. at 650-52 (1979)(*quoting Owen v. City of Independence*, 445 U.S. 622, 650-52 (1979)).

The district court also erred when it stated that to impose *Monell* liability under § 1983 for a violation of constitutional rights, a plaintiff must show that the municipal policy amounted to deliberate indifference to the plaintiff's constitutional rights. ER-8. That rule only applies to indirect, failure to act *Monell* claims. *Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (distinguishing "direct" from "indirect" *Monell* claims, which allege that a municipality violated the constitution through its omissions and which require a showing of deliberate indifference); *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1164 (9th Cir. 2018); *Lowry v. City of San Diego*, 858 F.3d 1248, 1267 (Thomas J., dissenting). Plaintiffs' claim is the archetypal quasi-legislative *Monell* claim because it involved a written formal policy, which is itself unconstitutional); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994) ("Where, as here, a local police officer enforces an unconstitutional ordinance, relief lies against the city.") (*citing Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978)).

13

## SUMMARY OF THE ARGUMENT

The district court erred in dismissing Plaintiffs' Second Amendment claim because the City Defendants did not even attempt to establish that their total ban policies are consistent with this Nation's historical tradition of firearm regulation by identifying a historical analogue.

Moreover, the City Defendants implemented a total ban on the carriage of handguns in public, but a total ban on the use of handguns in public is invalid because there is no historical precedent of using a total ban to regulate urban gun violence. The City Defendants promulgated a comprehensive gun control regime that consciously chose a total ban on the carriage of handguns in public. The Chief, pursuant to the City Defendants' policies, used his discretion and his authority to define the meaning of the term "good cause" to impalement his own "no-issue" CCW policy.

The California prohibitions on carrying a concealed handgun in public are permissive and left City Defendants room for discretion on whether to implement the prohibition as a reasonable licensing regime or as a total ban on concealed carry in public or as a total ban on concealed carry. Therefore, Plaintiffs' implementation of the permissive statutes may give rise to *Monell* liability

Plaintiffs stated a direct *Monell* claim against the City Defendants by alleging that the City Defendants, the city policymakers, consciously adopted and

14

promulgated unconstitutional policies and enforced them against Named Plaintiffs and the putative class members, and Plaintiffs alleged that enforcing the unconstitutional policies was the moving force of their constitutional injuries, without needing to further allege that the City Defendants' policies amounted to deliberate indifference to the Plaintiff's constitutional rights.

The Named Plaintiffs did not need to apply for CCWs and get denied just to create an injury for Article III standing. Plaintiffs satisfied the Article III injury in fact standing requirement when the City Defendants implemented their version of the concealed carry prohibitions against them. Alternatively, applying would have been futile.

## ARGUMENT

### I. Standard of Review

This court reviews the granting of a motion to dismiss under Rule 12(b)(6) *de novo*, *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1014 (9th Cir. 2012) "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded material facts as true and draw all reasonable inferences in favor of

the plaintiff." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

## II. The City Defendants violated Plaintiffs' Second Amendment rights by adopting and implementing a policy of a total ban on carriage of handguns in public and enforcing it against Plaintiffs.

To survive a motion to dismiss Plaintiffs' complaint must plausibly allege a (1) predicate constitutional violation; (2) a policy of the local government was the moving force behind the predicate constitutional violation. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994). Plaintiffs plausibly pled both elements in their Amended Complaint for both claims. ER-143-145, ¶¶ 112-127 (Second Amendment claim); ER-145-146, ¶¶ 128-135 (Fourteenth Amendment Right to Travel - Nonresident Class Arrest Claim).

As to the Second Amendment claim, the City Defendants violated Plaintiffs' and the putative class members Second Amendment rights by arresting, detaining, and referring for them for prosecution merely for engaging in the constitutionally protected conduct of carrying concealed handguns in public in a jurisdiction that banned open carry. Plaintiffs pled that the City Defendants' municipal gun control policies and the Chief's "no-issue" CCW policy were the moving force behind Plaintiffs' arrests. ER-144, ¶ 122. The gun control polices including the Chief's "no-issue" CCW policy are unconstitutional because they impose a total ban on the

16

carriage of handguns in public in the City by Angelenos, City residents, for self-defense. *District of Columbia v. Heller*, 554 U.S. 570, 629 (2008); *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (D.C. Cir. 2017)(under *Heller* "complete prohibition[s]" of Second Amendment rights are always invalid even when effected through licensing regime; (recognizing right to carry a handgun in public for self-defense); *Bruen*, 597 U.S. at 10 (recognizing right to carry a handgun in public for self-defense).

The City Defendants' consciously chosen policies violated Plaintiffs' and the putative class members' Second Amendment rights. The California statutes did not mandate that the City Defendants implement a total ban on the carriage of handguns in Los Angeles. The City Defendants made a conscious choice from amongst options to exercise the discretion left them by the statutes to implement an unconstitutional total ban on the carriage of handguns in public in Los Angeles for Los Angeles residents and non-Californians.

### A. The State of California has a regulatory scheme under which it prohibits open carry of handguns but allows concealed carry of handguns for persons who have a CCW issued at the discretion of the local licensing authority, the sheriffs of counties and the police chiefs of cities.

The State of California has a regulatory scheme under which it prohibits open carry of handguns, but it allows concealed carry of handguns for persons who have a CCW issued at the discretion of the local licensing authority, the sheriffs of counties

and the police chiefs of cities. ER-136, ¶¶ 75-77. The rules governing issuance of CCWs by sheriffs and Chief's are generally the same. Plaintiffs focus in this brief on the rules relating to issuance of CCWs by Chiefs because the licensing official in this case was the Chief of the LAPD.

**B.    California has a regulatory scheme which prohibits open carry of handguns but allows concealed carry of handguns for persons who have a CCW issued by the chief of the municipality where they live.**

California law generally prohibits carrying unloaded handguns openly on the person in a public place or on a public street, in either an incorporated city or a "prohibited area" of an "unincorporated area of a county." Section 26350.

California law also generally prohibits carrying concealed firearms in public, whether loaded or unloaded. Cal. Penal Code § 25400. State law also generally prohibits carrying loaded firearms on the person or in a vehicle in any public place or on any public street, in either an incorporated city or a "prohibited area" of "unincorporated territory." *Id.* § 25850.

The prohibitions of § 25400 and § 25850 criminalizing concealed carriage of handguns do not apply to those who have been issued licenses to carry concealed weapons ("CCWs") by their local Sheriff or Police Chief. In fact, under the substantive criminal law, the California legislature enacted statutes expressly stating that Sections 25400 and 25850 "**do not apply to**" the concealed carriage of a pistol

18

by a person who has a CCW. § 25655 (Section 25400); § 26010 (Section 25850); *Id.* § 26150 (chief issued CCW); *Id.* § 26155 (sheriff issued CCW).

### C. California delegates unfettered discretion to Police Chiefs to issue or to deny CCWs for cities.

The State of California does not issue any CCWs. Rather California law delegates to the unfettered discretion of the County Sheriff or Police Chief the decision whether to issue licenses regardless of whether the applicant meets the statutory criteria for CCWs. *See* Cal. Penal Code § 26155 ("the chief … **may issue**" a CCW to applicant if applicant is of good moral character, shows good cause, is a resident of the county, and completes course of training); Cal. Penal Code § 26150(a) (same **"may-issue"** rule for the sheriff of a county) (emphasis added). ER-137, ¶ 78. The discretion is only reviewable by a court under an "arbitrary and capricious" standard of review. *Gifford v. City of L.A.*, 88 Cal. App. 4th 801, 805 (Cal. 2001)(courts may review only whether Chief's CCW denial was arbitrary, capricious, or entirely lacking in evidentiary support).

The delegation allows chiefs to set the definition of "good cause." ER-137, ¶ 79; *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 924 (9th Cir. 2016)(California law authorizes county sheriffs to establish and publish policies defining good cause); *see* Cal. Penal Code § 26150(a)(2); Cal. Penal Code § 26155(a)(2).

The delegation and "may issue" provisions vest authority to establish policy governing the carriage of handguns outside the home in the local Sheriff or Chief

who acts as the policymaker for the county or municipality respectively. ER-137, ¶ 80. *Birdt v. San Bernardino Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 80482, *19-*21 ((C.D. Cal. 2014)(Sheriff's CCW policies are a Monell policy of the office); *Birdt v. San Bernardino Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 81126 (C.D. Cal. 2014) (Magistrate Judge's recommendations adopted by District Court).

A Sheriff's or Chief's policy can range from "no issue" to "shall issue" depending on how the Sheriff or Chief chooses to define "good cause," ER-137, ¶ 81, and the exercise of their discretion. ER-137, ¶ 78; See Cal. Penal Code § 26155 ("the chief … **may issue**" a CCW to applicant if applicant is of good moral character, shows good cause, is a resident of the county, and completes course of training) Cal. Penal Code § 26150(a) (same **"may-issue"** rule for the sheriff of a county) (emphasis added). For example, the Ventura County Sheriff has established a policy of issuing CCWs under which "a [general] need for personal safety or self-defense" satisfies the "good cause" provision of the statute. ER-138, ¶ 82.

The statute vests discretion to issue or deny CCWs in municipalities to the Chief. So, the policymaker for whether the statute in a particular municipality is a complete ban on the carriage of concealed handguns outside the home, or is merely a reasonable prohibition on the carriage of concealed handguns in public, is the chief.

Plaintiffs do not in their lawsuit challenge the constitutionality of any aspect of the California regulatory scheme. Plaintiffs challenged the City Defendants' gun

policy *in toto*, not just the City Defendants' definition of the "good cause" provision. Plaintiffs alleged that the City Defendants implemented a "no-issue" CCW policy relying on the Chief's discretion, and their ordinances, policies, and practices. *E.g.*, ER-129, ¶ 3-4; ER-143, ¶ 114. Alternatively, the City Defendants implemented a "no-issue" CCW policy that was independent of the California regulatory system. *See e.g.*, ER-145, ¶ 125.

The District Court did not convert Plaintiffs challenges to an attack on the California regulatory system as the panel majority in *Peruta* did or view Plaintiffs' claims as a challenge to "the constitutionality of [California's] entire [statutory] scheme." *Peruta v. Cnty. of San Diego*, 824 F.3d 919, 924. ER-4, *et seq.* Nor did the City Defendants contend that Plaintiffs challenged any State law.

Rather Plaintiffs challenged the City Defendants' municipal policies which implemented a gun control regime in *toto* "(including its laws, customs, practices and policies banning the carrying and transporting of handguns in public)." ER-143, ¶ 114.

**D.** **The Chief acting pursuant to the City Defendants' policies exercised his discretion to grant or to deny CCWs to refuse to issue CCWs.**

The City Defendants implemented a comprehensive gun control regime. Acting pursuant to the City Defendants' gun control policies the Chief refused to issue CCWs with the result that Los Angeles residents could not qualify for the exemptions from

the penal bans on carrying concealed handguns in public which effected a penal total ban on the carriage of concealed handguns for residents of Los Angeles through their policies.

### 1.     The City Defendants' "no-issue" CCW policy.

Plaintiffs brought this action against the City of Los Angeles (sometimes the "City" or the "LA") and the Los Angeles Board of Police Commissioners (sometimes the "Board of Police Commissioners" or the "Board") and the Los Angeles Police Department (sometimes "LAPD" or the "Department"). A California statute delegated discretion and authority to the Chief of the LAPD to set a firearms policy and to grant or deny applications for CCWs to the Chief of the LAPD. § 26150 ("chief … may issue" CCW). But the City controls the Board's because the Board's five civilian members are appointed by the Mayor and confirmed by the Los Angeles City Council. The Board oversees the LAPD pursuant to the powers granted it by the City of Los Angeles in the City Charter. ER-138, ¶ 86. The Board sets overall policy for the LAPD while the Chief of Police manages the daily operations of the Department and implements the Police Commission's policies or policy direction and goals.

Acting in concert City Defendants implemented a unified comprehensive gun control policy using the discretion delegated to them by California Statutes and the discretion to define "good cause, ER-142, ¶ 109, and City Ordinances and practices. ER-139-141, ¶¶ 94-101; ER-143, ¶ 114 ("The City's gun control regime during the

Class Period (including its laws, customs, practices and policies banning the carrying and transporting of handguns in public)"). The policy denied virtually all CCW applications which effectively imposed a total ban on carrying handguns outside the home for Los Angeles residents.

Alternatively, independent of any State licensing regime and independent of any authority delegated to it by the State, the City had a custom of denying virtually all CCW applications which effectively imposed a total ban on carrying handguns outside the home. ER-145, ¶ 125.

The Los Angeles City Council expressed its policy on CCWs for handguns as follows:

> The Board of Police Commissioners shall have power to issue to any person, *who in the judgment of said board, shall have such privilege*, a written permit to carry concealed any of the weapons [such as a pistol] specified in the preceding section. (emphasis added)

Los Angeles Municipal Code Secs. SEC. 55.01 (Concealed Weapons – Permit); 55.02 (Concealed Weapons – Permit – Record). ER-140, ¶¶ 97-98.

Another Los Angeles ordinance prohibits discharging a pistol without a written permit from the Board of Police Commissioners. Los Angeles Municipal Code Sec. 55.00.

The combined effect of these two ordinances are more restrictive than any provision in the California regulatory system because they do not have any type of "immediate danger" exception for self-defense as the California regulatory system

23

does. Cal. Penal Code § 26045(a). § 26045(a) allows a California resident to carry a loaded gun in public places **without a CCW permit** to respond to a specific threat to any person or property when faced with immediate danger. *Id.;* COMMENT: California's Unloaded Open Carry Bans: A Constitutional and Risky, but Perhaps Necessary, Gun Control Strategy, 61 UCLA L. Rev. 464, 469 (January 2014) (analyzing the immediate danger exception of See Cal. Penal Code § 26045(a)). Thus, the City Defendants' gun control scheme nullifies the California exception allowing carriage of a loaded gun in public places without a CCW to respond to a specific threat. The immediate danger exception is also incorporated into the unloaded open carry bans. See Cal. Penal Code §§26362, 26405(f).

The Board also adopted a definition of "good cause" which required a special showing of need to obtain a CCW.

> The policy LAPD has adopted is that good cause exists if there is convincing evidence of a clear and present danger to life or of great bodily injury to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm. LAPD Carry Concealed Weapon License Policy.

ER-142, ¶¶ 107-08. Court orders regarding implementation of the "good cause" standard which purported to eliminate the Chief's discretion under Cal. Penal Code § 26155 to deny an application for a CCW even if the applicant satisfied the statutory criteria have been construed by the California Supreme Court in unpublished decisions

24

to apply only to the plaintiffs in those cases. *See Davis v. City of Los Angeles*, No. B241631 (Cal. Ct. App. Opinion Oct. 14, 2014)(unpublished). The City Defendants and the Chief construed the "good cause" element as a complete prohibition of the carriage of handguns in public because the Chief denied virtually all applications. ER-142, ¶ 109. The only persons who satisfy the Board's definition of "good cause" are people such as Judges and law enforcement officers. ER-143, ¶ 111.

City Defendants also relied on the permissive "may issue" language in the grant to the chief to issue or deny CCWs even when the applicant satisfied the statutory criteria to fashion and implement their gun control regime. Section 26155 ("chief … may issue a license"). For example, even a narrow segment of Los Angelenos such as Judges and prosecutors may have satisfied the "good cause" provision, there is nothing in the record to indicate that the Chief ever exercised his discretion under Section 26155 to issue a CCW to such a person. And Plaintiffs plausibly alleged that the chief never issued CCWs, ER-129, ¶¶ 3-4; ER-145, ¶ 125, and there was no way they or class members could have got CCWs from the Chief. ER-129, ¶ 3.

Even if the Chief had granted some CCWs to a narrow segment of the population that by definition did not include Named Plaintiffs and the putative class members, the City Defendants' "no-issue" policy would still have amounted to a "complete prohibition" or a "total ban" under *Heller* and *Wrenn*. *Heller*, 554 U.S. 570, 629 and *Wrenn*, 864 F.3d 650, 662. The *Wrenn* Court held in a challenge the District's

25

version of the "good cause" provision in the District's licensing regime, even a

licensing system that allows "those with a special need [] to defend against threats both

common to everyone and specific to themselves" amounts to a total ban or complete

prohibition on the right to carry a handgun in public. *Wrenn*, 864 F.3d 650, 665. As the

*Wrenn* Court noted, even the "complete prohibition" on ownership "struck down in

*Heller I* made "minor exceptions" for certain sorts of owners, who could then defend

their homes to the hilt." *Wrenn*, 864 F.3d 650, 665 (*quoting Heller*, 554 U.S. at 570

n.1).

### 2. Plaintiffs challenged gun policy in *toto*, not just the City Defendants' definition of the "good cause" provision.

Plaintiffs did not just challenge the "good cause" provision of the California

licensing statute, § 26155(a)(1). Rather, Plaintiffs challenged the City Defendants'

"City's gun control regime during the Class Period (including its laws, customs,

practices and policies banning the carrying and transporting of handguns in public),

ER-143, ¶ 114, which implemented a "no-issue" CCW policy which "by design"

worked a total ban on the issuance of CCWs and the complete prohibition of carriage

of concealed handguns in public. *District of Columbia v. Heller*, 554 U.S. 570, 629

(2008); *Wrenn v. District of Columbia*, 864 F.3d 650, 665-666 (D.C. Cir. 2017).

### 3. The City Defendants' and the Chief's CCW polices amounted to municipal policies under *Monell*.

The City Defendants' and the chief's CCW polices amounted to municipal

policies under *Monell*. *Birdt v. San Bernardino Sheriff's Dep't*, 2014 U.S. Dist.

LEXIS 80482 (C.D. Cal. 2014)(sheriff department' CCW policy is a municipal policy under *Monell*; *Birdt v. San Bernardino Sheriff's Dep't*, 2014 U.S. Dist. LEXIS 81126 (C.D. Cal. 2014) (Magistrate Judge's recommendations adopted by District Court Judge).

####    4.    LAPD's enforcing the concealed carry prohibitions in Los Angeles as a total ban on the carriage of handguns in public was a municipal policy not a state policy because the concealed carry prohibitions and the exemptions made the statutes a prohibition on carrying a concealed handgun without a CCW, not a total ban on the carriage of handguns in public.

LAPD's enforcing the concealed carry prohibitions in Los Angeles as a total ban on the carriage of handguns in public was a municipal policy not a state policy.

The California concealed carry prohibitions (§ 25400 and § 25850) read together with the exemptions constitute a permissive state law that left the City Defendants unlimited room for discretion on whether to enforce the prohibitions as total bans on the carriage of handguns in public or reasonable regulations because California delegated discretion whether to issue CCWs at all to the Chief.

The City Defendants' implementation and interpretation of the California concealed carry prohibitions converted the City Defendants' implementation of the concealed carry prohibitions into their own municipal policy because their policies implemented a permissive state law that left them unlimited room for discretion. *Brewster*, 2019 U.S. Dist. LEXIS 225770, *20.

27

This is not a case where a local government implemented a mandatory state law that left no room for discretion. *Brewster*, 2019 U.S. Dist. LEXIS 225770, *20. Rather the City Defendants took action pursuant to a state law that is merely permissive or leaves room for discretion in its implementation. A local government's enforcement of a state law that is merely permissive or leaves room for discretion in its implementation may give rise to *Monell* liability. Because a decision to enforce state law may be considered a municipal policy, the Court finds that Plaintiffs' allegations that Defendants acted pursuant to a municipal policy are sufficient to survive a motion to dismiss." *See Fitzpatrick v. City of Los Angeles*, 2023 U.S. Dist. LEXIS 17220, *25 (C.D. Cal. 2013)(discussing cases).

California left it to the Chief whether to issue CCWs, and thus California left the Chief and the City Defendants room to make a choice whether to enforce the concealed carry prohibitions as a total ban on the carriage of handguns in public, or a reasonable regulation. Thus, the City Defendants did make a conscious choice to enforce [the concealed carry prohibitions] in an unconstitutional manner when the City was not required to do so. *See Vives v. City of New York*, 524 F.3d 346, 356 (2d Cir. 2008) (collecting authorities which, to varying degrees, found "that a municipality engages in policy making when it determines to enforce a state law that authorizes it to perform certain actions but does not mandate that it do so.").

Thus, the City Defendants through the Chief enforced against Plaintiffs and the putative class members a state statute which had an element (whether accused had a CCW) which was supplied by the local government at the discretion of the local government. Therefore, when the City Defendants enforced (through the LAPD) the California prohibition on carrying a concealed handgun in public without a CCW, the City Defendants were enforcing a Los Angeles municipal policy, not a California policy, because the California prohibition is a permissive state law that left the City Defendants unlimited room for discretion on whether to issue CCWs at all. *See Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 518 (9th Cir. 2018) (describing *Evers* as "upholding *Monell* liability over [the] county's argument that 'it was merely acting according to state law, rather than carrying out County policy,' because [the] policy was discretionary"); *Evers v. County of Custer*, 745 F.2d 1196, 1203 (9th Cir. 11984)(finding the declaration of a public road by a county's governing body official county policy because the state's policy was discretionary);, 2019 U.S. Dist. LEXIS 225770, at *16-17, *21 n. 6 (applying *Evers* and *Sandoval* and holding that municipal action pursuant to a fully mandatory state law cannot give rise to *Monell* liability, whereas municipal action pursuant to a state law that is merely permissive or leaves room for discretion in its implementation may give rise to *Monell* liability).

Other circuits have also held that municipal action pursuant to a fully mandatory state law cannot give rise to *Monell* liability, while action pursuant to a law that is

merely permissive or leaves room for discretion in its implementation may give rise to *Monell* liability. *See Vives v. City of New York*, 524 F.3d 346, 351-353 (2d Cir. 2008) (distinguishing between municipal action pursuant to state laws mandating enforcement, to which *Monell* liability did not apply, and municipal action pursuant to state laws municipalities are "authorized, but not required, to enforce," to which *Monell* liability may apply); *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005)(municipality officially and expressly adopted a state policy making the policy its own).

> **5.** **The City Defendants' enforcement of the California statutes banning carriage of handguns in public against Plaintiffs and putative class members as implemented by them was a municipal policy that violated Plaintiffs' Second Amendment rights.**

The California concealed carry prohibitions (§ 25400 and § 25850) read together with the exemptions constitute permissive state law that left the City Defendants unlimited room for discretion on whether to enforce the prohibitions as total bans on the carriage of handguns in public or reasonable regulations because California delegated discretion whether to issue CCWs at all to the Chief.

The statutes worked together and were mutually reinforcing. Courts "do not require a plaintiff to show that a policy or practice was the exclusive cause of the constitutional deprivation" but may "consider how individual policies or practices interact with one another within the larger system" to determine causation. *Sanchez v. Young Cty.*, 956 8 F.3d 785, 795 (5th Cir. 2020), *cert. denied*, 141 S. Ct. 901 (2020)

(emphasis in original). This is because a municipality's policies and established practices may be constitutionally inadequate if, when viewed in combination, they have a "mutually enforcing effect that produces the deprivation of a single, identifiable human need." *Wilson v. Seiter*, 501 13 U.S. 294, 304 (1991). For example, in *Heller* two District of Columbia regulations, a total ban on handgun possession in the home and a requirement that any lawful firearm in the home be disassembled or bound by a trigger lock at all times, rendering it inoperable operated together to cause a complete prohibition on the use of handguns in the home. *Heller*, 554 U.S. at 629-630.

The City Defendants' "no-issue" CCW policy and their election to enforce the concealed carry prohibitions as a total ban on the carriage of handguns in Los Angeles by Angelenos violated the Plaintiffs' and putative class members' Second Amendment rights because by design it "completely prohibited" Los Angeles residents from exercising the constitutional right to bear arms in public for self-defense.

The text of the Second Amendment provides: "A well-regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed."

The Supreme Court recently clarified in *Bruen* that the following framework applies to Second Amendment claims: Courts first consider whether the Second Amendment's plain text covers an individual's proposed course of conduct. If so, the

Second Amendment presumptively protects that conduct. The governmental entity then bears the burden of justifying the challenged regulation by showing that it is consistent with our nation's "historical tradition of firearm regulation." Only if the governmental entity carries that burden may a court conclude that the regulation is constitutional. *United States v. Perez-Garcia*, 96 F.4th 1166, 1178 (9th Cir. 2024) (summarizing *Bruen*).

The threshold question in a Second Amendment claim is whether the Amendment presumptively protects the challengers' conduct. *Perez-Garcia*, 96 F.4th at 1178. It does if the challengers are among "the people" within the plain meaning of the Second Amendment, and the plain text of the Amendment encompasses the individuals' "proposed course of conduct." *Id.*; *Bruen*, at 31-32.

Plaintiffs and class members are members of the "People" because they are law-abiding citizens who have never even been arrested before their arrests challenged in this lawsuit. Also, in *Heller*, the Court interpreted the phrase "the people" to "refer[] to a class of persons who are part of a national community or who have otherwise developed sufficient connection with this country to be considered part of that community." *Perez-Garcia*, 96 F.4th at 1178-1179 (*quoting Heller*, 554 U.S. at 580). In *Perez-Garcia* this court held that even pretrial releasees charged with serious felony offenses after a judicial determination of probable cause remained members of the national community who fell within the plain meaning of

"the people"." *Perez-Garcia*, 96 F.4th 1166, 1180 (*quoting Heller*). Any other interpretation of the meaning of the People would insulate restrictive gun regulations from judicial review any regulation affecting only persons deemed outside of the "People."

The Second Amendment presumptively protects Plaintiffs' and class members' course of conduct, carrying their handguns in public for self-defense, because it "track[s] the core constitutional right to possess a handgun for self-defense inside and outside the home, as defined by *Heller* and *Bruen*, respectively." *Perez-Garcia*, 96 F.4th at 1180 (*quoting See Bruen*, 597 U.S. at 9-10).

In a licensing regime such as the City Defendants' where open carry is prohibited, concealed carry is a right protected by the Second Amendment as applied to the States through the Fourteenth Amendment. *Bruen*, 597 U.S. at 10 (Second Amendment through the Fourteenth Amendment protect an individual's right to carry a handgun for self-defense outside the home). The New York licensing scheme at issue in *Bruen* allowed only concealed carry but the Court still struck down as unconstitutional a regulation which burdened only concealed carry of handguns. *Bruen*, 597 U.S. at 12.

When a firearm regulation is challenged under the Second Amendment, the government must show that the restriction "is consistent with the Nation's historical tradition of firearm regulation." *Bruen*, 597 U. S., at 24. A court must ascertain

whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances." Why and how the regulation burdens the right are central to this inquiry.

Here, the why of the City Defendants' licensing scheme was urban handgun violence," the same alleged societal problem addressed in *Heller* and *Bruen*. *Bruen*, 597 U.S. at 27. And the "how" was the same solution addressed in *Heller*: a total ban on the use of handguns. *Heller*, 554 U.S. 570, 629.

The City Defendants' "no-issue" CCW policy implemented as part of their licensing scheme amounted to a complete ban on carriage of handguns in public because the Chief refused to issue any CCWs and one of the "two key, undisputed facts in this case are that there were no actions that the Plaintiffs or the other class members could have taken during the relevant time period that would have allowed them to carry a handgun for general self-defense in the City of Los Angeles." ER-129, ¶ 3.

The City Defendants did not offer any historical analogy for a complete ban on carriage of handguns outside the home as a solution for the problem of urban gun violence. ER-87.

The District Court did not address this failure of the City Defendants to identify relevant historical analogues to justify the City Defendants' licensing policy

or their gun control regime as a whole in is Order Granting Defendants' Motion to Dismiss. ER-4. Since the burden was on the City Defendants to justify the "no-issue" CCW policy by an historical analogue the City Defendants' motion to dismiss should have been denied on this point.

Second, under *Heller* and *Wrenn*, "complete prohibition[s]" of Second Amendment rights are always invalid even when they are effected through a licensing scheme. *District of Columbia v. Heller*, 554 U.S. 570, 629 ("complete prohibition[s]" of Second Amendment rights are always invalid even when effected through licensing regime); *Bruen*, 597 U.S. at 32-33 (Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home); *see also Wrenn v. District of Columbia*, 864 F.3d 650, 665 (2017)(under *Heller I* "complete prohibition[s]" of Second Amendment rights are always invalid even when effected through licensing regime); *Smith v. District of Columbia*, 387 F. Supp. 3d 8, 24, 25-26 6 (D.D.C. 2019)(motion to dismiss) ("*Smith I*"); *Smith v. District of Columbia*, 568 7 F. Supp. 3d 55, 60 (D.D.C. 2021).

The City Defendants' total ban would have violated the Second Amendment even if the Chief had granted some CCWs to a narrow segment of the population that by definition did not include Named Plaintiffs and the putative class members , for example judges and prosecutors, ER-143, ¶ 111, the City Defendants' "no-issue" policy would still have amounted to a "complete prohibition" or a "total ban" under

*Heller* and *Wrenn*. *Heller*, 554 U.S. 570, 629 and *Wrenn*, 864 F.3d 650, 662. The *Wrenn* Court held in a challenge the District's version of the "good cause" provision in the District's licensing regime, that even a licensing system that allows "those with a special need [] to defend against threats both common to everyone and specific to themselves" amounts to a total ban or complete prohibition on the right to carry a handgun in public. *Wrenn*, 864 F.3d 650, 665. As the *Wrenn* Court noted, even the "complete prohibition" on ownership "struck down in *Heller I* made "minor exceptions" for certain sorts of owners, who could then defend their homes to the hilt." *Wrenn*, 864 F.3d 650, 665 (*quoting Heller*, 554 U.S. at 570 n.1).

Therefore, the City Defendants motion should have been denied on this point.

Third, the Supreme Court in *Bruen* clarified that a government cannot use its licensing scheme to implement a total ban on the carriage of handguns in public for self-defense. *Bruen*. So the City Defendants should have been denied on this point as well.

### 6. The City Defendants are liable under *Monell* for enforcing their unconstitutional municipal policy against Plaintiffs.

The City Defendants are liable for enforcing their unconstitutional policies against the Named Plaintiffs and the putative class members by arresting, detaining, and causing their prosecutions because they are the municipal policymakers and their policy was the product of "a deliberate choice… among various alternatives," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). *Monell v.*

*Department of Social Services of the City of New York*, 436 U.S. 658 (1978); ARTICLE: BREAKING THE CODE OF SILENCE: REDISCOVERING "CUSTOM" IN SECTION 1983 MUNICIPAL LIABILITY, 80 B.U.L. Rev. 17, 36-37 (*Monell* is the archetypal quasi-legislative case because it involved a written formal rule, which the Court found unconstitutional on its face); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994) ("Where, as here, a local police officer enforces an unconstitutional ordinance, relief lies against the city.") (*citing Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978)).

Plaintiffs have a "direct" *Monell* claim based on the City Defendants' undisputed policy of refusing to issue CCWs and enforcing the concealed carry prohibitions as a complete ban on the carriage and use of handguns in public, for which they are only required to prove that the City Defendants acted with "the state of mind required to prove the underlying violation." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1164 (9th Cir. 2018). Under *Heller* and *Wrenn*, Plaintiffs need only allege that the City Defendants enacted a total ban and Plaintiffs' allegations establish that. *Id.* In a direct *Monell* claim the local government's deliberate adoption of its policy or practice "establishes that the municipality acted culpably." *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1164 (*quoting Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. at 404-405 ("Where a plaintiff claims that a particular municipal

action itself violates federal law, or directs an employee to do so, resolving the[] issues of fault and causation are straightforward.")).

Where a plaintiff claims that a particular municipal action *itself* violates federal law, or directs an employee to do so, resolving issues of fault and causation is straightforward. *Brown*, 520 U.S. at 404. "[P]roof that a municipality's legislative body or authorized decisionmaker has intentionally deprived a plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. *Id.* at 405; *see Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 125 (2d Cir. 2004) ("*Monell* established that alleging that a municipal policy or ordinance is itself unconstitutional is always sufficient to establish the necessary causal connection between the municipality and the constitutional deprivation, because an employee's act of enforcing an unconstitutional municipal policy may be considered the act of the municipality itself."); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994) ("Where, as here, a local police officer enforces an unconstitutional ordinance, relief lies against the city.") (*citing Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978)); *Sandoval v. Cnty. of Sonoma*, 912 F.3d 509, 517 (9th Cir. 2018)(impoundment of plaintiffs' vehicles was thus not caused by state law, but by Defendants' policies of impounding vehicles when the driver had never been issued a California driver's license).

### 7. Plaintiffs and putative class members did not need to apply for CCWs to establish standing to bring this lawsuit.

Both the District Court and the defendants noted that Plaintiffs did not apply for CCWs without explaining why that fact is legally significant. Defendants' Motion to Dismiss Amended Complaint, ER-96; Order Granting Defendants' Motion to Dismiss; Defendants' Motion to Dismiss. ER-11.

The reason they did not is because the fact is not relevant in a post-enforcement challenge as here where the City Defendants enforced the statutes as implemented by them against Named Plaintiffs and the putative class members. appellants suffered an injury in fact because the City actually brought an enforcement action against appellants.

In a pre-enforcement challenge to a statute with a licensing regime a plaintiff obviously cannot establish standing through submission to the challenged statute. If the Plaintiff does not submit to a challenged statute they have no injury and thus no standing. But courts have allowed Plaintiffs in pre-enforcement challenges to establish an injury either through a well-founded fear of prosecution or by treating the denial of the application itself as an injury that confers Article III standing.

Here, Plaintiffs did submit to the statute because City Defendants enforced it against them by arresting them, detaining them, and by referring their cases for prosecution. Therefore, Plaintiffs do not need to resort to a well-founded fear of prosecution or treating the denial of the application as an injury that confers Article

III standing. *Desert Outdoor Advertising v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996). Suffering actual enforcement of a statute for failure to obtain a satisfies the "actual and well-founded fear that the law will be enforced against them" method of establishing standing. *See Moreno Valley*, 103 F.3d 814, 818 (*quoting Virginia v. American Booksellers Ass'n*, 484 U.S. 383, 393 (1988) (standing requires party to have "actual and well-founded fear that the law will be enforced against them").

There was no need for the Plaintiffs or the putative class members to apply for CCWs before bringing this lawsuit because this is a post-enforcement challenge to the City Defendants' policies, not a pre-enforcement challenge. They "submitted" to the unconstitutional municipal ordinances and policies when the City Defendants arrested, detained, and referred them for prosecution. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 12 151 (1969); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994). In *Shuttlesworth v. Birmingham* the Court stated that "our decisions have made clear that a person faced with such an unconstitutional licensing law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license." *N.Y. State Rifle & Pistol Ass'n v. 11 Bruen*, 142 S. Ct. at 2138 n.9 (*quoting Shuttlesworth v. Birmingham*, 394 U.S. 147, 12 151 (1969)). The Court's citation to *Shuttlesworth* makes clear that this First Amendment principle is also applicable to Second Amendment cases. *See also*

40

*Grossman v. City of Portland*, where the Ninth Circuit allowed Plaintiffs' claim against the municipality even though the plaintiff had not applied for a license before challenging the municipal ordinance. 33 F.3d at 1203 (arresting plaintiff for violating a local ordinance requiring permit that violated the First Amendment violated the First Amendment rights of plaintiff even though plaintiff did not apply for a permit).

This court established the same rule in Desert Outdoor Advertising that Plaintiffs do not need to apply for an unconstitutional permit to challenge enforcement of a municipal ordinance against them for failure to obtain a permit in *Desert Outdoor Advertising*. In *Desert Outdoor Advertising* Plaintiffs challenged the constitutionality of the city's sign ordinance and the permit process which required permits for certain categories of signs after the city enforced the ordinance against them because they had erected signs without first applying for a permit. *Desert Outdoor Advertising*, 103 F.3d at 818. The court rejected the City's contention that Plaintiffs did not have standing to challenge the ordinance and the permit process because Plaintiffs had not applied for permits. The court held that the Plaintiffs had met all three elements of standing because, first, Plaintiffs suffered an injury in fact because the City actually brought an enforcement action against them, second, Plaintiffs' injury was directly traceable to the City's conduct in passing the ordinance and in attempting to compel Plaintiffs to remove their signs, and third, a declaration

41

that the ordinance was unconstitutional would likely redress Plaintiffs' injuries by enabling them to maintain their signs. *Id.* at 818.

The same analysis applies here. Named Plaintiffs' and putative class members satisfy all three Article III standing requirement. The City Defendants enforced the concealed carry prohibitions as implemented by them against Named Plaintiffs and the putative class members by arrest, detaining, and prosecution them (by referral). Named Plaintiffs' and putative class members' injuries are directly traceable to the City Defendants' conduct in passing its ordinances and adopting its policies and the Chief's "no-issue" CCW policy, and enforcing the concealed carry prohibitions as implemented by City Defendants against them. Finally, an award of money damages and a declaration that their arrests and prosecutions were legal nullities would redress their injuries. *See Desert Outdoor Advertising*, 103 F.3d at 818.

Alternatively applying for a CCW would have been futile because the Chief had a "no-issue" CCW policy and he never granted CCWs. ER-129, ¶ 3-4; ER-142, ¶ 109; ER-145, ¶ 125. *Baker v. Kealoha,* 679 Fed. Appx. 625, 626 (9th Cir. 2017) (Thomas, C. J. dissenting) (implicitly recognizing futility doctrine applies to denials of concealed carry licenses in Hawaii by noting defendant entitled to summary judgment because plaintiff did not establish futility) (although this is an unpublished decision the rationale is persuasive and has been used in other circuits); *Albuquerque Indian Rights v. Lujan*, 930 F.2d 49(D.C. Cir. 1991) (same); Ginsburg, J., concurring) ("A non-applicant would also have standing . . . to challenge as unlawful

a policy . . . that has the effect of disqualifying her and rendering her application pointless.").

Moreover, the face of the Chief's policy on good cause and the other challenged City Defendant policies established futility for Named Plaintiffs and absent class members because they could not have satisfied the standard. *Taniguchi v. Schultz, 303 F.3d 950, 957* (9th Cir. 2002) (concluding that the face of the challenged statute established futility because Taniguchi would not have qualified under the statute for a discretionary waiver because of her immigration status). The issue on standing was whether petitioner Taniguchi, by failing to apply for the waiver and subsequently receiving a denial, suffered no injury in fact. But to apply for the waiver would have been futile on Taniguchi's part because the statute in question unambiguously precluded Taniguchi, as lawful permanent resident convicted of an aggravated felony, from the discretionary waiver. *Taniguchi v. Schultz*, 303 F.3d at 957. Therefore, the court had jurisdiction to consider Taniguchi's equal protection claim.

The court in *Desert Outdoor Advertising* also held that Plaintiffs also had standing to challenge the permit requirement, even though they did not apply for permits, because applying for a permit would have been futile, because: (1) the City brought state court actions against Desert and OMG to compel them to remove their signs; and (2) the ordinance flatly prohibited the type of signs Plaintiffs had erected.

43

103 F.3d at 818. Named Plaintiffs and the putative class members satisfy both conditions.

In *Safari Club Int'l* the D.C. Circuit held that agency's indefinite suspension of issuance of import permits constituted a *de facto* denial of Plaintiffs' application even though Plaintiffs did not submit application which created Article II standing. *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1286-1287 (D.C. Cir.2016).

## III. The City Defendants violated Mr. Matthews's Fourteenth Amendment Right To Travel by adopting and implementing a policy of a total ban on carriage of handguns in public and enforcing it against Plaintiffs.

Under *Soldal v. Cook County*, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands," and if "multiple violations are alleged," Courts must "examine each constitutional provision in turn." *Soldal v. Cook County*, 506 U.S. 56, 70 (1992).

The City Defendants' conduct described above and incorporated by reference herein violates Mr. Matthews' and the non-resident putative class members' Fourteenth Amendment right as well as his Second Amendment rights.

Mr. Matthews states a claim because even though state law restricts CCWs to residents of a jurisdiction, and he was not a resident of the City at the time of his arrest, the state residency requirement is merely a red herring. Defendants still would not have granted him a CCW pursuant to their "no-issue" CCW policy, even  if he

were a resident, and so Defendants' policy was the moving force behind his arrest and other injuries.

His claim is not time-barred because of the continuing tort doctrine because the criminal prosecution stemming from his arrest was not dismissed until 12/16/2021, which is within the two-year period from the time of his arrest, 9/27/2019, and so "at least one act falls within the time period." *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 19 (2002) (hostile work environment)); *see e.g., United States v. Blizzard*, 27 F.3d 100, 20 102 (4th Cir. 1994)(certain crimes such as receiving or concealing stolen property are continuing crimes, whose statutes of limitations do not commence until wrongful possession or concealment ends).

## IV. CONCLUSION

This Court should find that the City Defendants' policies, and the Chief's "no-issue" CCW policies were unconstitutional under the Second Amendment and the Fourteenth Amendment, and the City Defendants and the Chief acting pursuant to the City Defendants' policies, violated the Named Plaintiffs' Second Amendment

rights and Mr. Matthews's Fourteenth Amendment rights by enforcing their policies against Named Plaintiffs and the putative class members.

Dated: October 8, 2024      Respectfully submitted,

*/s/ William Charles Cole Claiborne III*
WILLIAM CHARLES COLE CLAIBORNE III
Attorney at Law
ClaiborneLaw
717 D Street N.W., Ste 300
Washington, DC 20004-2815
Phone 202/824-0700
Email claibornelaw@gmail.com

*Attorney for Appellants and the putative class members*

46

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)**     23-3874

I am the attorney or self-represented party.

**This brief contains** 10,832 **words,** including 0 words

manually counted in any visual images, and excluding the items exempted by FRAP

32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

◉ complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [           ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**  /s/ William Charles Cole Claiborne III    **Date**  October 8, 2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                                 *Rev. 12/01/22*

47

# ADDENDUM

# ADDENDUM OF STATUTORY AUTHORITIES

## INDEX

| Description | Page |
|---|---|
| Judicial Council of California Criminal Jury Instruction 2520, 2520 Carrying Concealed Firearm on Person (Cal. Pen. Code § 25400(a)(2)) | Add.1 |
| Cal. Pen. Code § 25605. Inapplicability of prohibition against carrying concealed firearms or unloaded handgun at place of residence, business, or lawfully possessed private property in specified circumstances | Add.6 |
| Cal. Pen. Code § 26010. Exemption for persons licensed to carry concealed weapons | Add.7 |
| Cal. Pen. Code § 26045. Immediate, grave danger exception; Violation; Finding of fact | Add.9 |
| Cal. Pen. Code § 26150. License to carry concealed weapon; Issuance by sheriff [Effective until January 1, 2024] | Add.12 |
| Cal. Pen. Code § 26150 [redline]. License to carry concealed weapon; Issuance by sheriff | Add.14 |
| Cal. Pen. Code § 26155. License to carry concealed weapon; Issuance by chief of police | Add.16 |
| Cal. Pen. Code § 26350. Crime of openly carrying an unloaded handgun; Application | Add.17 |
| *Davis v. City of Los Angeles,* No. B241631 (Cal. Ct. App. Oct. 14, 2014) | Add.19 |
| Article 5. Firearms – Dangerous Weapons | Add.39 |
| Sec. 55.00. Guns – Permits | Add.39 |
| Sec. 55.01. Concealed Weapons – Permit | Add.39 |
| Sec. 55.02. Concealed Weapons – Permit – Record | Add.39 |
| Sec. 55.03. Concealed Weapons – Permits – Fee | Add.40 |
| Sec. 55.04. Tear Gas Weapons – Permits | Add.40 |
| Sec. 55.05. Assault Weapons – Sale or Possession Prohibited | Add.40 |
| Sec. 55.06. Use of Bows and Arrows Prohibited | Add.40 |
| Sec. 55.07. Prohibition on Carrying or Possessing Specified Items While Attending or Participating in Any Public Demonstration, Rally, Protest, Picket Line or Public Assembly | Add.41 |

Sec. 55.08. Glass Bottles on Public Property Prohibited — Add.42

Sec. 55.09. Ammunition Sales — Add.42

Sec. 55.10. Carry Knives or Daggers in Plain View Prohibited — Add.43

Sec. 55.11. Requirements for Ammunition Sales — Add.43

Sec. 55.12. Duty to Report Theft or Loss of Firearms, Exemptions — Add.44

Sec. 55.12.1. [Disposal of Firearms and Ammunition.] — Add.45

Sec. 55.13. Sale of Ammunition Clips and Similar Devices — Add.45

Sec. 55.14. Sale or Purchase of More than One Handgun within a Thirty-day Period Prohibited — Add.46

Sec. 55.15. Fingerprinting of Firearms Purchasers — Add.48

Sec. 55.16. Sale of Ultracompact Firearms Prohibited — Add.49

Sec. 55.17. Possession of Gun Parts in Airports — Add.49

Sec. 55.18. Sale of Large Caliber Firearms Prohibited — Add.49

Sec. 55.19. [Sale of Ammunition for Large Caliber Firearms Prohibited.] — Add.51

Sec. 55.20. False or Secret Compartments in Vehicles to Hide Firearms or Destructive Devices — Add.52

Sec. 55.21. Safe Storage of Firearms — Add.53

Sec. 55.22. Prohibition on Possession, Purchase, or Sale of Non-serialized, Unfinished Firearm Frames or Receivers and Non-serialized Firearms — Add.53

USCS Const. Amend. 14, Part 1 of 15 (Current through the ratification of the 27th Amendment on May 7, 1992) — Add.57

Judicial Council Of California Criminal Jury Instruction 2520, Judicial Council Of...

**Judicial Council Of California Criminal Jury Instruction 2520**

Judicial Council Of California Criminal Jury Instructions    April 2024 Update
By the Judicial Council of California Advisory Committee on Criminal Jury Instructions

**Weapons**

**C. Carrying a Firearm**

**(i) Concealed**

---

2520 Carrying Concealed Firearm on Person (Pen. Code, § 25400(a)(2))

The defendant is charged [in Count ____] with unlawfully carrying a concealed firearm on (his/her) person [in violation of Penal Code section 25400(a)(2)].

To prove that the defendant is guilty of this crime, the People must prove that:

1. The defendant carried on (his/her) person a firearm capable of being concealed on the person;
2. The defendant knew that (he/she) was carrying a firearm;
AND

3. It was substantially concealed on the defendant's person.
[A *firearm capable of being concealed on the person* is any device designed to be used as a weapon, from which a projectile is expelled or discharged through a barrel by the force of an explosion or other form of combustion and that has a barrel less than 16 inches in length. [A *firearm capable of being concealed on the person* also includes any device that has a barrel 16 inches or more in length that is designed to be interchanged with a barrel less than 16 inches in length.] [A *firearm* also includes any rocket, rocket-propelled projectile launcher, or similar device containing any explosive or incendiary material, whether or not the device is designed for emergency or distress signaling purposes.]]

[The term *firearm capable of being concealed on the person* is defined in another instruction.]

[A firearm does not need to be in working order if it was designed to shoot and appears capable of shooting.]

[Firearms carried openly in belt holsters are not concealed.]

*<Defense: Statutory Exemption>*

[The defendant did not unlawfully carry a concealed firearm if _____*<insert defense from* Pen. Code, §§ 25600, 25605, 25525, 25510, or 25450>. The People have the burden of proving beyond a reasonable doubt that the defendant unlawfully carried a concealed firearm. If the People have not met this burden, you must find the defendant not guilty of this crime.]

*New January 2006; Revised February 2012, March 2021*

**BENCH NOTES**

***Instructional Duty***

---

*Cal Pen Code § 25400*

Deering's California Codes are current through the 2022 Regular Session.

*Deering's California Codes Annotated > PENAL CODE (§§ 1 — 34370) > Part 6 Control of Deadly Weapons (Titles 1 — 4) > Title 4 Firearms (Divs. 1 — 12) > Division 5 Carrying Firearms (Chs. 1 — 7) > Chapter 2 Carrying a Concealed Firearm (Arts. 1 — 5) > Article 1 Crime of Carrying a Concealed Firearm (§ 25400)*

## § 25400. Carrying concealed firearm; Carrying firearm openly in belt holster; Punishment

**(a)** A person is guilty of carrying a concealed firearm when the person does any of the following:

**(1)** Carries concealed within any vehicle that is under the person's control or direction any pistol, revolver, or other firearm capable of being concealed upon the person.

**(2)** Carries concealed upon the person any pistol, revolver, or other firearm capable of being concealed upon the person.

**(3)** Causes to be carried concealed within any vehicle in which the person is an occupant any pistol, revolver, or other firearm capable of being concealed upon the person.

**(b)** A firearm carried openly in a belt holster is not concealed within the meaning of this section.

**(c)** Carrying a concealed firearm in violation of this section is punishable as follows:

**(1)** If the person previously has been convicted of any felony, or of any crime made punishable by a provision listed in *Section 16580*, as a felony.

**(2)** If the firearm is stolen and the person knew or had reasonable cause to believe that it was stolen, as a felony.

**(3)** If the person is an active participant in a criminal street gang, as defined in subdivision (a) of *Section 186.22*, under the Street Terrorism Enforcement and Prevention Act (Chapter 11 (commencing with *Section 186.20*) of Title 7 of Part 1), as a felony.

William Claiborne

**Add.2**

**(4)** If the person is not in lawful possession of the firearm or the person is within a class of persons prohibited from possessing or acquiring a firearm pursuant to Chapter 2 (commencing with *Section 29800*) or Chapter 3 (commencing with *Section 29900*) of Division 9 of this title, or *Section 8100 or 8103 of the Welfare and Institutions Code*, as a felony.

**(5)** If the person has been convicted of a crime against a person or property, or of a narcotics or dangerous drug violation, by imprisonment pursuant to subdivision (h) of *Section 1170*, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

**(6)** If both of the following conditions are met, by imprisonment pursuant to subdivision (h) of *Section 1170*, or by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment:

**(A)** The pistol, revolver, or other firearm capable of being concealed upon the person is loaded, or both it and the unexpended ammunition capable of being discharged from it are in the immediate possession of the person or readily accessible to that person.

**(B)** The person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of *Section 11106* as the registered owner of that pistol, revolver, or other firearm capable of being concealed upon the person.

**(7)** In all cases other than those specified in paragraphs (1) to (6), inclusive, by imprisonment in a county jail not to exceed one year, by a fine not to exceed one thousand dollars ($1,000), or by both that imprisonment and fine.

**(d)**

**(1)** Every person convicted under this section who previously has been convicted of a misdemeanor offense enumerated in *Section 23515* shall be punished by imprisonment in a county jail for at least three months and not exceeding six months, or, if granted probation, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned in a county jail for at least three months.

**(2)** Every person convicted under this section who has previously been convicted of any felony, or of any crime made punishable by a provision listed in *Section 16580*, if probation is granted, or if the execution or imposition of sentence is suspended, it shall be a condition thereof that the person be imprisoned in a county jail for not less than three months.

William Claiborne

**Add.3**

Cal Pen Code § 25400

**(e)** The court shall apply the three-month minimum sentence as specified in subdivision (d), except in unusual cases where the interests of justice would best be served by granting probation or suspending the imposition or execution of sentence without the minimum imprisonment required in subdivision (d) or by granting probation or suspending the imposition or execution of sentence with conditions other than those set forth in subdivision (d), in which case, the court shall specify on the record and shall enter on the minutes the circumstances indicating that the interests of justice would best be served by that disposition.

**(f)** A peace officer may arrest a person for a violation of paragraph (6) of subdivision (c) if the peace officer has probable cause to believe that the person is not listed with the Department of Justice pursuant to paragraph (1) of subdivision (c) of *Section 11106* as the registered owner of the pistol, revolver, or other firearm capable of being concealed upon the person, and one or more of the conditions in subparagraph (A) of paragraph (6) of subdivision (c) is met.

## History

Added *Stats 2010 ch 711 § 6 (SB 1080)*, effective January 1, 2011, operative January 1, 2012. Amended *Stats 2011 ch 15 § 543 (AB 109)*, effective April 4, 2011, operative January 1, 2012.

Annotations

## Notes

**Editor's Notes—**

**Amendments:**

**Note—**

**Editor's Notes—**

The Community Corrections Grant Program referred to in *Stats 2011 ch 15 § 636*, as amended by *Stats 2011 ch 39 § 68*, was created by *Stats 2011 ch 40 § 3*, operative October 1, 2011.

**Amendments:**

**2011 Amendment:**

William Claiborne

Cal Pen Code § 25400

Substituted "pursuant to subdivision (h) of Section 1170" for "in the state prison" in subd (c)(5) and in the introductory clause of subd (c)(6).

**Note—**

*Stats 2011 ch 15 § 636*, as amended by *Stats 2011 ch 39 § 68*, provides:

> SEC. 636. This act will become operative no earlier than October 1, 2011, and only upon creation of a community corrections grant program to assist in implementing this act and upon an appropriation to fund the grant program.

*Stats 2011 ch 15* provides:

> *SECTION 1*. This act is titled and may be cited as the 2011 Realignment Legislation addressing public safety.

**Commentary**

**Law Revision Commission Comments:**

**2010—**

> Subdivision (a) of *Section 25400* continues former Section 12025(a) without substantive change.

> Subdivision (b) continues former Section 12025(f) without substantive change.

> Subdivision (c) continues former Section 12025(b) without substantive change. Subdivision (d) continues former Section 12025(d) without substantive change. For guidance in applying paragraphs (c)(1) and (d)(2), see *Section 16015* (determining existence of prior conviction).

> Subdivision (e) continues former Section 12025(e) without substantive change.

> Subdivision (f) continues former Section 12025(c) without substantive change.

> Former Section 12025(g) is continued in *Section 16750* ("lawful possession of the firearm").

> Former Section 12025(h) was repealed by its own terms on January 1, 2005, so it is not continued. See 1999 Cal. Stat. ch. 571, § 2.

> See *Sections 16520* ("firearm"), 16530 ("firearm capable of being concealed upon the person," "pistol," and "revolver"), 16750 ("lawful possession of the firearm"), 16840 ("loaded" and "loaded firearm").

**Notes to Decisions**

William Claiborne

**Add.5**

*Cal Pen Code § 25605*

Deering's California Codes are current through the 2024 Regular Session Ch 268.

*Deering's California Codes Annotated  >  PENAL CODE (§§ 1 — 34400)  >  Part 6 Control of Deadly Weapons (Titles 1 — 4)  >  Title 4 Firearms (Divs. 1 — 12)  >  Division 5 Carrying Firearms (Chs. 1 — 7)  >  Chapter 2 Carrying a Concealed Firearm (Arts. 1 — 5)  >  Article 4 Other Exemptions (§§ 25600 — 25655)*

## § 25605. Inapplicability of prohibition against carrying concealed firearms or unloaded handgun at place of residence, business, or lawfully possessed private property in specified circumstances

**(a)** *Section 25400* and Chapter 6 (commencing with *Section 26350*) of Division 5 shall not apply to or affect any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with *Section 29800*) or Chapter 3 (commencing with *Section 29900*) of Division 9 of this title, or *Section 8100 or 8103 of the Welfare and Institutions Code*, who carries, either openly or concealed, anywhere within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident, any handgun.

**(b)** No permit or license to purchase, own, possess, keep, or carry, either openly or concealed, shall be required of any citizen of the United States or legal resident over the age of 18 years who resides or is temporarily within this state, and who is not within the excepted classes prescribed by Chapter 2 (commencing with *Section 29800*) or Chapter 3 (commencing with *Section 29900*) of Division 9 of this title, or *Section 8100 or 8103 of the Welfare and Institutions Code*, to purchase, own, possess, keep, or carry, either openly or concealed, a handgun within the citizen's or legal resident's place of residence, place of business, or on private property owned or lawfully possessed by the citizen or legal resident.

**(c)** Nothing in this section shall be construed as affecting the application of *Sections 25850* to *26055*, inclusive.

**History**

William Claiborne

**Add.6**

## *Cal Pen Code § 26010*

Deering's California Codes are current through the 2022 Regular Session.

*Deering's California Codes Annotated > PENAL CODE (§§ 1 — 34370) > Part 6 Control of Deadly Weapons (Titles 1 — 4) > Title 4 Firearms (Divs. 1 — 12) > Division 5 Carrying Firearms (Chs. 1 — 7) > Chapter 3 Carrying a Loaded Firearm (Arts. 1 — 5) > Article 4 Other Exemptions to the Crime of Carrying a Loaded Firearm in Public (§§ 26000 — 26060)*

### § 26010. Exemption for persons licensed to carry concealed weapons

*Section 25850* does not apply to the carrying of any handgun by any person as authorized pursuant to Chapter 4 (commencing with *Section 26150*) of Division 5.

### History

Added *Stats 2010 ch 711 § 6 (SB 1080)*, effective January 1, 2011, operative January 1, 2012.

Annotations

### Commentary

### Law Revision Commission Comments:

### 2010—

*Section 26010* continues former Section 12031(b)(6) without substantive change.

See *Section 16640* ("handgun").

### Research References & Practice Aids

### Legal Periodicals:

Local Gun Bans in California: A Futile Exercise. *41 U.S.F. L. Rev. 333*.

Deering's California Codes Annotated
Copyright © 2023 Matthew Bender & Company, Inc.

William Claiborne

Page 2 of 2

Cal Pen Code § 26010

a member of the LexisNexis Group. All rights reserved.

---

**End of Document**

William Claiborne

**Add.8**

## *Cal Pen Code § 26045*

Deering's California Codes are current through the 2024 Regular Session Ch 268.

*Deering's California Codes Annotated > PENAL CODE (§§ 1 — 34400) > Part 6 Control of Deadly Weapons (Titles 1 — 4) > Title 4 Firearms (Divs. 1 — 12) > Division 5 Carrying Firearms (Chs. 1 — 7) > Chapter 3 Carrying a Loaded Firearm (Arts. 1 — 5) > Article 4 Other Exemptions to the Crime of Carrying a Loaded Firearm in Public (§§ 26000 — 26060)*

### § 26045. Immediate, grave danger exception; Violation; Finding of fact

(a)  Nothing in *Section 25850* is intended to preclude the carrying of any loaded firearm, under circumstances where it would otherwise be lawful, by a person who reasonably believes that any person or the property of any person is in immediate, grave danger and that the carrying of the weapon is necessary for the preservation of that person or property.

(b)  A violation of *Section 25850* is justifiable when a person who possesses a firearm reasonably believes that person is in grave danger because of circumstances forming the basis of a current restraining order issued by a court against another person who has been found to pose a threat to the life or safety of the person who possesses the firearm. This subdivision may not apply when the circumstances involve a mutual restraining order issued pursuant to Division 10 (commencing with *Section 6200) of the Family Code* absent a factual finding of a specific threat to the person's life or safety. It is not the intent of the Legislature to limit, restrict, or narrow the application of current statutory or judicial authority to apply this or other justifications to a defendant charged with violating Section 25850 or committing another similar offense. Upon trial for violating *Section 25850*, the trier of fact shall determine whether the defendant was acting out of a reasonable belief that the defendant was in grave danger.

(c)  As used in this section, "immediate" means the brief interval before and after the local law enforcement agency, when reasonably possible, has been notified of the danger and before the arrival of its assistance.

### History

William Claiborne

**Add.9**

Cal Pen Code § 26045

Added *Stats 2010 ch 711 § 6 (SB 1080)*, effective January 1, 2011, operative January 1, 2012. Amended *Stats 2018 ch 185 § 7 (AB 2176)*, effective January 1, 2019.

Annotations

## Notes

### Editor's Notes—

### Amendments:

**Editor's Notes—**

For Decisions Under Former Pen C § 12031, see current *Pen C § 25850*.

**Amendments:**

**2018 Amendment (ch 185):**

Substituted "Section 25850" for "Section 25400" in the second to the last sentence of (b).

## Commentary

**Law Revision Commission Comments:**

**2010—**

Subdivision (a) of *Section 26045* continues the first sentence of former Section 12031(j)(1) without substantive change.

Subdivision (b) continues former Section 12031(j)(2) without substantive change.

Subdivision (c) continues the second sentence of former Section 12031(j)(1) without substantive change.

See *Sections 16520* ("firearm"), 16840 ("loaded" and "loaded firearm").

**2018—**

*Section 26045* is amended to correct an erroneous cross-reference. This is a nonsubstantive change.

## Research References & Practice Aids

Page 3 of 3

Cal Pen Code § 26045

**Legal Periodicals:**

California's Unloaded Open Carry Bans: A Constitutional and Risky, but Perhaps Necessary, Gun Control Strategy. *61 UCLA L. Rev. 464*.

Local Gun Bans in California: A Futile Exercise. *41 U.S.F. L. Rev. 333*.

Deering's California Codes Annotated
Copyright © 2024 All rights reserved.

_____

**End of Document**

**Add.11**

## *Cal Pen Code § 26150*

### California Code Archive

*Deering's California Codes Annotated > PENAL CODE > Part 6. Control of Deadly Weapons > Title 4. Firearms > Division 5. Carrying Firearms > Chapter 4. License to Carry a Pistol, Revolver, or Other Firearm Capable of Being Concealed Upon the Person*

## Notice

⚑. This section has more than one version with varying effective dates.

## § 26150. License to carry concealed weapon; Issuance by sheriff [Effective until January 1, 2024]

(a)  When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may issue a license to that person upon proof of all of the following:

(1)  The applicant is of good moral character.

(2)  Good cause exists for issuance of the license.

(3)  The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business.

(4)  The applicant has completed a course of training as described in *Section 26165*.

(b)  The sheriff may issue a license under subdivision (a) in either of the following formats:

(1)  A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

(2)  Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

William Claiborne

**Add.12**

Cal Pen Code § 26150

**(c)**

> **(1)**  Nothing in this chapter shall preclude the sheriff of the county from entering into an agreement with the chief or other head of a municipal police department of a city to process all applications for licenses, renewals of licenses, or amendments to licenses pursuant to this chapter, in lieu of the sheriff.

> **(2)**  This subdivision shall only apply to applicants who reside within the city in which the chief or other head of the municipal police department has agreed to process applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

## History

Added *Stats 2010 ch 711 § 6 (SB 1080)*, effective January 1, 2011, operative January 1, 2012. Amended *Stats 2015 ch 785 § 2 (AB 1134)*, effective January 1, 2016.

Deering's California Codes Annotated
Copyright © 2024 All rights reserved.

**End of Document**

**Comparing:** Current Effective and Archived

## Cal Pen Code § 26150

Deering's California Codes are current through the 2024 Regular Session Ch 210

**Deering's California Codes Annotated  >  PENAL CODE (§§ 1 - 34400)  >  Part 6 Control of Deadly Weapons (Titles 1 - 4)  >  Title 4 Firearms (Divs. 1 - 12)  >  Division 5 Carrying Firearms (Chs. 1 - 7)  >  Chapter 4 License to Carry a Pistol, Revolver, or Other Firearm Capable of Being Concealed Upon the Person (§§ 26150 - 26235)**

### § 26150. License to carry concealed weapon; Issuance by sheriff [Effective until January 1, 2024]

**(a)** When a person applies for a new license or license renewal to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the sheriff of a county may shall issue or renew a license to that person upon proof of all of the following:

**(1)** The applicant is of good moral character not a disqualified person to receive such a license, as determined in accordance with the standards set forth in Section 26202.

**(2)** Good cause exists for issuance of the license The applicant is at least 21 years of age, and presents clear evidence of the person's identity and age, as defined in Section 16400.

**(3)** The applicant is a resident of the county or a city within the county, or the applicant's principal place of employment or business is in the county or a city within the county and the applicant spends a substantial period of time in that place of employment or business. Prima facie evidence of residency within the county or a city within the county includes, but is not limited to, the address where the applicant is registered to vote, the applicant's filing of a homeowner's property tax exemption, and other acts, occurrences, or events that indicate presence in the county or a city within the county is more than temporary or transient. The presumption of residency in the county or city within the county may be rebutted by satisfactory evidence that the applicant's primary residence is in another county or city within the county.

**(4)** The applicant has completed a course of training as described in Section 26165.

**(5)** The applicant is the recorded owner, with the Department of Justice, of the pistol, revolver, or other firearm for which the license will be issued.

**(b)** The sheriff may shall issue or renew a license under subdivision (a) in either of the following formats:

**(1)** A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

**(2)** Where the population of the county is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

**(c)**

**(1)** Nothing in this chapter shall preclude the sheriff of the county from entering into an agreement with the chief or other head of a municipal police department of a city to process all applications for licenses, renewals of licenses, or amendments to licenses pursuant to this chapter, in lieu of the sheriff.

Cal Pen Code _ 26150_(EffectiveJan1,2024ToArchivedDec31,2023)

**(2)** This subdivision shall only apply to applicants who reside within the city in which the chief or other head of the municipal police department has agreed to process applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

## History

Added Stats 2010 ch 711 § 6 (SB 1080), effective January 1, 2011, operative January 1, 2012. Amended Stats 2015 ch 785 § 2 (AB 1134), effective January 1, 2016; Stats 2023 ch 249 § 10 (SB 2), effective January 1, 2024.

Deering's California Codes Annotated
Copyright © 2024 All rights reserved.

End of Document

*Cal Pen Code § 26155*

Deering's California Codes are current through Chapter 6 of the 2022 Regular Session.

*Deering's California Codes Annotated  >  PENAL CODE (§§ 1 — 34370)  >  Part 6 Control of Deadly Weapons (Titles 1 — 4)  >  Title 4 Firearms (Divs. 1 — 12)  >  Division 5 Carrying Firearms (Chs. 1 — 7)  >  Chapter 4 License to Carry a Pistol, Revolver, or Other Firearm Capable of Being Concealed Upon the Person (§§ 26150 — 26225)*

## § 26155. License to carry concealed weapon; Issuance by chief of police

**(a)** When a person applies for a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person, the chief or other head of a municipal police department of any city or city and county may issue a license to that person upon proof of all of the following:

   **(1)** The applicant is of good moral character.

   **(2)** Good cause exists for issuance of the license.

   **(3)** The applicant is a resident of that city.

   **(4)** The applicant has completed a course of training as described in *Section 26165*.

**(b)** The chief or other head of a municipal police department may issue a license under subdivision (a) in either of the following formats:

   **(1)** A license to carry concealed a pistol, revolver, or other firearm capable of being concealed upon the person.

   **(2)** Where the population of the county in which the city is located is less than 200,000 persons according to the most recent federal decennial census, a license to carry loaded and exposed in only that county a pistol, revolver, or other firearm capable of being concealed upon the person.

**(c)** Nothing in this chapter shall preclude the chief or other head of a municipal police department of any city from entering an agreement with the sheriff of the county in which the city is located for the sheriff to process all applications for licenses, renewals of licenses, and amendments to licenses, pursuant to this chapter.

## History

William Claiborne

*Cal Pen Code § 26350*

Deering's California Codes are current through the 2022 Regular Session.

*Deering's California Codes Annotated > PENAL CODE (§§ 1 — 34370) > Part 6 Control of Deadly Weapons (Titles 1 — 4) > Title 4 Firearms (Divs. 1 — 12) > Division 5 Carrying Firearms (Chs. 1 — 7) > Chapter 6 Openly Carrying an Unloaded Handgun (Arts. 1 — 2) > Article 1 Crime of Openly Carrying an Unloaded Handgun (§ 26350)*

## § 26350. Crime of openly carrying an unloaded handgun; Application

**(a)**

**(1)** A person is guilty of openly carrying an unloaded handgun when that person carries upon his or her person an exposed and unloaded handgun outside a vehicle while in or on any of the following:

**(A)** A public place or public street in an incorporated city or city and county.

**(B)** A public street in a prohibited area of an unincorporated area of a county or city and county.

**(C)** A public place in a prohibited area of a county or city and county.

**(2)** A person is guilty of openly carrying an unloaded handgun when that person carries an exposed and unloaded handgun inside or on a vehicle, whether or not on his or her person, while in or on any of the following:

**(A)** A public place or public street in an incorporated city or city and county.

**(B)** A public street in a prohibited area of an unincorporated area of a county or city and county.

**(C)** A public place in a prohibited area of a county or city and county.

**(b)**

**(1)** Except as specified in paragraph (2), a violation of this section is a misdemeanor.

**(2)** A violation of subparagraph (A) of paragraph (1) of subdivision (a) is punishable by imprisonment in a county jail not exceeding one year, or by a fine not to exceed one thousand dollars ($1,000), or by both that fine and imprisonment, if both of the following conditions exist:

William Claiborne

**Add.17**

Cal Pen Code § 26350

    **(A)** The handgun and unexpended ammunition capable of being discharged from that handgun are in the immediate possession of that person.

    **(B)** The person is not in lawful possession of that handgun.

**(c)**

    **(1)** Nothing in this section shall preclude prosecution under Chapter 2 (commencing with *Section 29800*) or Chapter 3 (commencing with *Section 29900*) of Division 9, *Section 8100 or 8103 of the Welfare and Institutions Code*, or any other law with a penalty greater than is set forth in this section.

    **(2)** The provisions of this section are cumulative and shall not be construed as restricting the application of any other law. However, an act or omission punishable in different ways by different provisions of law shall not be punished under more than one provision.

**(d)** Notwithstanding the fact that the term "an unloaded handgun" is used in this section, each handgun shall constitute a distinct and separate offense under this section.

## History

Added *Stats 2011 ch 725 § 14 (AB 144)*, effective January 1, 2012.

Annotations

## Research References & Practice Aids

**Legal Periodicals:**

Review of Selected 2011 California Legislation: Penal: Chapter 725: Pandora's Lock-Box: Is the Legislature Locking Handguns in a Box, or Unleashing Concealed Weapons? *43 McGeorge L. Rev. 779*.

California's Unloaded Open Carry Bans: A Constitutional and Risky, but Perhaps Necessary, Gun Control Strategy. *61 UCLA L. Rev. 464*.

Deering's California Codes Annotated
Copyright © 2023 Matthew Bender & Company, Inc.
a member of the LexisNexis Group. All rights reserved.

William Claiborne

From Casetext: Smarter Legal Research

# Davis v. City of Los Angeles

<table>
<tr><td>

**Case Details**

**Full title:** DAVID R. DAVIS et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES…

**Court:** COURT OF APPEAL OF THE STATE OF CALIFORNIA SECOND APPELLATE DISTRICT DIVISION SEVEN

**Date published:** Oct 14, 2014

**Citations**

No. B241631 (Cal. Ct. App. Oct. 14, 2014)

</td></tr>
</table>

## Opinion

B241631

10-14-2014

DAVID R. DAVIS et al., Plaintiffs and Appellants, v. CITY OF LOS ANGELES et al., Defendants and Respondents.

Michel & Associates, C. D. Michel, Joshua R. Dale and Tamara M. Rider for Plaintiffs and Appellants. John C. Eastman and Anthony T. Caso for Center for Constitutional Jurisprudence as Amicus Curiae on behalf of Plaintiffs and Appellants. Michael N. Feuer, City Attorney, and Gregory P. Orland, Deputy City Attorney, for Defendants and Respondents.

SEGAL, J.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

(Los Angeles County Super. Ct. No. BS131915) APPEAL from a judgment of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed. Michel & Associates, C. D. Michel, Joshua R. Dale and Tamara M. Rider for Plaintiffs and Appellants. John C. Eastman and Anthony T. Caso for Center for Constitutional Jurisprudence as Amicus Curiae on behalf of Plaintiffs and Appellants. Michael N. Feuer, City Attorney, and Gregory P. Orland, Deputy City Attorney, for Defendants and Respondents.

————————————

**INTRODUCTION**

Plaintiffs David R. Davis, Jacob Daniel Hill, Brian Goldstein, Paul Cohen, Jill Brown, Chris Butler, Scott Austin, Eric Feder, and Lisa Siegel appeal from a judgment denying their petition for writ of mandate. By their petition, plaintiffs sought to compel defendants City of Los Angeles, Los Angeles Police Department (LAPD), and Police Chief Charlie Beck (collectively the City) to issue them permits to carry concealed weapons (CCW). The trial court concluded that mandate was not the proper remedy in this case and denied the petition. We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

A.    *The Assenza Judgment and the LAPD Concealed Weapons Permit Policy*

In 1994 the Los Angeles Superior Court entered a stipulated judgment in an action entitled *Assenza v. City of Los Angeles* (Super. Ct. L.A. County, 1994, No. BC115813) brought by a group of plaintiffs against the City, LAPD, then-Police Chief Willie L. Williams, and others. The plaintiffs were citizens and taxpayers who had unsuccessfully sought CCW permits from the City. They "challeng[ed] LAPD's procedure, rules and

practices for issuing licenses to carry concealed firearms pursuant to" Penal Code former section 12050 et seq.

Penal Code former section 12050 provided in pertinent part: "[T]he chief or other head of a municipal police department of any city or city and county, upon proof that the person applying is of good moral character, that good cause exists for the issuance, and that the person applying is a resident of the county, may issue to that person a license to carry a pistol, revolver, or other firearm capable of being concealed upon the person . . . ." (*Id.*, subd. (a)(1).) The Legislature has since repealed section 12050 and replaced it with Penal Code section 26150 et seq., operative January 1, 2012. (Stats. 2010, ch. 711, § 4.)

The judgment stated that the City "admit[ted] that certain rules, policies, practices and procedures, and certain features of the Board Policy Statement . . . were not in  compliance with [Penal Code former s]ection 12050 [et seq]. Those former rules, policies, practices and procedures have been altered. The Policy Statement itself has been repealed and will be replaced by the provisions of items E and F of this judgment, provided that the Los Angeles defendants reserve the right to add further specifications to their rules, regulations and guidelines, so long as such amendments are not inconsistent with the provisions of this judgment."

Item D of the *Assenza* judgment provided: "The allegations of the complaint showed good cause as to all of the plaintiffs who sought to be issued [CCW] licenses. . . . These named plaintiffs will receive licenses, and their licenses will be renewed for a one year term, but only so long as they continue to have good cause, good character, not to be barred by law from the ownership of concealable firearms, and to meet each of the other requirements of licensure under [Penal Code former s]ection 12050 [et seq]."

Item E provided: "The policy LAPD has adopted is that good cause exists if there is convincing evidence of a clear and present danger to life or of great bodily [injury] to the applicant, his (or her) spouse, or dependent child, which cannot be adequately dealt with by existing law enforcement resources, and which danger cannot be reasonably

avoided by alternative measures, and which danger would be significantly mitigated by the applicant's carrying of a concealed firearm."

Item F provided "further rules and guidelines . . . for the interpretation and implementation of Item E[.]" Specifically, paragraph 2 of Item F stated: "Good cause shall be deemed to exist, and a license will issue in the absence of strong countervailing factors, upon a showing of any of the following circumstances: a) The applicant is able to establish that there is an immediate or continuing threat, express or implied, to the applicant's, or the applicant's family's, safety and that no other reasonable means exist which would suffice to neutralize that threat. b) The applicant is employed in the field of security, has all requisite licenses, is employed by a security firm having all requisite licenses, and provides satisfactory proof that his or her work is of such a nature that it requires the carrying of a concealed weapon. c) The applicant has obtained, or is a person included within the protections of, a court order which establishes that the applicant is the on-going victim of a threat or physical violence or otherwise meets the criteria set forth in [Penal Code s]ection 12025.5. d) The applicant establishes that circumstances exist requiring amounts of valuable property which it is impractical or impracticable to entrust to the protection of armored car services or equivalent services for safe transportation of valuables. e) The applicant establishes that he or she is subject to a particular and unusual danger of physical attack and that no reasonable means are available to abate that threat." Paragraph 5 of Item F further provided that "[a]bsent good cause for denial, persons having good cause as defined in paragraph 2 shall be issued licenses for the maximum time period allowed by [Penal Code former] section 12050, and their licenses shall be renewed so long as they continue to have good cause. . . ." Paragraph 6 of Item F provided that "[a]ll applicants shall receive a copy of these guidelines along with the application form."

Finally, the judgment provided that "[t]he court will retain continued jurisdiction of the action in order to make any further orders which may be necessary.'" The LAPD then adopted a Concealed Weapon License Policy that included the language of Item E and Item F, paragraph 2, of the *Assenza* judgment.

In 1998 the parties amended the judgment to substitute Bernard Parks for Willie L. Williams, and in 2003 amended the judgment to substitute William J. Bratton for Bernard Parks. The operative third amended judgment entered on June 11, 2010 substituted Charlie Beck for William J. Bratton.

Thereafter, the *Assenza* plaintiffs claimed that defendants were not complying with the judgment. The *Assenza* court issued an order to show cause re contempt. Following a hearing, the court on July 29, 1998 issued an order designed to ensure that all police stations have applications for CCW permits and copies of the Concealed Weapon License Policy available for applicants.

B. *This Action*

On May 18, 2011 plaintiffs filed this action as a petition for writ of mandate alleging that the City was not abiding by the *Assenza* judgment. Plaintiffs alleged that defendants "have failed to consistently provide to CCW permit applicants both the CCW permit application and/or the LAPD Concealed Weapon Policy." Plaintiffs further alleged that the City had "also failed to inform *all* CCW applicants of the existence of the Advisory Review Panel," which reviews the denial of CCW permit applications, and that the City had "failed to promptly reconsider any application in which the Advisory Panel submits a different decision tha[n] the Defendants[]." Plaintiffs complained that the reconsideration "process takes about one year to complete," which "is an unreasonable amount of time because these [plaintiffs], all of whom the Advisory Review Panel determined satisfy the 'good cause' requirement for the issuance of a CCW, demonstrate the requisite showing of clear and *present* danger which necessitates the need for a CCW to be issued immediately."

Plaintiffs alleged that the City continued to infringe on their "right to obtain and receive a carry concealed weapons license, in addition to the procedure to obtain a response from Defendants[] with respect to CCW applications . . . ." Claiming they had no other plain, speedy, and adequate remedy, plaintiffs sought a writ of mandate pursuant to Code of Civil Procedure section 1085 to compel the City to comply with the *Assenza* judgment. Plaintiffs also sought a writ of prohibition to prevent the City from

refusing to comply with the *Assenza* judgment and an order requiring the City to issue CCW permits to plaintiffs.

On May 26, 2011 plaintiffs filed a notice of related cases, asserting that the *Assenza* action was related to this action because the two cases involved the same defendants and the same subject matter. Plaintiffs sought to have their case heard by the judge to whom *Assenza* was assigned. The City opposed the notice of related cases, pointing out that the plaintiffs in *Assenza* had filed a motion to enforce the judgment and for monetary sanctions. The City noted that "[s]ince the *Assenza* and *Davis* cases involve some of the same claims and the exact same declarations were filed in support of both matters, it is odd that two separate actions seeking essentially the same relief—a Petition for Writ of Mandate and a Motion to Enforce Judgment—were filed by the exact same attorneys." The City argued that "[n]otwithstanding this duplication of claims in two separate matters, the *Assenza* and *Davis* cases should not be related because they will not require 'substantial duplication of judicial resources if heard by different judges.'" First, the motion by the *Assenza* plaintiffs to enforce the judgment was fully briefed and set for hearing on June 9, 2011. Second, the claim in the *Assenza* case was that the defendants in that case had not provided CCW applications and copies of the LAPD CCW policy to applicants and had altered the CCW permit policy, whereas the issue in this case was whether the named plaintiffs were entitled to CCW permits. The trial court ruled that the cases were not related. Plaintiffs did not seek to intervene in the *Assenza* action.

The plaintiffs in *Assenza* filed their motion to enforce the judgment on May 4, 2011. On June 9, 2011 the trial court in that action granted the motion in part, and it ordered the defendants to provide the plaintiffs with certain CCW applications and denials and to make the application policy available on the LAPD website. On March 22, 2012 the *Assenza* plaintiffs filed a motion for an order to show cause re contempt. On October 24, 2012 the *Assenza* trial court denied the motion for an order to show cause re contempt but ordered the LAPD to post signs in police stations stating that the application for a CCW license is available on the LAPD's website.

On June 10, 2011 the City filed its answer to the petition. On August 19, 2011 plaintiffs filed a reply along with supporting documentation.

On April 17, 2012 plaintiffs filed their trial brief, supporting declarations, and exhibits. They argued that a petition for writ of mandate was an appropriate method for enforcing a consent decree like the *Assenza* judgment, that the *Assenza* judgment applied to them because they were intended beneficiaries of the judgment, and that the City was in violation of the *Assenza* judgment. The exhibits included documentation of plaintiffs' unsuccessful attempts to obtain CCW permits from the City. In opposition to the petition, the City argued that mandate was not a proper remedy and, even if it were, plaintiffs were not entitled to relief.

The trial court denied the petition. The court observed that "[t]his case concerns [plaintiffs'] effort to rely on the good cause factors and procedures set forth in the  <u>Assenza</u> Judgment to obtain mandamus compelling the[] issuance of CCW permits" to them. The plaintiffs "characterize the stipulated Judgment as a consent decree . . . , argue that they are third party beneficiaries of the consent decree . . . ," and claim that the defendants are not following the judgment. The court discussed the nature of consent decrees, while acknowledging that the "City does not necessarily agree that [the judgment] is a consent decree." The court stated that "a consent decree is a hybrid between contract and litigated judgment. While it has the force of the court behind it for contempt purposes, it is a voluntary mechanism. For present purposes, the voluntary feature of the Judgment means that mandamus should not be available. [¶] Mandamus is not an appropriate remedy for enforcing a contractual obligation against an agency. [Citation.] This is because a claim for breach of contract is an adequate remedy at law, and the duty which mandamus enforces is not the contractual duty of the entity, but the official duty of its officer or board. [Citation.]"

The court explained that if "the Chief of Police has breached the <u>Assenza</u> Judgment by failing to apply the factors set forth as generally constituting good cause for a CCW permit, he should be free to do so for purposes of mandamus. The appropriate remedy for his failure to comply is an OSC re: contempt in

the Assenza case." The court further explained that "one of the reasons for a consent decree is that a single court will interpret the decree and impose any remedies for its violation as appropriate. . . . The Assenza court has entered the Judgment, retained jurisdiction, held one enforcement hearing, and will hold another in the near future. There is no reason to believe that it will be unable to interpret the Judgment's provisions to resolve the dispute between [plaintiffs] and City over the meaning of good cause."

The trial court also ruled that "the Assenza court is the only entity that may modify the Judgment. It is undisputed that the Assenza Judgment is more restrictive of the Chief of Police's discretion than section 12050(a)(1)(B) requires. . . . According to [plaintiffs], the Chief of Police has had second thoughts about applying the Judgment's good cause circumstances without doing so in conjunction with his 'clear and present danger' policy. [Citation.] Whatever one thinks of the City's interpretation of the Judgment, any attempted modification o[r] clarification must occur through the Assenza court." The trial court added that the *Assenza* judgment states that it can only be enforced by "a motion to enforce or contempt in the Assenza case. Neither the City nor the plaintiffs in Assenza bargained for enforcement of its terms outside of the Assenza case."

The court also stated that, although mandate is available to enforce a ministerial duty to comply with the law, the court was "aware of no case, and [plaintiffs] cite none, where mandamus is available to compel an agency to perform a ministerial duty of complying with a judgment. Assuming that mandamus is available for that purpose, it is not available where the judgment is a consent decree for the reasons stated above."

As to plaintiffs' contention that they were third party beneficiaries of the consent decree, the court noted that "[w]hether they are depends in the first instance on an interpretation of the Judgment by the Assenza court." Plaintiffs "have a remedy through intervention in the Assenza case to seek relief," or by filing an action for declaratory relief. The court stated that mandate was not available to compel the Chief of Police to exercise his discretion to issue a CCW permit under Penal Code former section 12050, nor to remedy the failure to provide CCW permit application and policy at specific police stations, because the plaintiffs already had those documents.

**DISCUSSION**

A. *Standard of Review*

Under Code of Civil Procedure section 1085 writs of mandate are "available to compel public agencies to perform acts required by law. [Citation.] To obtain relief, a petitioner must demonstrate (1) no 'plain, speedy, and adequate' alternative remedy exists (Code Civ. Proc., § 1086); (2) "'a clear, present . . . ministerial duty on the part of the respondent'"; and (3) a correlative "'clear, present, and beneficial right in the petitioner to the performance of that duty.'" [Citations.] A ministerial duty is an obligation to perform a specific act in a manner prescribed by law whenever a given state of facts exists, without regard to any personal judgment as to the propriety of the act. [Citation.]" (*People v. Picklesimer* (2010) 48 Cal.4th 330, 339-340; accord, *People v. Davis* (2014) 226 Cal.App.4th 1353, 1371-1372.) We review plaintiffs' entitlement to a writ of mandate de novo. (See *White v. County of Los Angeles* (2014) 225 Cal.App.4th 690, 701 ["[i]n reviewing a trial court's decision on a petition for writ of traditional mandate, we review legal issues de novo on appeal"]; *Karen P. v. Superior Court* (2011) 200 Cal.App.4th 908, 912 ["'"[t]o the extent the trial court's ruling is based on assertedly improper criteria or incorrect legal assumptions, we review those questions de novo"'"].)

B. *Plaintiffs Cannot Enforce the Assenza Judgment in an Independent Action for Writ of Mandate*

Plaintiffs assert that the *Assenza* judgment is a consent decree that applies not only to the plaintiffs in that action but also to members of the public. Plaintiffs contend that the judgment is an enforceable contract, of which they are third party beneficiaries, and that they have a right to enforce the *Assenza* judgment in an independent petition for writ of mandate. We conclude that even if the *Assenza* judgment is a consent decree rather than a stipulated judgment, and even if the judgment is applicable to the public and enforceable as a contract, plaintiffs cannot enforce it as third party beneficiaries in an independent action for writ of mandate. Rather, the determination whether plaintiffs are third party beneficiaries of the judgment and are entitled to enforce it must occur in

**Add.27**

the *Assenza* action. Plaintiffs' remedies are intervention in the *Assenza* case or an action for declaratory relief but not a petition for writ of mandate.

1. Plaintiffs May Not Enforce the *Assenza* Judgment as Third Party Beneficiaries

"'In a . . . consent decree, litigants *voluntarily* terminate a lawsuit by *assenting to specified terms*, which the court agrees to enforce as a judgment.' [Citation.]" (*In re Tobacco Cases I* (2011) 193 Cal.App.4th 1591, 1600; see *Local No. 93, Intern. Assn. of Firefighters, AFL-CIO C.L.C. v. City of Cleveland* (1986) 478 U.S. 501, 510 [106 S.Ct. 3063, 92 L.Ed.2d 405].) "'While [consent decrees] are arrived at by negotiation between the parties and often admit no violation of law, they are motivated by threatened or pending litigation and must be approved by the court or administrative agency. . . . Because of this dual character, consent decrees are treated as contracts for some purposes but not for others.' [Citation.]" (*Johnson Products Co. v. F. T. C.* (7th Cir. 1977) 549 F.2d 35, 37, quoting from *U. S. v. ITT Continental Baking Co.* (1975) 420 U.S. 223, 236237 [95 S.Ct. 926, 43 L.Ed.2d 148]; see *Local No. 93, supra*, at p. 519 ["consent decrees bear some of the earmarks of judgments entered after litigation," but "because their terms are arrived at through mutual agreement of the parties, consent decrees also closely resemble contracts"]; *California State Auto. Assn. Inter-Ins. Bureau v. Superior Court* (1990) 50 Cal.3d 658, 663-664; *In re Tobacco Cases I, supra*, 193 Cal.App.4th at p. 1600.)

As did the trial court, we assume without deciding that there is such a thing as a consent decree under California law. *In re Tobacco Cases I* involved a consent decree entered pursuant to a multi-state master settlement agreement. (*In re Tobacco Cases I* (2010) 186 Cal.App.4th 42, 44-45.) Neither the parties nor the court in *Assenza* called the judgment a consent decree but instead referred to it as a judgment "pursuant to stipulation." (See Code Civ. Proc., § 664.6.) As we explain, even if the *Assenza* judgment were a consent decree, plaintiffs would not be entitled to the relief they seek.

As noted in *In re Tobacco Cases I, supra*, 193 Cal.App.4th 1591, "'whether a consent decree will be treated as a contract will depend upon the particular context in

which the issue arises.'" (*Id*. at p. 1600, quoting *Johnson Products Co. v. F.T.C., supra*, 549 F.2d at pp. 37-38.) Plaintiffs cite *In re Tobacco Cases I* for the principle that "[i]n enforcement actions, consent decrees are treated as contracts for purposes of interpretation." (*In re Tobacco Cases I, supra*, at p. 1601; see *Pardee Construction Co. v. City of Camarillo* (1984) 37 Cal.3d 465, 471 [applying principles of contract interpretation to earlier "consent judgment" between the parties].) The *In re Tobacco Cases I* opinion also states, however, that "courts have rejected the argument that consent decrees are contracts for purposes of . . . 'determining whether a third party beneficiary action could be maintained for breach of that contract.' [Citation.]" (*In re Tobacco Cases I, supra*, at p. 1600, fn. 2, quoting *Johnson Products Co., supra*, at p. 38; cf. *United States v. Swift & Co.* (1932) 286 U.S. 106, 115 [52 S.Ct. 460, 76 L.Ed. 999] ["[w]e reject the argument for the interveners that a decree entered upon consent is to be treated as a contract and not as a judicial act" for purposes of modification]; *Mendly v. County of Los Angeles* (1994) 23 Cal.App.4th 1193, 1206 ["stipulated judgment is not a 'contract'" for purpose of determining whether modification violated Contract Clause].) Thus, contrary to plaintiffs' contention, we do not apply contract principles to determine whether third party beneficiaries of the *Assenza* judgment may maintain an independent action to enforce the judgment.

In discussing the interpretation of consent decrees, plaintiffs assert that "[b]ecause this is a novel issue under California law, the only significant authority on the enforceability of consent decrees by intended third-party beneficiaries is from federal appellate decisions." This is a novel issue under California law because California law contains no provision for consent decrees. Rather, California law provides for stipulated judgments.

With respect to consent decrees, "[t]he law is rather clear that a third party, as [a] stranger to the decree and not a party to the government action either directly or by intervention, cannot attempt to enforce it against the defendant. [Citations.]" (*Control Data Corp. v. International Business Machines Corp.* (D.Minn. 1969) 306 F.Supp. 839, 845, aff'd *sub nom. Data Processing Financial & General Corp. v. International Business*

*Machines Corp*. (8th Cir. 1970) 430 F.2d 1277.) Thus, "[o]rdinarily non-parties have no right of action based upon a consent decree." (*Data Processing Financial & General Corp., supra*, at p. 1278; accord, *Johnson Products Co. v. F. T. C., supra*, 549 F.2d at p. 38; see *Rafferty v. NYNEX Corp*. (D.D.C. 1990) 744 F.Supp. 324, 329 ["[e]ven if there were some merit to the decree analysis, plaintiff could . . . not prevail, for it is well established that a private party cannot sue as a third-party beneficiary of a  government consent decree"].) The United States Supreme Court has held that "a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it." (*Blue Chip Stamps v. Manor Drug Stores* (1975) 421 U.S. 723, 750 [95 S.Ct. 1917, 44 L.Ed.2d 539]; see *Aiken v. City of Memphis* (6th Cir. 1994) 37 F.3d 1155, 1168 ["[t]he plain language of *Blue Chip* indicates that even *intended* third-party beneficiaries of a consent decree lack standing to enforce its terms"]; *Getty Oil Co. v. Department of Energy* (Temp.Emer.Ct.App. 1988) 865 F.2d 270, 276 [applying Supreme Court's "refusal in *Blue Chip Stamps* . . . to grant enforcement rights to nonparties to a consent decree, 'even though they were intended to be benefited by it'"]; *Jurewitz v. Bank of America, N.A*. (S.D.Cal. 2013) 938 F.Supp.2d 994, 997 ["'a well-settled line of authority from [the United States Supreme] Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefited by it'"]; *Ricci v. Okin* (D.Mass. 2011) 770 F.Supp.2d 438, 444 [same]; *Doe v. Briley* (M.D.Tenn. 2007) 511 F.Supp.2d 904, 909 ["[u]nder *Blue Chip Stamps*, the plaintiff must have been a party to the consent decree in order to enforce it"].) Even intended third party beneficiaries cannot enforce a consent decree "unless the decree specifically" affords them that right. (*Riha v. State Farm Mut. Auto. Ins. Co*. (S.D.Ind. 2007) 2007 WL 42976 at p. 6; see *International Business Machines Corp. v. Comdisco, Inc*. (N.D.Ill. 1993) 834 F.Supp. 264, 267-268; *Lavapies v. Bowen* (S.D.Ohio 1988) 687 F.Supp. 1193, 1207.)

Some federal courts have created an exception to the *Blue Chip Stamps* rule precluding third parties from enforcing a consent decree, based on Federal Rules of Civil

Procedure, rule 71 (28 U.S.C.), for intended beneficiaries. For example, the Ninth Circuit has held that "the standing rule from *Blue Chip Stamps* prohibits only *incidental* third party beneficiaries from suing to enforce a consent decree." (*Hook v. State of Ariz., Dept. of Corrections* (9th Cir. 1992) 972 F.2d 1012, 1015.) As explained in *Hodges by Hodges v. Public Bldg. Com'n of Chicago* (N.D.Ill. 1994) 864 F.Supp. 1493, "[d]espite its seemingly sweeping proscription, *Blue Chip Stamps* has been interpreted narrowly so that certain third party beneficiaries still may sue to enforce a consent decree. Proceeding under the theory that the Supreme Court had not meant to eviscerate Rule 71 [of the Federal Rules of Civil Procedure], courts have created an exception for would-be plaintiffs who are the intended, versus incidental, third party beneficiaries of the decree." (*Id*. at p. 1508.) "[I]f *Blue Chip Stamps* were read broadly to preclude even intended third party beneficiaries from enforcing a consent decree, it would create a direct conflict with [Federal] Rule[s of Civil Procedure, rule] 71. Rule 71 clearly allows intended third party beneficiaries to enforce consent decrees, and *Blue Chip Stamps* should be read to avoid eviscerating Rule 71." (*U.S. v. FMC Corp.* (9th Cir. 2008) 531 F.3d 813, 820, citing *Hook, supra*, at p. 1015; see *Beckett v. Air Line Pilots Ass'n* (D.C. Cir. 1993) 995 F.2d 280, 287 ["courts that have allowed non-parties to sue to enforce a consent decree or other court order as intended third party beneficiaries have relied in large part on Rule 71"]; *Berger v. Heckler* (2d Cir. 1985) 771 F.2d 1556, 1565 [*Blue Chip Stamps* "was not intended to preclude nonparties from intervening to enforce a consent decree where otherwise authorized by the federal rules of civil procedure"].)

Rule 71 of the Federal Rules of Civil Procedure (28 U.S.C.) provides: "When an order grants relief for a nonparty or may be enforced against a nonparty, the procedure for enforcing the order is the same as for a party."

*Jurewitz v. Bank of America, N.A., supra*, 938 F.Supp.2d 994 noted that since *Hook*, the Ninth Circuit has explained that "parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended ones, and so may not enforce the contract *absent a clear intent to the contrary*. This clear intent hurdle is not satisfied by a contract's recitation of interested constituencies, vague,

hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind. Rather, we examine the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries." (*Id*. at p. 998, quoting *County of Santa Clara v. Astra USA, Inc*. (9th Cir. 2009) 588 F.3d 1237, 1244, rev'd on other grounds *sub nom. Astra USA, Inc. v. Santa Clara County, Cal*. (2011) ___ U.S. ___ [131 S.Ct. 1342, 179 L.Ed.2d 457].) The language of the *Assenza* judgment does not clear this "intent hurdle."

There is no California equivalent to Federal Rules of Civil Procedure, rule 71. Plaintiffs have cited to none, nor have they identified any California law allowing unnamed third party beneficiaries of a judgment to bring an action or petition to enforce the judgment. Plaintiffs rely solely on general case law regarding third party beneficiaries' ability to enforce contracts made for their benefit. As noted, however, consent decrees, even where they exist, are not "contracts for purposes of . . . 'determining whether a third party beneficiary action could be maintained for breach of that contract.'" (*In re Tobacco Cases I, supra*, 193 Cal.App.4th at p. 1600, fn. 2.) Therefore, even if the *Assenza* judgment were a consent decree, and even if plaintiffs were third party beneficiaries of that judgment, plaintiffs would not be able to enforce the *Assenza* judgment. The general California law governing the rights of third party beneficiaries, direct or incidental, does not give plaintiffs the right to enforce the *Assenza* judgment as third party beneficiaries.

Plaintiffs argue that the *Assenza* judgment was a consent decree because defendants treated it as a consent decree, and that defendants should be judicially estopped from denying it was a consent decree because they "represented for years after entry of the *Assenza* Judgment—in depositions under oath, in court filings and at oral argument—that the Judgment was a consent decree." Because it does not matter whether the *Assenza* judgment is a consent decree, we do not address these issues.

2. Plaintiffs May Not Enforce the *Assenza* Judgment by Writ of Mandate

Plaintiffs contend that they "are seeking a writ of mandate to have [defendants] execute their legal and ministerial duties under the *Assenza* judgment (and, therefore, under Penal Code [former] section 12050) in the precise manner bargained for and agreed to by [defendants] at the time the [*Assenza*] Judgment was entered." Plaintiffs, however, are not entitled to pursue their attempt "to receive the same benefit of the bargained-for consent decree as the original *Assenza* plaintiffs" by mandamus.

First, and contrary to plaintiffs' assertion, the *Assenza* judgment does not authorize plaintiffs to enforce that judgment by writ of mandate. Plaintiffs argue that defendants' "former counsel *expressly stipulated* in settling the 1998 contempt motion [in *Assenza]* that any further judicial review of [defendants'] CCW license decisions should be sought by a writ of mandate." In plaintiffs' view, this stipulation was a representation by defendants that authorized challenges to the *Assenza* judgment by petitions for writ of mandate. The stipulation in the *Assenza* judgment, however, states: "Any and all judicial review of any decision by the Chief of Police regarding the future issuance or denial of any Permit to Carry Concealed Firearms *as to any Plaintiff in this action* will be brought by way of a separate Writ of Mandate." (Italics added.) The plain meaning of this stipulation is that the *Assenza* plaintiffs can file a petition for writ of mandate in a "separate" independent action if the City denied them CCW permits, not that third parties (third party beneficiary or otherwise) can enforce the *Assenza* judgment by filing such a petition.

Moreover, plaintiffs have adequate remedies at law, either by seeking to intervene in the *Assenza* case or by filing a declaratory relief action to determine their rights under the successor statutes to Penal Code former section 12050. (See *California School Bds. Assn. v. State of California* (2011) 192 Cal.App.4th 770, 794 ["[t]o warrant relief in the form of a writ of mandate requiring a party to take (or not to take) certain actions in the future, the petitioner must demonstrate there is no adequate legal remedy"]; accord, Code Civ. Proc., § 1086; *People v. Picklesimer, supra*, 48 Cal.4th at p. 340.)

With respect to intervention, Code of Civil Procedure section 387, subdivision (a), provides that "[u]pon timely application, any person, who has an interest in the matter in

litigation, . . . may intervene in the action or proceeding. . . ." A "trial court has discretion to permit a nonparty to intervene where the following requirements are satisfied: (1) the proper procedures have been followed; (2) *the nonparty has a direct and immediate interest in the action*; (3) the intervention will not enlarge the issues in the litigation; and (4) the reasons for the intervention outweigh any opposition by the parties presently in the action." (*Western Heritage Ins. Co. v. Superior Court* (2011) 199 Cal.App.4th 1196, 1205, fn. 12; accord, *Gray v. Begley* (2010) 182 Cal.App.4th 1509, 1521.) "'To support permissive intervention, it is well settled that the proposed intervener's interest in the litigation must be direct rather than consequential, and it must be an interest that is capable of determination in the action. [Citations.] The requirement of a direct and immediate interest means that the interest must be of such a direct and immediate nature that the moving party "'will either gain or lose by the direct legal operation and effect of the judgment.' [Citation.]" [Citations.] "A person has a direct interest justifying intervention in litigation where the judgment in the action *of itself* adds to or detracts from his legal rights without reference to rights and duties not involved in the litigation. [Citation.]" [Citation.]' [Citation.]" (*Royal Indemnity Co. v. United Enterprises, Inc*. (2008) 162 Cal.App.4th 194, 203-204; accord, *Lindelli v. Town of San Anselmo* (2006) 139 Cal.App.4th 1499, 1505.)

The essence of plaintiffs' claims is that they have a direct and immediate interest in the *Assenza* action and the *Assenza* judgment has given them rights. Plaintiffs allege that their "rights are directly affected by the failure of Defendants[] to abide by the Court Order and Third Amended Judgment of Declaratory Relief issued in" *Assenza*. Plaintiffs specifically alleged that defendants' "repeated refusals to provide . . . copies of both the CCW permit application and/or the LAPD Concealed Weapon Policy are direct violations of the Third Amended Judgment of Declaratory Relief. Furthermore, Defendants['] failure to promptly inform applicants of his or her status, failure to respond in a reasonable and timely manner, and direct neglect to promptly reconsider an application upon receiving a different recommendation from the Advisory Panel further demonstrates Defendants[']

defiance to comply with the Third Amended Judgment of Declaratory Relief." Thus, plaintiffs have a basis for seeking intervention.

If the court in *Assenza* allows plaintiffs to intervene in that case they would become parties and would be able to enforce the judgment by a petition for writ of mandate. (See *Western Heritage Ins. Co. v. Superior Court, supra*, 199 Cal.App.4th at p. 1206 [once the trial court grants the application, the ""intervener becomes an actual party to the suit by virtue of the order authorizing him to intervene""]; *People ex rel. Totten v. Colonia Chiques* (2007) 156 Cal.App.4th 31, 42 ["[b]y intervening, appellants became parties to the action"].) As noted, the *Assenza* judgment authorizes plaintiffs in that action to review a denial of an application for a CCW permit by writ of mandate. If the *Assenza* court does not allow plaintiffs to intervene, then plaintiffs can bring a declaratory relief action, to declare their rights under the successor statutes to Penal Code former section 12050, as the trial court here pointed out. (See *Peruta v. County of San Diego* (9th Cir. 2014) 742 F.3d 1144, 1148 [action "requesting injunctive and declaratory relief from the enforcement of the County policy's interpretation of 'good cause,'" under the successor statutes to Penal Code former section 12050].) Either way, plaintiffs have an adequate remedy at law, and mandate is not appropriate.

Plaintiffs assert that intervention "is likely futile because [defendants] vehemently opposed [plaintiffs'] attempts simply to relate the *Assenza* and *Davis* actions and the efforts to bring these [plaintiffs] in front of the same court hearing *Assenza* was denied." Defendants' opposition to plaintiffs' notice of related cases, however, was primarily procedural. There is no evidence that filing a motion to intervene in the *Assenza* case would be futile or that the *Assenza* court has given any indication, preliminary or otherwise, that it would not consider a motion to intervene.

Finally, the *Assenza* court has jurisdiction to enforce its judgment and is the appropriate court in which to bring an action to interpret and enforce the judgment. ""The jurisdiction of a court of equity to enforce its decrees is coextensive with its jurisdiction to determine the rights of the parties, and it has power to enforce its decrees as a necessary incident to its jurisdiction."" (*Stump's Market, Inc. v. Plaza de Santa Fe*

*Limited, LLC* (2013) 212 Cal.App.4th 882, 890; accord, *Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1044.) Although the *Assenza* court did not specifically state that it was retaining jurisdiction to interpret the judgment, the *Assenza* judgment does state that the "court will retain continued jurisdiction of the action in order to make any further orders which may be necessary," and the court must interpret the judgment to make any such further orders. (See *In re Marriage of Simundza* (2004) 121 Cal.App.4th 1513, 1520 ["in order to implement" a provision in the judgment the trial  court "first had to interpret the judgment]; *In re Marriage of Melton* (1994) 28 Cal.App.4th 931, 936-937 [trial court could interpret the judgment in order to implement the judgment, but could not rewrite it].) The questions whether plaintiffs are third party beneficiaries of the judgment and whether they are entitled to the benefits of that judgment should be decided by the court that entered the judgment. (See *Parkison v. Butte County Sheriff's Dept.* (E.D.Cal. 2013) 2013 WL 1007042 at p. 14 ["[i]f a party attacks a consent decree in a second court, the second court may 'refuse entirely to entertain the action if relief in a more appropriate forum—the rendering court—were available'"].)

Amicus curiae argues that mandate is an appropriate remedy because the issuance of CCW permits "touches on fundamental civil rights," i.e., Second Amendment rights. Amicus curiae, conceding that "a writ of mandate can only be issued to a party who is beneficially interested," also argues that the "'"public right/public duty" exception'" recognized in *Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165 applies because plaintiffs "acting on behalf of the public, . . . seek[] a judicial decree compelling a public agency or official to comply with the law." (See *id.* at p. 166; accord, *Hector F. v. El Centro Elementary School Dist.* (2014) 227 Cal.App.4th 331, 339.) Plaintiffs, however, did not raise these issues in their briefs, and we generally do not "consider new arguments raised on appeal by amicus curiae." (*American Indian Model Schools v. Oakland Unified School Dist.* (2014) 227 Cal.App.4th 258, 275; see *Bullock v. Philip Morris USA, Inc.* (2011) 198 Cal.App.4th 543, 572 ["[a]n amicus curiae ordinarily must limit its argument to the issues raised by the parties on appeal, and

a reviewing court need not address additional arguments raised by an amicus curiae"]; *Costa v. Workers' Comp. Appeals Bd.* (1998) 65 Cal.App.4th 1177, 1187 [same].)

"The Supreme Court has recognized two exceptions: The amicus curiae may raise an issue that will support affirmance and the amicus curiae may assert jurisdictional questions that cannot be waived even if not raised by the parties. [Citation.] Neither of these exceptions applies here." (*American Indian Model Schools v. Oakland Unified School Dist., supra,* 227 Cal.App.4th at p. 275, fn. omitted; accord, *Sacramento County Employees' Retirement System v. Superior Court* (2011) 195 Cal.App.4th 440, 473.) The first exception does not apply because amicus curiae is seeking to reverse the trial court's ruling, not affirm it. The second exception also does not apply because constitutional issues, such as the Second Amendment issue amicus curiae seeks to raise, are not jurisdictional and may be waived or forfeited. (Cf. *In re Sheena K.* (2007) 40 Cal.4th 875, 880-881 ["'"[n]o procedural principle is more familiar to this Court than that a constitutional right," or a right of any other sort, "may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before a tribunal having jurisdiction to determine it"'"]; *In re Douglas* (2011) 200 Cal.App.4th 236, 245 [Sixth Amendment claim waived by delay in raising it]; *Lujan v. Minagar* (2004) 124 Cal.App.4th 1040, 1048 [due process claim forfeited by failure to raise it below; exception to forfeiture rule applies only to issue of standing].) Therefore, we decline to address the two new arguments raised by amicus curiae. (See *California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 242, fn. 2 [Supreme Court declines to consider amicus curiae's "constitutional arguments . . . neither raised nor briefed by the parties"].)

**DISPOSITION**

The judgment is affirmed. Defendants are to recover their costs on appeal.

SEGAL, J. We concur:

Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PERLUSS, P. J.

WOODS, J.

# ARTICLE 5

# FIREARMS – DANGEROUS WEAPONS

Section
55.00   Guns – Permits.
55.01   Concealed Weapons – Permit.
55.02   Concealed Weapons – Permit – Record.
55.03   Concealed Weapons – Permits – Fee.
55.04   Tear Gas Weapons – Permits.
55.06   Use of Bows and Arrows Prohibited.
55.07   Prohibition on Carrying or Possessing Specified Items While Attending or Participating in Any Public Demonstration, Rally, Protest, Picket Line or Public Assembly.
55.08   Glass Bottles on Public Property Prohibited.
55.09   Ammunition Sales.
55.10   Carry Knives or Daggers in Plain View Prohibited.
55.11   Requirements for Ammunition Sales.
55.12   Duty to Report Theft or Loss of Firearms; Exemptions.
55.12.1  [Disposal of Firearms and Ammunition.]
55.13   Sale of Ammunition Clips and Similar Devices.
55.14   Sale or Purchase of More than One Handgun Within a Thirty Day Period Prohibited.
55.15   Fingerprinting of Firearms Purchasers.
55.17   Possession of Gun Parts in Airports.
55.18   Sale of Large Caliber Firearms Prohibited.
55.19   [Sale of Ammunition for Large Caliber Firearms Prohibited.]
55.20   False or Secret Compartments in Vehicles to Hide Firearms or Destructive Devices.
55.21   Safe Storage of Firearms.
55.22   Prohibition on Possession, Purchase, or Sale of Nonserialized, Unfinished Firearm Frames or Receivers and Nonserialized Firearms.

### SEC. 55.00. GUNS – PERMITS.

No person shall fire, shoot or discharge any gun, rifle, pistol or other firearm, or any air-gun, air-rifle or air-pistol, or any spring-gun, spring-rifle or spring-pistol, or any carbon dioxide or other gas operated gun, rifle or pistol without having first obtained a written permit from the Board of Police Commissioners.

### SEC. 55.01. CONCEALED WEAPONS – PERMIT.

No person, except a peace officer shall wear or in any manner carry concealed upon their person, any loaded or unloaded gun, pistol or revolver, or any other dangerous or deadly weapon permitted to be carried by law without having, at the same time, actually in their possession, and upon them an unexpired permit so to do issued by the Board of Police Commissioners.

### SEC. 55.02. CONCEALED WEAPONS – PERMIT – RECORD.

The Board of Police Commissioners shall have power to issue to any person, who in the judgment of said board, shall have such privilege, a written permit to carry concealed any of the weapons specified in the

preceding section. Such permits shall be numbered consecutively in the order in which they are issued. No permit shall be granted for a longer period than twelve months. Each such permit shall state the name, address and occupation of the person to whom the same is issued, and the date of its expiration and shall specify the kind and description of weapon authorized to be carried concealed by said person.

## SEC. 55.03. CONCEALED WEAPONS – PERMITS – FEE.

The Chief of Police shall keep a record of all permits authorized by the Board of Police Commissioners under this article. No permit required by Section 55.01 shall be issued to any person until such person shall have paid to the Chief of Police a registration fee of Three ($3.00) Dollars. On Monday of each week the Chief of Police shall pay to the City Treasurer all such registration fees received during the preceding week.

## SEC. 55.04. TEAR GAS WEAPONS – PERMITS.
**(Added by Ord. No. 151,335, Eff. 9/15/78.)**

No person shall purchase, possess or use any tear gas or tear gas weapons without having first been issued a written permit therefor by the Chief of Police. Such permit shall be issued upon a finding by the Chief of Police that the applicant has satisfied all of the following conditions:

 1. Is a resident of the City of Los Angeles.

 2. Is not a minor.

 3. Has not been convicted of a felony.

 4. Is not addicted to any narcotic drug.

 5. Has not been convicted of any crime involving assault.

 6. Has not been convicted of misuse of tear gas under Section 12403.7(a)(8) of the Penal Code of the State of California.

 7. Has completed a course certified by the Department of Justice of the State of California in the use of tear gas and tear gas weapons pursuant to which a card is issued identifying the person who has completed such course. Such a course may be taken in any training institution certified by the Commission on Peace Officer Standards and Training to offer tear gas training.

No permit required by this section shall be issued to any person until such person shall have paid to the Chief of Police a permit fee of $35.00, which shall be non-refundable in the event the application is denied. Such permit shall be valid for a period of seven years from the date of issuance and shall be non-transferable. Any permit issued hereunder shall be revoked by the Chief of Police if the applicant no longer meets all of the conditions set forth hereinabove.

## SEC. 55.05. ASSAULT WEAPONS – SALE OR POSSESSION PROHIBITED.
**(Repealed by Ord. No. 175,301, Eff. 8/2/03.)**

## SEC. 55.06. USE OF BOWS AND ARROWS PROHIBITED.
**(Amended by Ord. No. 146,676, Eff. 11/25/74.)**

The use of bows and arrows in the City of Los Angeles is prohibited except when shooting at targets on an established public or private range.

For the purpose of this section, the following phrases shall be construed as hereinafter set out:

An "**Established target range**" is one where adequate precautions have been taken to insure that arrows do not pass beyond the perimeter of the target range facilities.

The term "**bows and arrows**" shall include crossbows and any other device for the shooting of bolts or arrows capable of piercing flesh.

### SEC. 55.07. PROHIBITION ON CARRYING OR POSSESSING SPECIFIED ITEMS WHILE ATTENDING OR PARTICIPATING IN ANY PUBLIC DEMONSTRATION, RALLY, PROTEST, PICKET LINE OR PUBLIC ASSEMBLY.
**(Title and Section Amended by Ord. No. 185,217, Eff. 11/3/17.)**

(a) No person shall carry or possess the following items or articles while attending or participating in any demonstration, rally, protest, picket line or public assembly:

1. Any length of lumber, wood, or wood lath unless that object is 1/4 inch or less in thickness and 2 inches or less in width, or if not generally rectangular in shape, such object shall not exceed 3/4 inch in its thickest dimension. Both ends of the lumber, wood or wood lath shall be blunt;

2. Any length of metal or plastic pipe, whether hollow or solid; provided, however, that hollow plastic piping not exceeding 3/4 inch in its thickest dimension and not exceeding 1/8 inch in wall thickness, and not filled with any material, liquid, gas or solid may be used solely to support a sign, banner, placard, puppet or other similar expressive display. Both ends of any plastic pipe permissible under this subsection shall be blunt;

3. Signs, posters, banners, plaques or notices, whether or not mounted on a length of material permitted under Subdivisions 1. and 2. of this section, unless such sign, poster, banner, plaque or notice is constructed solely of soft material, such as cloth, paper, soft plastic capable of being rolled or folded, or cardboard material no greater than 1/4 inch in thickness;

4. Baseball or softball bats, regardless of composition or size; provided, however, that such items are permissible when configured of cloth, cardboard, soft plastic, foam or paper for expressive purposes;

5. Any aerosol spray, tear gas, mace, pepper spray or bear repellant;

6. Any projectile launcher or other device, such as a catapult or wrist rocket, which is commonly used for the purpose of launching, hurling or throwing any object, liquid, material or other substance, whether through force of air pressure, spring action or any other mechanism;

7. Weapons such as firearms, knives, swords, sabers or other bladed devices, axes, hatchets, ice picks, razor blades, nunchucks or martial arts weapons of any kind, box cutters, pellet or BB guns, conducted electrical weapons (CEWs), including, but not limited to, Tasers or stun guns, metal/composite/ wooden knuckles, or any chain greater than 20 inches in length or greater than 1/4 inch in diameter. This subdivision also includes toy or replica firearms unless such toy or replica is florescent colored or transparent.

8. Balloons, bottles or any other container such as water cannons or super-soakers, filled with any flammable, biohazard or other noxious matter which is injurious, or nauseous, sickening or irritating to

**Add.41**

any of the senses, with intent to throw, drop, pour, disperse, deposit, release, discharge or expose the same in, upon or about any demonstration, rally, protest, picket line or public assembly;

9. Glass bottles, whether empty or filled;

10. Open flame torches, lanterns or other devices that utilize combustible materials such as gasoline, kerosene, propane or other fuel sources;

11. Shields made of metal, wood, hard plastic or any combination thereof;

12. Bricks, rocks, pieces of asphalt, concrete, pellets or ball bearings.

13. Laser pointers or laser-style devices emitting any color beam, milliwatt output level, intensity class level or any visibility level, including infrared, or nonvisible. **(Added by Ord. No. 186,799, Eff. 11/3/20.)**

(b) When feasible, excluding exigent circumstances, a warning shall be issued before enforcement of the provisions of this section. Such warning shall be sufficient if provided orally, by posted signs or by amplified announcement.

(c) Authorized peace officers, or employees, agents or representatives of the City, shall be exempt from the provisions of this section when such officers, employees, agents or representatives of the City are engaged in official business of the City.

(d) Nothing in this section shall prohibit an individual from carrying a cane or using a walker or other device necessary for providing mobility so that the person may participate in a public protest, demonstration, rally, picket line or public assembly. Further, nothing in this section shall prohibit the imposition of specific conditions for activities expressly authorized under permit issued by the City of Los Angeles pursuant to Los Angeles Municipal Code Section 103.111.

### SEC. 55.08. GLASS BOTTLES ON PUBLIC PROPERTY PROHIBITED.
**(Added by Ord. No. 159,636, Eff. 3/5/85.)**

No person shall carry any glass beverage bottle, whether empty or not, into any public street, or portion of any public street, or onto any other public property when such street or property is being temporarily used for the conducting of a community civic event or local special event of community interest with respect to which approval to use the street or property for said event has been given by the City of Los Angeles by permit, City Council resolution or otherwise, and where barricades or other devices or City personnel have been placed or stationed in the public street or streets and at any other public way along the perimeter of the area being so used. The provisions of this section shall not apply when beverages are sold or dispensed within the area in glass bottles, nor shall the provisions of this section apply to any glass bottle brought into the area which contains any drug or medicine or which is designated for dispensing milk, juice or other beverages to babies or infants, or which is intended to be used, or the contents of which is intended to by used, in the preparation or seasoning of food.

### SEC. 55.09. AMMUNITION SALES.
**(Added by Ord. No. 165,930, Eff. 6/5/90.)**

(a) The term "**firearm ammunition**", as used in this section, shall include any ammunition for use in pistols, revolvers, rifles, shot guns, or any other device designed to be used as a weapon from which is expelled a projectile by the force of explosion or other form of combustion.

**Add.42**

9/23/24, 2:19 PM                    export.amlegal.com/api/export-requests/c1c3ffa6-0d75-4dad-9a0f-ac4856a4145d/download/

(b)   Except as specified in Subsection (c) and (d), no person, including retail gun dealers, shall sell, give, lend or transfer ownership of any firearm ammunition during the period of seven days prior to the first day of January of each year or on the first day of January of each year, or during the seven days prior to the Fourth of July of each year or on the Fourth of July of each year.

(c)   Nothing in this section shall prohibit the sale or transfer of ownership of firearm ammunition by a wholesale gun dealer to another wholesale gun dealer or by a wholesale gun dealer to a retail gun dealer, or of ammunition requested by Section 12324 of the Penal Code of the State of California.

(d)   Nothing in this section shall prohibit sale to or acquisition by any person described in Section 12302 or 12322 of the Penal Code of the State of California.

(e)   The provisions of this section shall not apply to the sale of any firearm ammunition when such sale is prohibited by Sections 12303, 12303.6, 12304 or 12321 of the Penal Code of the State of California, or is otherwise prohibited by Chapter 2.5, Title 2, Part 4, of the Penal Code of the State of California.


### SEC. 55.10. CARRY KNIVES OR DAGGERS IN PLAIN VIEW PROHIBITED.
**(Added by Ord. No. 162,995, Eff. 1/7/88.)**

(a)   As used in this section, the term "**knife**" or "**dagger**" shall include any knife, dirk or dagger having a blade 3 inches or more in length, any ice pick or similar sharp tool, any straight edge razor or any razor blade fitted to a handle.

(b)   No person shall wear or carry in plain view any knife or dagger upon any public street or other public place or in any place open to the public.

(c)   The prohibitions of this section shall not apply where a person is wearing or carrying a knife or dagger for use in a lawful occupation, for lawful recreational purposes, or as a recognized religious practice, or while the person is traveling to or returning from participation in such activity.


### SEC. 55.11. REQUIREMENTS FOR AMMUNITION SALES.
**(Title and Section Amended by Ord. No. 180,447, Eff. 2/2/09, Oper. 6/18/09.)**

(a)   "**Firearm Ammunition**" means any self- contained unit consisting of the case, primer, propellant charge, and projectile for use in pistols, revolvers, rifles, shot guns, or any other device designed to be used as a weapon from which is expelled a projectile by the force of explosion or other form of combustion. "**Firearm Ammunition**" shall not include blank ammunition used solely in the course of motion picture, television, video, or theatrical productions.

(b)   The term "**vendor**", as used in this section, shall mean any person who is engaged in the retail sale of firearm ammunition and retail firearms dealers.

(c)   No vendor shall sell or otherwise transfer ownership of any firearm ammunition to any person other than those listed in subsection (g) without at the time of purchase recording the following information on a form to be prescribed by the Board of Police Commissioners:

    1.   the date of the transaction,

    2.   the name, address and date of birth of the transferee,

**Add.43**

   3.  the transferee's drivers license or other identification number and the state in which it was issued,

   4.  the brand, type and amount of ammunition transferred,

   5.  the transferee's signature, and

   6.  the name of the sales person who processed the transaction.

  The vendor shall also at the time of purchase or transfer obtain the right thumb print of the purchaser or transferee on the above-referenced form.

  (d)  No vendor shall sell or otherwise transfer ownership of any firearm ammunition without complying with all requirements of subsection (c) in a face-to-face transaction.

  (e)  The records required by this section shall be maintained on the premises of the vendor for a period of not less than two (2) years from the date of the recorded transfer. Said records shall be subject to inspection at any time during normal business hours in accordance with the provisions of Section 103.14 of this Code. In addition, said records shall, within five (5) calendar days of a firearm ammunition transfer, be electronically transmitted to the Los Angeles Police Department in a format and manner approved by the Chief of Police. **(Amended by Ord. No. 183,328, Eff. 1/24/15.)**

  (f)  No person shall knowingly make a false entry in, or fail to make a required entry in, or fail to obtain the required thumb print, or fail to maintain in the required manner records prepared in accordance herewith. No person shall refuse to permit a police department employee to examine any record prepared in accordance with this section during any inspection conducted pursuant to this section, or refuse to permit the use of any record or information therefrom by the police department.

  (g)  The requirements of subsection (c) shall not apply when the purchaser is any of the following:

   1.  any person described in Section 12302 or 12322 of the Penal Code of the State of California.

   2.  any off-duty peace officer who displays proper agency identification which identifies the officer as an active peace officer.

   3.  any person who has been issued a permit to carry a concealed weapon under the authority of Section 12050 of the Penal Code of the State of California

   4.  any security guard licensed under the authority of Section 12033 of the Penal Code of the State of California.

   5.  any firearms dealer who has been issued a Federal Firearms License, a Certificate of Eligibility by the State of California and a Seller of Firearms Police Permit by the City of Los Angeles.

   6.  any firearm ammunition vendor who has been issued a Seller of Ammunition Police Permit by the City of Los Angeles.

  (h)  Violation of this section shall constitute a misdemeanor.

### SEC. 55.12. DUTY TO REPORT THEFT OR LOSS OF FIREARMS; EXEMPTIONS.
**(Added by Ord. No. 178,010, Eff. 12/3/06.)**

  A.  Any person who owns or possesses a firearm (as defined in Penal Code Section 12001(b) or as amended) shall report the theft or loss of the firearm to the Los Angeles Police Department within 48 hours of becoming

**Add.44**

aware of the theft or loss, whenever: (1) the person resides in the City of Los Angeles; or (2) the theft or loss of the firearm occurs in the City of Los Angeles.

B.   Any person who has experienced the theft or loss of a firearm within the five years prior to the effective date of this ordinance without the firearm having been recovered during that period, and who otherwise meets the reporting requirements in Section A. above, is required to report the loss or theft of the firearm to the Los Angeles Police Department within 60 days of the effective date of this ordinance.

C.   Any person who fails to report the theft or loss of a firearm as required in Subsections A. or B., when the person knew or should have known of the theft or loss, shall be guilty of a misdemeanor.

D.   Persons licensed to sell or manufacture firearms pursuant to Penal Code Sections 12071 or 12086 are exempt from this section, if the firearm lost or stolen was business merchandise, was lost or stolen from their firearm-related business, or was in their possession pursuant to Penal Code Section 12082.

E.   If any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions, which can be implemented without the invalid provisions, and to this end, the provisions of this ordinance are declared to be severable.

### SEC. 55.12.1. [DISPOSAL OF FIREARMS AND AMMUNITION.]
**(Added by Ord. No. 179,149, Eff. 10/7/07.)**

(a)  **Definitions.**

1.   "**Firearm**," as used in this section, means any pistol, rifle, shotgun or other device designed to be used as a weapon, from which a projectile is expelled through a barrel by the force of an explosion or any other form of combustion, or any device that is capable of being altered so as to expel a projectile in that manner. The term firearm includes the frame of such weapon.

2.   "**Ammunition**," as used in this section, means any projectile designed to be expelled through the barrel of a firearm by the force of any explosion or other form of combustion, including, but not limited to, cartridge cases, primers, bullets, or propellant powder.

(b)  Disposal of a firearm and/or ammunition in the City of Los Angeles shall only be accomplished in either of the following two ways:

1.   By selling, giving away or otherwise transferring the firearm and/or ammunition in accordance with all applicable provisions of the California Penal Code, Welfare and Institutions Code, and this Code; or

2.   By surrendering the firearm and/or ammunition to a California law enforcement agency for the purpose of destruction.

(c)  Any person in the City of Los Angeles who disposes of a firearm and/or ammunition in any manner other than as required by this section, including, but not limited to, by depositing those item(s) in a public trash receptacle or leaving in any public place, is guilty of a misdemeanor.

### SEC. 55.13. SALE OF AMMUNITION CLIPS AND SIMILAR DEVICES.
**(Amended by Ord. No. 172,002, Eff. 6/5/98.)**

(a)  No person shall sell or otherwise transfer to any other person a clip, magazine, belt, drum, feed strip or similar device which has a capacity of, or which can be readily restored or converted to accept, more than ten

**Add.45**

rounds of ammunition.

(b)   The provisions of this section shall not apply to:

1.   the sale or transfer of such devices to any person described in Section 12302 or 12322 of the Penal Code of the State of California, or

2.   the sale or transfer of ownership of such a device by a wholesale gun dealer to another wholesale gun dealer or by a wholesale gun dealer to a retail gun dealer, or

3.   any entity or establishment engaged in the business of motion picture, television, video, theatrical, or re-enactment production, provided the clip, magazine, belt, drum, feed strip or similar device is used solely as a prop in the course of motion picture, television, video, theater, or re-enactment production by an authorized participant therein or by an authorized agent or employee of the entity or establishment, and only if the entity or establishment properly secures such clip, magazine, belt, drum, feed strip or similar device from unauthorized use, or

4.   any federal, state or local historical society, museum or institutional collection which is open to the public provided any such clip, magazine, belt, drum, feed strip or similar device is properly housed, secured from unauthorized handling and is unloaded.

## SEC. 55.14. SALE OR PURCHASE OF MORE THAN ONE HANDGUN WITHIN A THIRTY DAY PERIOD PROHIBITED.
**(Added by Ord. No. 172,430, Eff. 3/4/99, Oper. 6/3/99.)**

(a)   The term "**dealer**" shall mean a retail firearms dealer licensed by the City of Los Angeles.

(b)   No person shall make application to a dealer, as provided in Section 12072 of the California Penal Code, to purchase a pistol, revolver or other firearm capable of being concealed upon the person, herein referred to as "**handgun**", within thirty (30) days of making a prior application for the purchase of a handgun within the State of California. In computing the thirty (30) day period, the date the application is made shall be counted as the first day.

(c)   No dealer shall transfer the title of any handgun to any person whom the dealer knows has made application to purchase more than one handgun within the State of California within a thirty (30) day period prior thereto, nor shall any dealer process a handgun transaction between unlicensed parties pursuant to California Penal Code Section 12072 if the dealer knows that the one receiving the handgun has made application to purchase more than one handgun within the State of California within a thirty (30) day period prior thereto.

(d)   No dealer shall transfer the title of any handgun to any person or process a handgun transaction between unlicensed parties pursuant to California Penal Code Section 12072 if the dealer prior to transfer has received notice from the California Department of Justice, herein referred to as the "DOJ," that DOJ has received an application for that person to purchase a handgun within the State of California within a thirty (30) day period prior thereto. For the purposes of this subsection, the date of application of purchase shall be the date the DOJ receives the Dealer Record of Sale or receives the transmission of required information by any medium of communication authorized under state law.

(e)   For the purposes of this section, the redemption of a handgun pledged to a pawnbroker shall not be deemed the sale, purchase or transfer of title of that handgun. However, a dealer may not rely on this exemption unless the purchaser provides proof that the transaction was the redemption of a handgun pawned to a pawnbroker by the purchaser.

(f)   Each dealer shall maintain records of each sale of a handgun to include the name of the purchaser, type of handgun, date of sale, and any other information required by the Board of Police Commissioners. Such records shall be maintained on the premises of the dealer for a period of not less than two (2) years and shall be subject to inspection at any time during normal business hours.

(g)   Each dealer shall post a sign in a conspicuous place with letters at least one inch high stating the obligations and restrictions of purchasers and dealers under this ordinance, pursuant to direction by the Board of Police Commissioners.

(h)   The dealer shall require the purchaser, at the time of application for purchase, to indicate, on a form prescribed by the Board of Police Commissioners, whether the purchaser has or has not made an application for the purchase of a handgun within the last thirty (30) days, and which if any of the exemptions set forth in Subsection (I) is applicable to the purchaser. If any of the exemptions is checked, the restrictions of this section shall not apply, provided all necessary information is supplied to the dealer. The form shall be signed by the purchaser under penalty of perjury. Such form shall be maintained on the premises of the dealer for a period of not less than two (2) years from the date of signing and shall be subject to inspection at any time during normal business hours.

(i)   The provisions of this section shall not apply to the following:

1.   Any person who is licensed to sell firearms pursuant to Article 4, commencing with Section 12070, of the Penal Code of the State of California.

2.   Any law enforcement agency.

3.   Any agency duly authorized to perform law enforcement duties.

4.   Any state or local correctional facility.

5.   Any private security company licensed to do business in the State of California.

6.   Any person who is properly identified as a full-time paid peace officer, as defined in Section 830.1, 830.2, 830.4, or 830.5 of the Penal Code of the State of California, and who is authorized to, and does, carry a firearm during the course and scope of their employment as a peace officer.

7.   Any antique firearm, as defined in Paragraph (16) of Subsection (a) of Section 921 of Title 18 of the United States Code.

8.   Any person or entity who purchases firearms in a collector's series or a bulk purchase from an estate sale.

9.   Any motion picture, television, or video production company, or entertainment or theatrical company whose production involves the use of a handgun, and which secures such handgun from unauthorized use.

10.   Any person who is exempt from the waiting period in Subdivision (c) of Section 12072 of the Penal Code of the State of California.

11.   Any person who is exempt from the provisions of Subdivision (d) of Section 12072 of the Penal Code of the State of California.

12.   Any person or entity conducting a transaction through a law enforcement agency pursuant to Section 12084 of the Penal Code of the State of California.

**Add.47**

13.   Any person or entity conducting a transaction described in Subdivision (k) of Section 12078 of the Penal Code of the State of California.

14.   Any person who is licensed as a collector pursuant to Chapter 44, (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, and who has a current certificate of eligibility issued to them by the Department of Justice pursuant to Section 12071 of the Penal Code of the State of California.

15.   Any person or entity acquiring a handgun by bequest or intestate succession.

16.   Any person or entity replacing a single handgun where the handgun was lost or stolen, and the person reported that firearm lost or stolen to the Los Angeles Police Department or appropriate law enforcement agency and presents the dealer with evidence of such reporting.

17.   Any seller's exchange or replacement of a handgun for a handgun purchased from that seller within the thirty (30) day period immediately preceding the date of exchange or replacement.

(j)   Violation of Subsection (b) shall be punishable as an infraction subject to a fine of $50.00 for the first violation of that subsection, as an infraction subject to a fine of $100.00 for the second violation of the subsection and as a misdemeanor for the third or subsequent violations of that subsection. Each handgun applied for shall be deemed a separate violation.

(k)   If any provision of this section is for any reason held to be invalid or unconstitutional by the decision of any court of competent jurisdiction within the State of California, such decision shall not affect the validity of the remaining provisions and the City declares that it would have adopted the remaining provisions irrespective of the fact that a provision or provisions are declared invalid or unconstitutional.

## SEC. 55.15. FINGERPRINTING OF FIREARMS PURCHASERS.
**(Added by Ord. No. 173,876, Eff. 5/18/01.)**

(a)   As used in this section, the term "**firearm**" shall mean any pistol, revolver, shotgun, rifle, or other firearm, as that term is defined in Section 103.314 of this Code.

(b)   As used in this section, the term "**dealer**" shall mean any person who is engaged in the retail sale of firearms and any retail firearms dealer, as that term is defined in Section 103.314 of this Code.

(c)   No dealer shall sell or otherwise transfer ownership of any firearm without obtaining the right thumb print of the purchaser or transferee on the California Department of Justice Dealer Record of Sale of Firearm worksheet signed by the purchaser or transferee. The thumb print shall be recorded at the lower right hand corner on the back side of the worksheet at the time that the worksheet is signed by the purchaser or transferee.

(d)   The thumb print record required by this section shall be maintained on the premises of the dealer throughout the time period during which the Dealer Record of Sale is required to be maintained by the dealer. Such record shall be subject to inspection at any time during normal business hours in accordance with the provisions of Section 103.14 of this Code.

(e)   No person shall knowingly fail to obtain a required thumb print, or knowingly fail to maintain the record of a thumb print required by this section. No person shall refuse to permit a law enforcement employee to examine any record prepared in accordance with this section during any inspection conducted pursuant to this section, or refuse to permit the use of any such record or information in such record by a law enforcement agency.

(f)   The requirements of this section shall not apply when the purchaser or transferee is any of the following:

(1)  Any person described in Section 12302 or 12322 of the California Penal Code;

(2)  Any off-duty peace officer who displays proper agency identification which identifies the officer as an active peace officer;

(3)  Any person who has been issued a permit to carry a concealed weapon under the authority of Section 12050 of the California Penal Code;

(4)  Any security guard licensed under the authority of Section 12033 of the California Penal Code;

(5)  Any firearms dealer who has been issued a Federal Firearms License, a Certificate of Eligibility by the State of California, and a Seller of Firearms Permit by the City of Los Angeles.

(g)  Any violation of this section shall constitute a misdemeanor.

### SEC. 55.16. SALE OF ULTRACOMPACT FIREARMS PROHIBITED.
**(Repealed by Ord. No. 185,152, Eff. 10/15/17.)**

### SEC. 55.17. POSSESSION OF GUN PARTS IN AIRPORTS.
**(Added by Ord. No. 174,656, Eff. 8/3/02.)**

(a)  It is unlawful for any person to knowingly possess within any airport or airport operations area, as defined in California Penal Code Sections 602(t)(3)(A) and (C), either in an area to which access is controlled by the inspection of persons and property or in an area in which these inspections are conducted, any of the following items:

(1)  any frame, receiver or barrel of a firearm;

(2)  any ammunition as defined in California Penal Code Section 12316.

(b)  This provision shall not apply to, or affect, any of the following:

(1)  a duly appointed peace officer, as defined in California Penal Code Chapter 4.5 (commencing with California Penal Code Section 830) of Title 3 of Part 2, a retired peace officer with authorization to carry concealed weapons as described in California Penal Code Section 12027(a), a full-time paid peace officer of another state or the federal government who is carrying out official duties while in California, or any person summoned by any of these officers to assist in making arrests or preserving the peace while the person is actually engaged in assisting the officer.

(2)  authorization to possess any frame, receiver or barrel of a firearm or any ammunition granted, in writing, by the city official designated by title 49 Code of Federal Regulations Section 1542.3 as the person in charge of security of the airport.

(c)  A violation of this section shall be punished by imprisonment in a county jail for a period not exceeding six months, or by a fine not exceeding $1,000, or by both that fine and imprisonment.

### SEC. 55.18. SALE OF LARGE CALIBER FIREARMS PROHIBITED.
**(Amended by Ord. No. 176,603, Eff. 6/5/05.)**

**Add.49**

9/23/24, 2:19 PM export.amlegal.com/api/export-requests/c1c3ffa6-0d75-4dad-9a0f-ac4856a4145d/download/

(a)   As used in this section, the term "**large caliber firearm**" shall mean any firearm, as defined in Section 103.314 of this Code, capable of firing a center-fire cartridge of .50 caliber or larger either by designation or by actual measurement. The term "large caliber firearm" shall include any rifle or handgun.

(b)   As used in this section, the term "**rifle**" shall mean any firearm that is designed or redesigned, made or remade, and intended to be fired from the shoulder and is designed to fire only a single projectile through a rifled bore for each single pull of the trigger. The term "rifle" shall not include any shotgun.

(c)   As used in this section, the term "**handgun**" shall mean any firearm with a barrel less than 16 inches in length. The term "handgun" shall include any pistol, revolver, or concealable firearm as such terms are defined in the California Penal Code.

(d)   No person shall sell, give, transfer ownership of, transfer, offer for sale, or display for sale any large caliber firearm.

(e)   The provisions of this section shall not apply to any sale or transfer of a firearm which is prohibited under state law, of any destructive device as defined in Section 12301 of the California Penal Code, of any assault weapon as defined in the California Penal Code, or of any .50 BMG rifle as defined in the California Penal Code. The provisions of this section shall not apply to any offer for sale or display in any periodical, solicitation by mail, or use of the internet by a seller or offeror located outside the City of Los Angeles.

(f)   The provisions of Subsection (d) of this section shall not apply where the purchaser or transferee is any of the following:

(1)   A law enforcement agency;

(2)   An agency duly authorized to perform law enforcement duties;

(3)   A state or local correctional facility;

(4)   A person described in Section 12302 or 12322 of the California Penal Code, when acting within the course and scope of their law enforcement duties;

(5)   A federal law enforcement officer, when acting in the course and scope of their law enforcement duties;

(6)   A person who is properly identified as a full-time paid peace officer, as defined in Section 830.1, 830.2, 830.4, or 830.5 of the California Penal Code, and who is authorized to, and does, carry a firearm during the course of their employment as a peace officer, and is acting within the course and scope of such employment;

(7)   A firearms dealer who has been issued a Federal Firearms License, a Certificate of Eligibility by the State of California, and a permit by the City of Los Angeles to engage in the retail sale of firearms;

(8)   A purchaser of a curio or collector firearm. A firearm shall be deemed curio or collector only if it falls within one of these categories:

(A)   It was manufactured prior to 1899;

(B)   It is classified as a curio or relic pursuant to 27 Code of Federal Regulations section 178.11, and the purchaser maintains a current federal firearms collector license; or

(C)   It is a muzzle-loading firearm;

**Add.50**

(9)   A federal, state, or local historical society, museum, or institutional collection that is open to the public, provided that the large caliber firearm is used for display purposes, is secured from unauthorized use, and is unloaded;

(10)   A person acting pursuant to a valid entertainment firearms permit issued by the State of California; or

(11)   A person who obtains title to a large caliber firearm by bequest or intestate succession.

(g)   Any violation of this section shall constitute a misdemeanor.


### SEC. 55.19. [SALE OF AMMUNITION FOR LARGE CALIBER FIREARMS PROHIBITED.]
**(Added by Ord. No. 180,448, Eff. 2/5/09.)**


(a)   **Definitions.**

1.   "**Firearm Ammunition**" means any self-contained unit consisting of the case, primer, propellant charge, and projectile for use in pistols, revolvers, rifles, shot guns, or any other device designed to be used as a weapon from which is expelled a projectile by the force of explosion or other form of combustion. "**Firearm Ammunition**" shall not include blank ammunition used solely in the course of motion picture, television, video, or theatrical productions.

2.   "**Large caliber firearm**" means any firearm, as defined in Section 103.314 of this Code, capable of firing a center-fire cartridge of .50 caliber or larger either by designation or by actual measurement. The term "**large caliber firearm**" shall include any rifle or handgun.

(b)   No person shall sell, give, transfer ownership of, transfer, offer for sale, or display for sale any firearm ammunition for any large caliber firearm.

(c)   The provisions of this section shall not apply to any sale or transfer of firearm ammunition which is prohibited under state law, including but not limited to any destructive device as defined in Section 12301 of the California Penal Code or any fixed ammunition of a caliber greater than .60 caliber as defined in Section 12304 of the California Penal Code. The provisions of this section shall not apply to any offer for sale or display in any periodical, solicitation by mail, or use of the internet by a seller or offeror located outside the City of Los Angeles.

(d)   The provisions of Subsection (b) of this section shall not apply where the purchaser or transferee is any of the following:

(1)   A law enforcement agency;

(2)   An agency duly authorized to perform law enforcement duties;

(3)   A state or local correctional facility;

(4)   A person described in Section 12302 or 12322 of the California Penal Code, when acting within the course and scope of their law enforcement duties;

(5)   A federal law enforcement officer, when acting in the course and scope of their law enforcement duties; and

**Add.51**

(6) A person who is properly identified as a full-time paid peace officer, as defined in Section 830.1, 830.2, 830.4, or 830.5 of the California Penal Code, and who is authorized to, and does, carry a firearm during the course of their employment as a peace officer, and is acting within the course and scope of such employment.

(e) **Penalty.** Any violation of this section shall constitute a misdemeanor.

(f) **Severability.** If any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions, which can be implemented without the invalid provisions, and to this end, the provisions of this ordinance are declared to be severable.

### SEC. 55.20. FALSE OR SECRET COMPARTMENTS IN VEHICLES TO HIDE FIREARMS OR DESTRUCTIVE DEVICES.
(Added by Ord. No. 180,450, Eff. 2/7/09.)

(a) **Definitions.**

1. "**False or Secret Compartment**" means any box, container, space, or enclosure that is intended or designed for use to conceal, hide, or otherwise prevent discovery of any unlawfully possessed firearm or destructive device, within or attached to a vehicle, including, but not limited to, any of the following:

(i) False, altered, or modified fuel tanks;

(ii) Original factory equipment of a vehicle that is modified, altered, or changed;

(iii) Compartment, space, or box that is added to, or fabricated, made, or created from, existing compartments, spaces, or boxes within a vehicle.

2. "**Vehicle**" means any of the following vehicles without regard to whether the vehicles are private or commercial, including, but not limited to, cars, trucks, buses, motor homes, motorcycles, aircraft, boats, ships, yachts, and vessels.

3. "**Firearm**", as used in this section, means any pistol, rifle, shotgun or other device designed to be used as a weapon, from which a projectile is expelled through a barrel by the force of an explosion or any form of combustion, or any device that is capable of being altered so as to expel a projectile in that manner. The term firearm includes the frame of such weapon.

4. "**Destructive device**" means a destructive device as defined in Section 12301 of the California Penal Code.

(b) It is unlawful for any person to possess, use, or control a False or Secret Compartment with the intent to store, conceal, smuggle, or transport any unlawfully possessed firearm or destructive device.

(c) It is unlawful for any person to design, construct, build, alter, or fabricate a False or Secret Compartment for, or install or attach a False or Secret Compartment in or to a vehicle.

(d) **Penalty.** Violation of this section shall constitute a misdemeanor.

(e) **Severability.** If any provision of this ordinance is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions which can be implemented without the invalid provisions, and to this end, the provisions of this ordinance are declared to be severable.

**Add.52**

9/23/24, 2:19 PM export.amlegal.com/api/export-requests/c1c3ffa6-0d75-4dad-9a0f-ac4856a4145d/download/

### SEC. 55.21. SAFE STORAGE OF FIREARMS.
**(Title and Section Amended, Ord. No. 186,311, Eff. 9/13/19.)**

(a)  **Definitions.**

1.  "**Firearm**" means a Firearm as defined in California Penal Code, Section 16520, as amended from time to time.

2.  "**Locked Container**" means a secure container which is fully enclosed and locked by a padlock, key lock, combination lock or similar locking device.

3.  "**Residence**" means any structure intended or used for human habitation, including, but not limited to, houses, condominiums, rooms, in-law units, motels, hotels, single room occupancies, time-shares, and recreational and other vehicles where human habitation occurs.

4.  "**Trigger Lock**" means a trigger lock that is listed on the California Department of Justice's roster of approved firearm safety devices and that is identified as appropriate for that firearm by reference to either the manufacturer and model of the firearm or to the physical characteristics of the firearm that match those listed on the roster for use with the device under Penal Code Section 23655(d).

(b)  **Prohibition.** No person shall keep a firearm within a residence unless the firearm is:

1.  Stored in a locked container or disabled with a trigger lock that has been approved by the California Department of Justice;

2.  Carried on the person of the owner or other lawfully authorized user of the firearm who is over the age of 18; or

3.  Within close enough proximity and control that the owner or other lawfully authorized user of the firearm who is over the age of 18 can readily retrieve and use the firearm as if carried on the person.

(c)  **Penalty.** Every violation of this Section shall constitute a misdemeanor and upon conviction shall be punished by a fine not to exceed $1,000 or by imprisonment in the county jail not to exceed six months, or by both.

(d)  **Severability.** If any provision of this Section is found to be unconstitutional or otherwise invalid by any court of competent jurisdiction, that invalidity shall not affect the remaining provisions of this Section which can be implemented without the invalid provisions, and to this end, the provisions of this Section are declared to be severable. The City Council hereby declares that it would have adopted this Section and each provision thereof irrespective of whether any one or more provisions are found invalid, unconstitutional or otherwise unenforceable.

### SEC. 55.22. PROHIBITION ON POSSESSION, PURCHASE, OR SALE OF NON-SERIALIZED, UNFINISHED FIREARM FRAMES OR RECEIVERS AND NON-SERIALIZED FIREARMS.
**(Added by Ord. No. 187,310, Eff. 1/17/22.)**

(a)  **Definitions.** As used in this section, the following terms shall have the following definitions, as indicated.

(1)  "**Federal Firearms Importer**" means a licensed firearm importer as defined in 18 U.S.C. § 921(a)(9), as may be amended.

**Add.53**

(2)  "**Federal Firearms Manufacturer**" means a licensed firearm manufacturer as defined in 18 U.S.C. § 921(a)(10), as may be amended.

(3)  "**Firearm**" means a firearm as defined in California Penal Code Section 16520(a), as may be amended. As used in this section, "Firearm" shall include a handgun, rifle, or shotgun.

(4)  "**Frame**" means the primary structural component of a Firearm to which the fire control components are attached.

(5)  "**Non-Serialized Firearm**" means a Firearm that is not imprinted with a serial number issued by a Federal Firearms Importer or Federal Firearms Manufacturer in compliance with federal law, or engraved or permanently affixed with a serial number provided by the California Department of Justice.

(6)  "**Receiver**" means the primary structural component of a Firearm to which the fire control components are attached.

(7)  "**Firearm Precursor Parts Vendor**" means a person or entity holding a valid precursor parts vendor license, firearms dealer license, or ammunition vendor license, as defined in California Penal Code Section 16532, as may be amended.

(8)  "**Unfinished Frame**" means a piece of any material that does not constitute the completed Frame of a Firearm, but that has been shaped or formed in any way for the purpose of becoming the Frame of a Firearm, and which may readily be made into a functional Frame of a Firearm through milling, drilling, or other means.

(9)  "**Unfinished Receiver**" means a piece of any material that does not constitute the completed Receiver of a Firearm, but that has been shaped or formed in any way for the purpose of becoming the Receiver of a Firearm, and which may readily be made into a functional Receiver of a Firearm through milling, drilling, or other means.

(b)  **Prohibition.** It shall be unlawful for any person to:

(1)  Possess, receive, or transport an Unfinished Frame or Unfinished Receiver, unless the Unfinished Frame or Unfinished Receiver is required by federal law to be, and has been, imprinted with a serial number issued by a Federal Firearms Importer or Federal Firearms Manufacturer, or has been engraved or permanently affixed with a serial number provided by the California Department of Justice. The foregoing prohibition shall not apply to or affect any of the following:

   A.  A Federal Firearms Importer or Federal Firearms Manufacturer;

   B.  A Firearm Precursor Parts Vendor;

   C.  An employee or sworn peace officer of a local, state, or federal law enforcement agency, if the employee or sworn peace officer is acting within the scope of official duties;

   D.  A person who is on the centralized list of exempted federal firearms licensees maintained by the California Department of Justice pursuant to California Penal Code Section 28450, et seq.;

   E.  A common carrier licensed or regulated under state or federal law or an authorized agent of a common carrier when acting in the course and scope of duties incident to the receipt, processing, transportation, or delivery of property; or

**Add.54**

9/23/24, 2:19 PM export.amlegal.com/api/export-requests/c1c3ffa6-0d75-4dad-9a0f-ac4856a4145d/download/

F.   The possession or receipt of an Unfinished Frame or Unfinished Receiver by the person who obtained it through a transaction processed by a Firearm Precursor Parts Vendor pursuant to and in compliance with Penal Code Section 30400, et seq.

(2)   Sell, offer to sell, transfer, offer to transfer, or purchase an Unfinished Frame or Unfinished Receiver, unless the Unfinished Frame or Unfinished Receiver is required by federal law to be, and has been, imprinted with a serial number issued by a Federal Firearms Importer or Federal Firearms Manufacturer, or has been engraved or permanently affixed with a serial number provided by the California Department of Justice. The foregoing prohibition shall not apply to or affect any of the following:

A.   A Federal Firearms Importer or Federal Firearms Manufacturer;

B.   A Firearm Precursor Parts Vendor;

C.   An employee or sworn peace officer of a local, state, or federal law enforcement agency, if the employee or sworn peace officer is acting within the scope of official duties;

D.   A person who is on the centralized list of exempted federal firearms licensees maintained by the California Department of Justice pursuant to California Penal Code Section 28450, et seq:,

E.   The transfer or surrender of a non-serialized unfinished frame or unfinished receiver to a law enforcement agency; or

F.   The sale, transfer, or purchase of an Unfinished Frame or Unfinished Receiver processed by a Firearm Precursor Parts Vendor pursuant to and in compliance with Penal Code Section 30400, et seq.

(3)   Possess, receive, or transport a Non-Serialized Firearm. The foregoing prohibition shall not apply to or affect any of the following:

A.   A Federal Firearms Importer or Federal Firearms Manufacturer;

B.   An employee or sworn peace officer of a local, state, or federal law enforcement agency, if the employee or sworn peace officer is acting within the scope of official duties;

C.   A common carrier licensed or regulated under state or federal law or an authorized agent of a common carrier when acting in the course and scope of duties incident to the receipt, processing, transportation, or delivery of property;

D.   A person who is in compliance with California Penal Code Section 29180, as may be amended; or

E.   A Non-Serialized Firearm that:

i.   has been rendered permanently inoperable;

ii.   is an antique firearm as defined in California Penal Code Section 16170, as may be amended;

iii.   was manufactured or assembled prior to 1968;

iv.   has been determined to be a collector's item pursuant to 26 U.S.C. Ch. 53, including § 5845, as may be amended, or a curio or relic pursuant to 18 U.S.C. Ch. 44, including §

**Add.55**

9/23/24, 2:19 PM     export.amlegal.com/api/export-requests/c1c3ffa6-0d75-4dad-9a0f-ac4856a4145d/download/

921(a), as may be amended, and 27 C.F.R. § 478.11, as may be amended; or

> v.   has been entered into the centralized registry set forth in California Penal Code Section 11106, as may be amended, prior to July 1, 2018, as being owned by a specific individual or entity if that firearm has assigned to it a distinguishing number or mark of identification.

(4)   Sell, offer to sell, transfer, offer to transfer, or purchase a Non-Serialized Firearm. The foregoing prohibition shall not apply to or affect any of the following:

> A.   A Federal Firearms Importer or Federal Firearms Manufacturer;

> B.   The transfer, surrender, or sale of a Non-Serialized Firearm to a law enforcement agency; or

> C.   A Non-Serialized Firearm that:

>> i.   has been rendered permanently inoperable;

>> ii.   is an antique firearm as defined in California Penal Code Section 16170, as may be amended;

>> iii.   was manufactured or assembled prior to 1968; or

>> iv.   has been determined to be a collector's item pursuant to 26 U.S.C. Ch. 53, including § 5845, as may be amended, or a curio or relic pursuant to 18 U.S.C. Ch. 44, including § 921(a), as may be amended, and 27 C.F.R. § 478.11, as may be amended.

(c)   **Penalty.** A violation of this section shall constitute a misdemeanor and upon conviction may be punished by a fine not to exceed $1,000, or by imprisonment in the county jail not to exceed six months, or by both.

(d)   **Operative Date.** Except for Subsections (b)(1) and (b)(3) of this section, this ordinance shall become effective 30 days after enactment. Subsections (b)(1) and (b)(3) of this section shall take effect 90 days after enactment.

(e)   **Preemption.** Nothing in this section shall be interpreted or applied so as to create any requirement, power, or duty in conflict with any federal or state law.

(f)   **Notice.** Upon enactment of this ordinance, the City shall promptly take reasonable efforts to inform residents of its provisions. The information shall include notice that residents who possess any Unfinished Frame, Unfinished Receiver, or Non-Serialized Firearm will not be penalized under Subsections (b)(1) or (b)(3) of this section if they surrender the non-complying Unfinished Frame, Unfinished Receiver, or Non-Serialized Firearm to a law enforcement agent or agency.

(g)   **Severability.** If any provision of this section, or any application thereof to any person or circumstance, is found to be unconstitutional or otherwise invalid by a decision of a court of competent jurisdiction, such decision shall not affect the validity of the remaining provisions of this section which can be implemented without the invalid provisions and, to this end, the provisions of this section are declared to be severable. The City Council hereby declares that it would have adopted this section and each provision thereof irrespective of whether any one or more provisions are subsequently found invalid, unconstitutional or otherwise unenforceable.

**Add.56**

*USCS Const. Amend. 14, Part 1 of 15*

Current through the ratification of the 27th Amendment on May 7, 1992.

## Amendment 14

**Sec. 1. [Citizens of the United States.]**  All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**Sec. 2. [Representatives—Power to reduce apportionment.]** Representatives shall be apportioned among the several States according to their respective numbers, counting the whole number of persons in each State, excluding Indians not taxed. But when the right to vote at any election for the choice of electors for President and Vice-President of the United States, Representatives in Congress, the Executive and Judicial officers of a State, or the members of the Legislature thereof, is denied to any of the male inhabitants of such State, being twenty-one years of age, and citizens of the United States, or in any way abridged, except for participation in rebellion, or other crime, the basis of representation therein shall be reduced in the proportion which the number of such male citizens shall bear to the whole number of male citizens twenty-one years of age in such State.

**Sec. 3. [Disqualification to hold office.]**  No person shall be a Senator or Representative in Congress, or elector of President and Vice-President, or hold any office, civil or military, under the United States, or under any State, who, having previously taken an oath, as a member of Congress, or as an officer of the United States, or as a member of any State legislature, or as an executive or judicial officer of any State, to support the Constitution of the United States, shall have engaged in insurrection or rebellion against the same, or given aid or comfort to the enemies thereof. But Congress may by a vote of two-thirds of each House, remove such disability.

**Sec. 4. [Public debt not to be questioned—Debts of the Confederacy and claims not to be paid.]**  The validity of the public debt of the United States, authorized by law, including debts incurred for payment of pensions and bounties for services in suppressing insurrection or rebellion, shall not be questioned. But neither the United States nor any State shall assume or pay any debt or obligation incurred in aid of insurrection or rebellion against the United States, or any claim for the loss or emancipation of any slave; but all such debts, obligations and claims shall be held illegal and void.

**Sec. 5. [Power to enforce amendment.]**  The Congress shall have the power to enforce, by appropriate legislation, the provisions of this article.