No. 23-3874

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

_____

**GARRY MATTHEWS, et al.,**
Plaintiffs and Appellants,

v.

**CITY OF LOS ANGELES, et al.,**
Defendants and Appellees.

_____

Appeal from the United States District Court
for the Central District of California
Case No. 8:22-cv-02944-FLA-PD
Hon. Fernando L. Aenlle-Rocha

_____

## CITY OF LOS ANGELES'S ANSWERING BRIEF

_____

**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**KATHLEEN A. KENEALY**, Chief Asst. City Attorney (SBN 212289)
**SHAUN DABBY JACOBS**, Supervising Asst. City Atty. (SBN 185073)
**MERETE RIETVELD**, Deputy City Attorney (SBN 252069)
200 North Spring Street, City Hall 14th Floor
Los Angeles, California 90012
(213) 421-2228| Merete.Rietveld@lacity.org

*Attorneys for Defendants and Appellees*
CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, AND
LOS ANGELES BOARD OF POLICE COMMISSIONERS

1

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................6

II.   JURISDICTIONAL STATEMENT ..................................8

III.  STATEMENT OF THE ISSUES ......................................8

IV.  STATEMENT OF THE CASE .........................................9

     a.   *The FAC's Allegations* ..........................................9

     b.   *Procedural History*..............................................10

V.  ARGUMENT.....................................................................13

     a.   *Standard of Review*..............................................13

     b.   *Summary of Law*..................................................13

     c.   *The District Court properly dismissed Plaintiffs' first cause of action for violation of the Second Amendment.* ..........18

          i.    Plaintiffs cannot state a Second Amendment claim based on an arrest made with probable cause for violation of valid state law. .................................................................18

          ii.   The City's CCW Policy did not render the enforcement of state Penal Code sections 25400 and 25850 unconstitutional. .........23

          iii.  The cases Plaintiffs rely on do not support their claims that the City violated their second amendment rights. .........................27

          iv.  The City's CCW Policy was not the "moving force" for the alleged constitutional violation..................................................31

     d.   *The District Court properly dismissed Plaintiffs' second cause of action for violation of the Fourteenth Amendment because it was time-barred and non-City residents are not entitled to apply for a CCW permit under California state law.* .......................................33

          i.    Matthews' claims were time-barred. .........................................33

          ii.   The FAC failed to state a cause of action for violation of the Fourteenth Amendment because non-City residents are not eligible for a City issued CCW permit under California state law. ...........................................................................................37

VI.  CONCLUSION.................................................................38

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Anderson v. Baseball Club of Seattle,*
   2010 WL 5463828 (W.D. Wash. Dec. 28, 2010) ...............................................24
*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007)................................................................................14
*Canatella v. Van De Kamp,*
   486 F.3d 1128 (9th Cir. 2007) ...............................................................37
*Dahl v. Holley,*
   312 F.3d 1228 (11th Cir. 2002) .............................................................20
*District of Columbia v. Heller,*
   554 U.S. 570 (2008)................................................................................17
*Dougherty v. City of Covina,*
   654 F.3d 892 (9th Cir. 2011) ........................................................ 15, 32
*Dubner v. City and County of San Francisco,*
   266 F.3d 959 (9th Cir. 2001) ............................................... 19, 36, 37
*Ebner v. Fresh, Inc.,*
   838 F.3d 958 (9th Cir. 2016) ...............................................................14
*Ewing v. City of Stockton,*
   588 F.3d 1218 (9th Cir. 2009) .............................................................32
*Flanagan v. Harris,*
   2017 WL 729788 (C.D. Cal. Feb. 23, 2017) ......................................38
*Flowers v. Carville,*
   310 F.3d 1118 (9th Cir. 2002) ...................................................... 36, 37
*Gates v. Khokhar,*
   884 F.3d 1290 (11th Cir. 2018) .................................................... 19, 20
*Gregg v. Hawaii, Dep't of Pub. Safety,*
   870 F.3d 883 (9th Cir. 2017) ...............................................................35
*Grossman v. City of Portland,*
   33 F.3d 1200 ...................................................................... 22, 23, 24
*In re D.L.,*
   93 Cal.App.5th 144 (Cal. Ct. App. 2023)..................................... 28, 31
*In re T.F.-G.,*
   94 Cal.App.5th 893 (Cal. Ct. App. 2023)............................... 27, 28, 31
*Johnson v. Dekalb County,*
   391 F.Supp.3d 1224 (N.D. Ga. 2019)......................................... 33, 34
*Johnson v. Riverside Healthcare Sys., LP,*
   534 F.3d 1116 (9th Cir. 2008) .............................................................14

*Jones v. Blanas*,
   393 F.3d 918 (9th Cir. 2004) ...................................................................35

*Metzler Investment GMBH v. Corinthian Colleges, Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .................................................................14

*Monell v. Dep't of Social Services of the City of New York*,
   436 U.S. 658 (1978)................................................................. 11, 14, 32

*Morales v. City of Los Angeles*,
   214 F.3d 1151 (9th Cir. 2000) ................................................................35

*Nat'l R.R. Passenger Corp. v. Morgan*,
   536 U.S. 101 (2002)................................................................... 36, 37

*New York State Rifle & Pistol Association, Inc. v. Bruen*,
   142 S.Ct. 2111 (2022) ................................................................ passim

*Nichols v. Brown*,
   859 F.Supp.2d 1118 (C.D. Cal. 2012) ...................................................24

*People v. Miller*,
   94 Cal.App.5th 935 (Cal. Ct. App. 2023) ...................................... passim

*People v. Mosqueda*,
   97 Cal.App.5th 399 (Cal. Ct. App. 2023) ...................................... passim

*People v. Rodriguez,*
   171 N.Y.S.3d  (Sup. Ct. NY Cty 2022) ..................................................31

*Peruta v. County of San Diego*,
   824 F.3d 919 (9th Cir. 2016) .................................................................18

*Redlich v. Leen*,
   2016 WL 3670575 (S.D. Fla. May 20, 2016)..........................................21

*Rodriguez v. County of Los Angeles*,
   2007 WL 7708555 (C.D. Cal. Dec. 11, 2017)............................... 36, 37

*Sandoval v. County of Sonoma*,
   912 F.3d 509 (9th Cir. 2018) ........................................................ 29, 30

*Smith v. Cahoon*,
   283 U.S. 553 (1931)................................................................................22

*Smith v. D.C.*,
   387 F.Supp.3d 8 (D.D.C. 2019)..............................................................21

*United States v. Blizzard*,
   27 F.3d 100 (4th Cir. 1994) .......................................................... 36, 37

*Van Ort v. Estate of Stanewich*,
   92 F.3d 831 (9th Cir.1996) .....................................................................32

*Villegas v. Gilroy Garlic Festival Ass'n*,
   541 F.3d 950 (9th Cir. 2008) .................................................................24

*Yang v. Boudreaux,*
   2021 WL 4066460 (E.D. Cal. Sept. 7, 2021) ................................. 20, 21

*Young v. Hawaii,*
    896 F.3d 1044 (9th Cir. 2018) ...............................................................22

**Statutes**

28 U.S.C. § 1291 ..............................................................................8
28 U.S.C. § 1331 ..............................................................................8
28 U.S.C. § 1343 ..............................................................................8
42 U.S.C. § 1983 ...................................................................... passim
Cal. Code Civ. Proc. § 335.1 .............................................................35
Cal. Pen. Code § 25400, subd. (a).............................................. passim
Cal. Pen. Code § 25850, subd. (a).............................................. passim
Cal. Pen. Code § 26010 .....................................................................18
Cal. Pen. Code § 26150 .............................................................. 18, 19
Cal. Pen. Code § 26155 .............................................................. 13, 38
Cal. Veh. Code § 14602.6 .......................................................... 29, 30

**Rules**

Fed. R. App. P. 4(a)(1)(A) ..................................................................9
Fed. R. Civ. P. 12(b)(6)....................................................................14

## I.   INTRODUCTION

Appellants and Plaintiffs' lawsuit against the City of Los Angeles, Los Angeles Police Department and the Los Angeles Board of Police Commissioners (collectively the City) arises from their arrests for violating Penal Code section 25400, which prohibits carrying a concealed firearm on one's person or in one's vehicle, and Penal Code section 25850, which prohibits carrying a loaded firearm on one's person or in one's vehicle while in any public place or on a public street. No one disputes that these state laws are constitutional, or that City police officers had probable cause to arrest Plaintiffs for violation of these laws. Instead, Plaintiffs argue their arrests violated the Second Amendment right to bear arms because the City maintained an invalid policy for issuing concealed carry weapon licenses ("CCW license"). Had Plaintiffs obtained CCW licenses, they would have been exempt from Penal Code sections 25400 and 25850. Although Plaintiffs never applied to the City for such a license, they now argue the City's licensing policy unconstitutionally limited their right to carry a firearm in public.

The United States Supreme Court in *New York State Rifle & Pistol Association, Inc. v. Bruen*, 142 S.Ct. 2111 (2022) (*Bruen*) held that the Second Amendment protects an individual's right to carry a handgun for self-defense outside the home, and a firearm licensing regime that requires an applicant to demonstrate "proper cause" for a permit violates this right. Plaintiffs argued that

the City's concealed carry weapons (CCW) licensing policy, which at the time of their arrests required applicants to show "good cause" for a CCW license, was unconstitutional following *Bruen*, and thus, permitted Plaintiffs to disregard California's licensing requirements completely.

The District Court disagreed, and properly granted the City's motion to dismiss their complaint. The court held that *Bruen* did not create a constitutional right to carry publicly a firearm without a license. While *Bruen* precluded enforcement of licensing schemes which included a "good cause" requirement, *Bruen* did not prohibit the state from imposing other licensing requirements or criminalizing the unlicensed carry of a firearm in public.

The District Court also correctly dismissed Plaintiffs' second cause of action for violation of the Fourteenth Amendment Right to Travel for two reasons. First, it was time-barred because plaintiff Garry Matthews, an out-of-state resident, filed this lawsuit after the applicable statute of limitations elapsed. Second, although this claim alleges the City "prevented" non-residents from "registering their handguns and licensing them," it is state law which prohibits non-city residents from applying for a CCW permit. 1-ER-145.

Thus, this Court should affirm the judgment in the City's favor because Plaintiffs cannot state a valid cause of action under any theory.

## II.     JURISDICTIONAL STATEMENT

Plaintiffs alleged violations of their constitutional rights under 42 U.S.C.

§ 1983. 1-ER-128. The District Court had jurisdiction over these claims pursuant

to 28 U.S.C. §§ 1331, 1343 and 1291. The District Court dismissed the case on

October 31, 2023. 1-ER-14. Plaintiffs filed a Notice of Appeal on November 28,

2023. 1-ER-152. This Court has jurisdiction over an appeal from the District

Court's dismissal order. 28 U.S.C. § 1291 and Fed. R. App. P. 4(a)(1)(A).

## III.    STATEMENT OF THE ISSUES

1.  Did the District Court correctly dismiss Plaintiffs' first cause of action for
    violation of the Second Amendment Right to Bear Arms on the ground that
    Plaintiffs could not state a constitutional violation based on the enforcement
    of valid state law?

2.  Did the District Court correctly dismiss Plaintiffs' first cause of action
    because the complaint fails to state a claim for a Second Amendment
    violation when Plaintiffs' injury arises from an allegedly unlawful arrest that
    was nonetheless made with probable cause and under valid state law?

3.  Did the District Court correctly dismiss Plaintiffs' second cause of action for
    violation of the Fourteenth Amendment Right to Travel as time-barred?

4.  Did the District Court correctly dismiss Plaintiffs' second cause of action
    because the operative complaint fails to state a claim against the City given

that it is state law that requires applicants for a CCW license to be a city resident?

## IV.    STATEMENT OF THE CASE

### a.    *The FAC's Allegations*

On September 27, 2019, LAPD officers arrested plaintiff Garry Matthews, a Tennessee resident, for carrying a concealed weapon in his vehicle in violation of Penal Code § 25400, subdivision (a). 1-ER-122. On November 24, 2020, LAPD officers arrested plaintiff Dominic Hunn for carrying a concealed firearm in violation of the same statute. 1-ER-124. On June 22, 2022, LAPD officers arrested plaintiff Jamar Hearns for carrying a loaded firearm in violation of Penal Code § 25850 subdivision (a).[1] 1-ER-126. The FAC does not allege that Plaintiffs had a CCW license or ever applied for one.

California Penal Code § 26155 states that a person may obtain a CCW license from the City where the person resides upon proof of certain qualifications, including that "good cause exists for issuance of that license." The City's policy for issuing CCW licenses at the time of Plaintiffs' arrests required a finding of "good cause," which the Board of Police Commissioners defined as "a special need to defend against threats specific to themselves" (CCW Policy). 1-ER-5.  Plaintiffs

---

[1]     The California Legislature amended both Penal Code sections 25400 and 25850 effective January 1, 2024. In this brief, we refer only to the versions of these statutes that were in effect at the time of the arrests.

alleged that under this policy, the City "den[ied] virtually all CCW applications which effectively imposed a total ban on carrying handguns outside the home." 1-ER-145.

### b.    *Procedural History*

On May 3, 2022, Plaintiffs filed this action alleging two claims for violation of Plaintiffs' constitutional rights under 42 U.S.C § 1983 challenging the City's policy on the issuance of CCW licenses. 1-ER-164. Plaintiffs sought to represent two putative classes of individuals who LAPD arrested for violations of California law regarding carrying a firearm in public. 1-ER-146–7. Plaintiffs filed their first amended complaint (FAC) on September 7, 2022. 1-ER-161. Their first cause of action, "Second Amendment Arrest/ Detention," alleged that the City's CCW policy violates the Second Amendment, and the City enforced this licensing policy against Plaintiffs by arresting them for violating Penal Code sections 25400 and 25850. 1-ER-143. The second cause of action, "Fourteenth Amendment Right to Travel – Nonresident Class Arrest Claim," alleged the City "prevented" non-residents from "registering their handguns and licensing them." 1-ER-145.

On October 7, 2022, the City moved to dismiss the FAC arguing Plaintiffs failed to show any constitutional violation. 1-ER-87. The City argued that Plaintiffs did not allege a Second Amendment violation based on the enforcement of valid state laws. 1-ER-89. The City further argued that the City's CCW Policy

was not the "moving force" behind Plaintiffs' arrests as required under *Monell v.*
*Department of Social Services of the City of New York*, 436 U.S. 658 (1978)
(*Monell)*. 1-ER-89. Lastly, the City argued that Matthews' Fourteenth Amendment
cause of action was time-barred, and failed to state a claim against the City because
state law—not the City's policy—bars non-City residents from obtaining a CCW
license. 1-ER-89.

Plaintiffs opposed the motion, arguing that the City's CCW Policy was the
"moving force" behind their arrests for carrying firearms in public, and *Bruen*
invalidated that policy. 1-ER-77. Plaintiffs asserted that the City's "no issue"
policy with respect to CCW licenses violates their Second Amendment rights by
making it "impossible for people in the City to engage in the constitutionally
protected conduct of carrying a handgun in public for self-defense without
subjecting themselves to arrest, detention, and referral for prosecution to the
LAPD." 1-ER-10.

The District Court granted the motion to dismiss without leave to amend. 1-
ER-14. The court observed that *Bruen* "recognized that the right to carry publicly a
firearm 'has traditionally been subject to well-defined restrictions governing the
intent for which one could carry arms, the manner of carry, or the exceptional
circumstances under which one could not carry arms.' " 1-ER-9 citing *Bruen*, 142
S.Ct. at 2138. "The decision prohibits a state from utilizing a discretionary

licensing regime that requires applicants to demonstrate 'good cause' for obtaining a license beyond the ordinary need for self-defense," but "does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense." 1-ER-9. The court further reasoned:

> *Bruen* did not create, and Plaintiffs cite no authority establishing, a constitutional right to carry publicly a concealed firearm without a license. … *Bruen* precluded enforcement of licensing schemes which, like California Penal Code section 26155(a)(2)[2], included a 'good cause' requirement. [*Bruen*] at 2161-62. *Bruen* did not forbid states from applying other, reasonable, well-defined restrictions to an individual's application for a CCW license. *See id.* at 2156. Here, Plaintiffs do not allege they ever *applied* for a CCW license, which was impermissibly denied. *See generally* FAC. Instead, Plaintiffs allege California state law, as implemented by [the City], created a 'Catch-22' that infringed upon their Second Amendment rights. *Id.*, ¶ 21. In essence, Plaintiffs argue that, because [the City's] application of the 'good cause' requirement is now unconstitutional following *Bruen*, they were permitted to disregard California's licensing requirement completely. This is not what *Bruen* commands, and Plaintiffs cite no authority to convince the court to read Supreme Court precedent so broadly.

1-ER-11. The District Court also found that the second cause of action by Tennessee resident Matthews was time-barred because he filed it more than two years after his arrest. 1-ER-11. On these grounds, the District Court granted the motion to dismiss, finding that Plaintiffs' claims failed as a matter of law. 1-ER-14. Plaintiffs timely appealed on November 28, 2023. 1-ER-152.

---

2       California Penal Code section 26155, subdivision (a)(2) provides that a city may issue a CCW license when the applicant provides proof of "good cause," which the statute does not define.

## V.    ARGUMENT

### a.    *Standard of Review*

This Court reviews de novo the grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), accepting all factual allegations in the complaint as true and construing them in the light most favorable to the nonmoving party. See *Ebner v. Fresh, Inc*., 838 F.3d 958, 962 (9th Cir. 2016). The well-pleaded factual allegations in the complaint are accepted as true and construed "in the light most favorable" to the plaintiff. *Metzler Investment GMBH v. Corinthian Colleges, Inc*., 540 F.3d 1049, 1061 (9th Cir. 2008). Although courts are required to accept the allegations in the complaint as true on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If support exists in the record, this Court may affirm a dismissal on any proper ground. See *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121 (9th Cir. 2008).

### b.    *Summary of Law*

A government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights. *Monell*, 436 U.S. at 694. To state a claim for municipal liability under *Monell*, a plaintiff must allege "(1) that [the plaintiff] possessed a constitutional right of which [s]he was deprived; (2) that the

municipality had a policy; (3) that this policy amounts to deliberate indifference to the plaintiff's constitutional right; and, (4) that the policy is the moving force behind the constitutional violation." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

The court must first determine that a constitutional violation has occurred, i.e., that the City violated some constitutionally imposed duty to Plaintiffs by arresting them for violating California's provisions regulating carrying firearms in public: Penal Code §§ 25400 and 25850. These statutes are part of California's "multifaceted statutory scheme regulating firearms. State law generally prohibits carrying concealed firearms in public, whether loaded or unloaded. [§ 25400.] State law also generally prohibits carrying loaded firearms on the person or in a vehicle in any public place or on any public street …. [§ 25850.]" *People v. Miller*, 94 Cal.App.5th 935, 939 (Cal. Ct. App. 2023) (*Miller*).

In *Bruen*, the Supreme Court of the United States held that a "proper cause" requirement to obtain a CCW license violated the Second Amendment right to carry a handgun in public for self-defense by improperly requiring an applicant to demonstrate "a special need for self-defense." *Bruen*, 142 S.Ct. at 2122. But the *Bruen* court emphasized that the Second Amendment right remains "subject to certain reasonable, well-defined restrictions," and *Bruen* should not be interpreted to mean that licensing regimes, "which often require applicants to undergo a

14

background check or pass a firearms safety course," are unconstitutional. *Id*. at

2138, fn. 9; see also *id*. at 2161 (conc. opn. of Kavanaugh, J.) [noting the court's

"decision does not prohibit States from imposing licensing requirements for

carrying a handgun for self-defense," and explaining that "shall-issue regimes,"

which often require the applicant "to undergo fingerprinting, a background check,

a mental health records check, and training in firearms handling and in laws

regarding the use of force," are "constitutionally permissible"].)

  After the Supreme Court decided *Bruen*, a criminal defendant unsuccessfully

challenged the constitutionality of his conviction for violating California Penal

Code sections 25400 on the grounds that the "good cause" requirement in

California's CCW licensing scheme violated his Second Amendment rights.

*People v. Mosqueda*, 97 Cal.App.5th 399 (Cal. Ct. App. 2023) (*Mosqueda*). The

California Court of Appeal upheld the conviction finding the "good cause"

requirement was severable, and the remaining provisions can be applied

independently. *Id.* at 409.

  The *Mosqueda* court explained, "In [] *Bruen*, 142 S.Ct. 2111, the United

States Supreme Court declared that the Second and Fourteenth Amendments to the

federal constitution protect an individual's right to carry a handgun outside the

home for self-defense. (*Id.* at p. 2122.) The high court also held that the Second

Amendment right is 'subject to certain reasonable, well-defined restrictions.'

(*Bruen*, *supra*, 142 S.Ct. at p. 2156.) The court clarified a test it had earlier applied in *District of Columbia v. Heller* (2008) 554 U.S. 570 [] (*Heller*) for determining whether a government regulation violates that right. The court held that 'when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.' (*Bruen*, at p. 2126.) Accordingly, to justify a firearms regulation, the government 'must demonstrate that the regulation is consistent with this Nation's historical tradition of firearm regulation.' (*Ibid*.) A court may declare that an individual's conduct falls outside the Second Amendment's ' "unqualified command" ' only if the regulation is consistent with the nation's historical tradition. (*Ibid*.)" *Mosqueda*, 97 Cal.App.5th at 402.

"Applying that test, the *Bruen* court held that an element of New York's handgun licensing regime violated the Second Amendment right to carry a handgun in public for self-defense. The regime conditioned issuance of a license to carry a concealed firearm on a discretionary finding of an individual's showing of 'proper cause,' which New York courts had defined as a special need for self-defense. (*Bruen*, *supra*, 142 S.Ct. at pp. 2122-2123.) The Supreme Court concluded that New York did not establish a historical tradition of American governments requiring law abiding citizens to demonstrate a special need for self-defense different from the general community in order to carry arms in public. (Id. at p. 2156.)" *Mosqueda*, 97 Cal.App.5th at 402.

16

"California's handgun licensing regime is similar to New York's. (*Bruen,*

*supra*, 142 S.Ct. at pp. 2123-2124.) Carrying a concealed handgun in public,

whether loaded or unloaded, is generally prohibited unless the individual obtains a

license. (*Peruta v. County of San Diego* (9th Cir. 2016) 824 F.3d 919, 925,

abrogated in part by *Bruen*, at p. 2122.)" *Mosqueda*, 97 Cal.App.5th at 402. A

concealed carry license also exempts individuals from Penal Code § 25850

(prohibiting carry of a loaded weapon). Cal. Pen. Code § 26010.

Both state law at the time of Plaintiffs' arrests (Cal. Pen. Code §§ 26150,

subd. (a)(2); 26155, subd. (a)(2)), and the City's CCW Policy, provided that the

City chief of police may issue a CCW license upon proof that "good cause" exists

for issuing the license. 1-ER-5. Under state requirements, the applicant must also

"be fingerprinted and pass a background check and must also prove that he or she

is of 'good moral character,' resides or works in the issuing county or city, and has

completed a firearm safety course. (§§ 26150, subd. (a)(1), (3)-(4); 26155, subd.

(a)(1), (3)(4); 26185, subd. (a); 26195, subd. (a).)" *Mosqueda*, 97 Cal.App.5th at

402.

*"Bruen* invalidated the 'good cause' requirement in California's licensing

scheme. … but … did not render California's entire licensing scheme …

unconstitutional. The offending 'good cause' requirement is severable from the

remainder of the licensing statute …. *Bruen* is also not grounds for a facial attack

on the discretionary nature of California's licensing scheme, and it did not

invalidate any of the other licensing provisions in [Penal Code] section 26150

[governing CCW license applications]." *Mosqueda*, 97 Cal.App.5th at 403.

> ### c. The District Court properly dismissed Plaintiffs' first cause of action for violation of the Second Amendment.

> #### i. <u>Plaintiffs cannot state a Second Amendment claim based on an arrest made with probable cause for violation of valid state law.</u>

The FAC alleges that Plaintiffs' arrests for carrying a firearm violated their

Second Amendment right to bear arms because *Bruen* invalidated the CCW

Policy's "good cause" requirement. 1-ER-144. But Plaintiffs do not assert their

arrests were unlawful, or challenge the state laws under which LAPD officers

arrested them. Plaintiffs cannot state a Second Amendment violation based on

arrests made with probable cause pursuant to valid state laws. *Gates v. Khokhar*,

884 F.3d 1290, 1297 (11th Cir. 2018) (*Gates*).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the

Fourth Amendment, provided the arrest was without probable cause or other

justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th

Cir. 2001). If there is probable cause for the arrest, no § 1983 claim may follow:

"the existence of probable cause at the time of arrest is an absolute bar to a

18

subsequent constitutional challenge to the arrest." *Gates*, 884 F.3d at 1297; see also *Dahl v. Holley*, 312 F.3d 1228, 1236 (11th Cir. 2002) (observing that "the existence of probable cause to arrest defeats [a] First Amendment claim" arising out of the arrest).

Here, Plaintiffs do not assert a claim under the Fourth Amendment or allege that the LAPD officers arrested them without probable cause or other justification. But the gist of their claims is unlawful arrest: they allege their arrests were wrongful because they constituted an enforcement of the constitutionally invalid CCW Policy. No authority exists for turning a Fourth Amendment unlawful arrest claim into a Second Amendment challenge. Indeed, the authorities are to the contrary. If the arrest was lawful, courts must dismiss the *Monell* claim. *Gates v. Khokhar*, 884 F.3d at 1297; see also *Redlich v. Leen*, No. 16-CIV-20001, 2016 WL 3670575, at *10 (S.D. Fla. May 20, 2016) (plaintiff who brought claim against officers for violating his Second Amendment right by seizing a pistol acknowledged officers "cannot be liable for a constitutional violation of plaintiff's Second Amendment rights unless the arrest is improper and unlawful").

The District Court in *Yang v. Boudreaux,* No. 1:21-CV-00148-BAM, 2021 WL 4066460, at *6 (E.D. Cal. Sept. 7, 2021) (*Yang*) addressed this same issue. The *Yang* plaintiff brought a Second Amendment challenge based on the allegation "that he was **arrested** for possession of firearms purportedly legally within his

possession, coupled with the seizure of those firearms by officers." (Emphasis original.) The Court held that where "the gist of" a claim is "purported unlawful arrest," a plaintiff "cannot challenge that arrest, i.e., the officers' actions, under the Second Amendment." *Ibid.* Had the officers permanently deprived the plaintiff of his firearms that he otherwise lawfully possessed for self-defense, he could "allege a Second Amendment claim." *Ibid.* But given the plaintiff based his claim solely on the arrest, the court found the plaintiff failed to state a claim, holding that a "plaintiff cannot turn a Fourth Amendment unlawful arrest into a Second Amendment challenge." *Ibid.*

Likewise, here, Plaintiffs' claims are based solely on their arrests, and they cannot challenge those arrests under the Second Amendment. Furthermore, they may not transform their claim into one for a Fourth Amendment violation because they do not allege the officers lacked probable cause to arrest them or argue that the state laws under which they were arrested were unconstitutional. By contrast, courts have held that a plaintiff *may* state a Second Amendment claim arising out of arrests where the officers seized and held plaintiffs' firearms, and the plaintiffs "allege the criminal laws undergirding their arrests *and prosecutions* are themselves constitutionally invalid." *Smith v. D.C.*, 387 F.Supp.3d 8, 26, n. 12 (D.D.C. 2019) (emphasis added). But here, Plaintiffs' claims arise solely from their arrests, not from their prosecution or any permanent deprivation of their firearms,

20

and plaintiffs do not contend the criminal laws they were arrested under are "constitutionally invalid."

Nor are such plaintiffs—who seek to challenge an unlawful municipal licensing policy—without a remedy. Plaintiffs could have asserted a challenge to the City's CCW Policy via a petition for writ of mandate or challenged any denial of an application for a CCW license. See *Young v. Hawaii*, 896 F.3d 1044, 1049 (9th Cir. 2018) (reversed on other grounds in *Bruen*). Furthermore, a criminal defendant may directly challenge the constitutionality of a CCW license regime when they are being criminally prosecuted, even without having applied for a license. *Smith v. Cahoon*, 283 U.S. 553, 562 (1931) (holding that an individual need not obtain a license before challenging the constitutionality of a licensing scheme when they are being criminally prosecuted under a facially unconstitutional statute). Plaintiffs cannot, however, show that their arrests alone—made with probable cause pursuant to valid state laws—violated their Second Amendment rights due to a flaw in a related municipal licensing policy.

Plaintiffs argue their challenge is correctly framed and that their arrests provide proper grounds for stating a violation of the Second Amendment. In support of this position, Plaintiffs cite to *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n. 18 (9th Cir. 1994) for the principle that, "Where … a local police officer enforces an unconstitutional ordinance, relief lies against the city." Op. Br.

37. According to Plaintiffs, in *Grossman*, "the Ninth Circuit allowed Plaintiffs'
claim against the municipality even though the plaintiff had not applied for a
license before challenging the municipal ordinance." Op. Br. 41.

    *Grossman* is inapposite. In that case, the police arrested and cited a protester
for demonstrating in a public park without a permit in violation of a *city* ordinance.
*Grossman*, 33 F.3d at 1201–2. The plaintiff then brought a 42 U.S.C. § 1983 action
against the city and arresting officer arguing the arrest violated his First
Amendment right to free speech. *Id.* at 1202. The Ninth Circuit held that by
arresting plaintiff for violating a local ordinance requiring a permit, the City
violated the plaintiff's First Amendment rights even though the plaintiff did not
apply for a permit. *Id.*

    Here, unlike in *Grossman*, LAPD officers did not arrest Plaintiffs for
violating a city ordinance or failing to obtain a license; LAPD officers arrested
Plaintiffs for violating state law prohibiting carrying a firearm in public. While the
city code in *Grossman* imposed the duty to obtain a written permit to conduct a
demonstration in a park, here, it is the state which criminalized carrying a
concealed or loaded firearm in public. *Grossman*, 33 F.3d. at 1201; Cal. Pen. Code,
§§ 25400, 25850. Thus, while *Grossman* found the enforcement of a *city*
requirement for a license could form the basis of a § 1983 claim, here, the
enforcement concerns a state law criminalizing carrying a firearm to which

exemptions existed for those with a license. Furthermore, *Grossman* was not based solely on an arrest, as are Plaintiffs' claims, but also on the punishment of the plaintiff for violating the law. *Grossman*, 33 F.3d at 1201–2.

Plaintiffs' arrests under valid state laws cannot provide the basis for a Second Amendment challenge: it is well-established that "mere enforcement" of a constitutional state statute "is not a sufficient basis for imposing § 1983 municipal liability." *Nichols v. Brown*, 859 F.Supp.2d 1118, 1133 (C.D. Cal. 2012); *Anderson v. Baseball Club of Seattle*, No. C09-0850RAJ, 2010 WL 5463828, at *5 (W.D. Wash. Dec. 28, 2010) (finding no *Monell* liability against city where "it is unclear how it would be unconstitutional for police officers to enforce a presumptively constitutional law"). As Plaintiffs' arrests did not violate Plaintiffs' Second Amendment rights, the District Court properly dismissed the first cause of action. See *Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (en banc) (a municipality cannot be held liable under *Monell* when there is no underlying constitutional violation).

> ii.      **The City's CCW Policy did not render the enforcement of state Penal Code sections 25400 and 25850 unconstitutional.**

Even if Plaintiffs could state a Second Amendment challenge based on valid arrests, the FAC still does not allege facts showing their arrests violated the Second Amendment. Plaintiffs acknowledge that LAPD officers arrested them for

violating state law, not any City policy, but argue that the City's "implementation of the concealed carry prohibitions" "converted" state law "into their own municipal policy." Op. Br. 4. In other words, Plaintiffs argue that the City incorporated its invalid licensing policy into Penal Code §§ 25850 and 25400, such that the City "supplied" "an element" of the enforced constitutional state law.[3] Op. Br. 29. But Plaintiffs do not cite any case finding *Monell* liability arising from a municipal policy combined with constitutional state laws in this way. And the California Court of Appeal has rejected similar challenges, holding that an unconstitutional licensing statute does not render the enforcement of §§25400 and 25850 unconstitutional.

For example, in *People v. Miller*, 94 Cal.App.5th 935 (Cal. Ct. App. 2023), after the prosecution charged the defendant with violating § 25400, he argued that the statute was unconstitutional due to *Bruen*'s invalidation of California's "good cause" licensing requirement. *Id.* at 943. The California Court of Appeal noted that the prosecution did *not* charge the defendant with failing to obtain a license, although that would have exempted her from § 25400's prohibition on concealed carry. *Ibid*. Accordingly, the California Court of Appeal held that "her arguments are based on the flawed premise that section 25400 is unconstitutional without a

---

[3]     All further undesignated statutory references are to the California Penal Code.

valid licensing scheme. In this case, we need not resolve [her] questions regarding the constitutionality of California's firearm licensing statutes because, even if we were to conclude the licensing statutes are invalid, this would not render a charge under section 25400 unconstitutional as well." *Ibid.*

The court explained that,

> [W]hile *Bruen* raises constitutional concerns regarding the licensing requirements set forth in sections 26150 and 26155 [governing CCW licenses], it does not suggest the concealed carry prohibitions of section 25400 are unconstitutional. *Bruen* addressed only the constitutionality of New York's licensing regime—not its impact on any potential criminal charges for carrying a firearm without a license. [Citation.] The constitutionality of California's concealed carry prohibition is not dependent upon the constitutionality of its licensing statutes because, while a license qualifies a holder for an exemption from the concealed carry provisions, the availability of this exemption is not constitutionally necessary. [Citations.]

*Miller*, 94 Cal.App.5th at 945. The Court further observed that this nation has a long, historical tradition of banning concealed carry, and such bans were found lawful so long as citizens were allowed to carry firearms openly. *Id.* at 944. "Whatever constitutional defects may currently exist elsewhere in California's multifaceted statutory scheme regulating firearms, section 25400 is not itself unconstitutional because of them." *Id*. at p. 946.

*People v. Mosqueda*, 97 Cal.App.5th 399 (Cal. Ct. App. 2023) also rejected a criminal defendant's facial challenge to sections 25400 and 25850. The *Mosqueda* defendant argued that "*Bruen* rendered California's entire licensing scheme facially unconstitutional, and as a result, it was unconstitutional to punish

nonfelons such as them for carrying a firearm in public solely because they did not have a license." *Id.* at 403. The California Court of Appeal disagreed, holding that *Bruen* did not render the enforcement of §§ 25400 and 25850 unconstitutional, explaining that bans on concealed carry are not unconstitutional simply because not "accompanied by a valid licensing scheme." *Id.* at 406.

Likewise, in *In re T.F.-G.*, 94 Cal.App.5th 893 (Cal. Ct. App. 2023), the court rejected a criminal defendant's argument that "if any requirement for issuance of a license to carry a loaded firearm was unconstitutional, then the application of section 25850 to punish any unlicensed person must also be unconstitutional." *Id.* at 909. The court explained:

> [S]ection 25850 is in effect the enforcement mechanism of a regulatory regime that grants licenses to those who may lawfully carry firearms and withholds licenses from those who may not. As such, the scope of section 25850 is inherently broader than the scope of a given licensing regulation, including the unconstitutional good cause requirement. Although section 25850 may have unconstitutional application where denial of licensing turned on the good cause requirement, [the defendant] does not claim that it may not constitutionally apply where the denial of a license turned on the applicant's violent criminal history or failure to undergo firearms safety training. … Section 25850 imposes penalties not only on individuals who are wrongfully denied licenses based on the unconstitutional good cause requirement, but on individuals who cannot or do not obtain licenses due to constitutionally valid restrictions and engage in prohibited conduct—i.e., carry a loaded firearm in public where no exception makes it permissible to do so.

*Id.* at 915–16. On these grounds, the court held that section 25850 is not rendered unconstitutional whenever a "licensing regulation in California may be invoked to

unconstitutionally deny a license." *Ibid.*; see also *In re D.L.*, 93 Cal.App.5th 144 (Ca. Ct. App. 2023) (rejecting the contention that § 25850's "incorporat[ion of] the unconstitutional 'good cause' licensing requirement" rendered it unconstitutional).

In short, since *Bruen*, courts have consistently upheld the enforcement of sections 25400 and 25850 criminalizing possession of a weapon notwithstanding *Bruen's* invalidation of "good cause" licensing requirements. Whether the reasoning is that a valid licensing regime is not constitutionally necessary to the enforcement of § 25400 (*Miller*, 94 Cal.App.5th at 945), or that an invalid "good cause" requirement does not render § 25850 facially unconstitutional because certain constitutionally valid licensing requirements still restrict carrying a firearm under section 25850 (*In re T.F.-G.*, 94 Cal.App.5th at 916), the bottom line is that *Bruen*'s invalidation of the City's municipal licensing policy did not nullify the City's enforcement of state laws criminalizing the unlicensed possession of firearms in public. And Plaintiffs may not state a constitutional violation based on the enforcement of these state laws notwithstanding *Bruen*'s invalidation of the City's CCW Policy.

### iii.    The Cases Plaintiffs Rely on Do Not Support their Claims that the City Violated their Second Amendment Rights.

Plaintiffs do not address this recent spate of cases addressing sections 25400 and 25850 post-*Bruen*. Rather, they cite to other statutory schemes the courts

analyzed, such as in *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018) (*Sandoval*). According to Plaintiffs, *Sandoval*, a case involving the state Vehicle Code, "uph[eld] *Monell* liability over [the] county's argument that 'it was merely acting according to state law, rather than carrying out County policy,' because [the] policy was discretionary." Op. Br. 29. This does not accurately summarize *Sandoval*.

In *Sandoval*, the Ninth Circuit considered California Vehicle Code section 14602.6(a)(1), which provides that a peace officer may impound a vehicle for 30 days if the driver has never been issued a license. *Sandoval*, 912 F.3d at 513. Vehicle Code § 14602.6 does not define the term "driver's license," or whether it is limited to California licenses, and the municipal defendants adopted a policy of enforcing the statute against drivers without a California license. *Ibid.* The plaintiffs, two drivers with out-of-state licenses whose vehicles the County impounded, sued under 42 U.S.C. § 1983, alleging the impoundments violated the Fourth Amendment. *Ibid.* The District Court agreed. *Id.* at 514–17.

On appeal, the *Sandoval* defendants argued they could not be liable under 42 U.S.C. § 1983 for merely enforcing state law. *Sandoval*, 912 F.3d at 517. But the Ninth Circuit found that the municipal defendants did *not* enforce state law, because they misinterpreted Vehicle Code § 14602.6 as not recognizing driver's licenses from foreign jurisdictions. *Ibid.* Thus, "[t]he impoundment of the

plaintiffs' vehicles was not caused by state law, but the defendant's polices of impounding vehicles when the driver had never been issued a California driver's license." *Ibid.*

Although Plaintiffs characterize *Sandoval* as "upholding *Monell* liability over [the] county's argument that 'it was merely acting according to state law, rather than carrying out County policy,' because [the] policy was discretionary," this was not the court's reasoning. Op. Br. 29. *Sandoval* found *Monell* liability was properly based on a County policy because the County misapplied state law, not because the policy was discretionary. The Court explained: "Given the plain meaning of [Vehicle Code] section 14602.6, the County's argument that state law *caused* the violation of [the plaintiff's] rights is without merit." *Sandoval*, 912 F.3d at 518 (emphasis added). Thus, *Sandoval* does not support holding the City liable for correctly enforcing sections 25400 and 25850, whose constitutionality Plaintiffs do not challenge, but stands only for the unremarkable principle that municipalities that enforce a policy that contradicts state law may be held liable under 42 U.S.C. § 1983.

More on point are cases upholding state criminal penalties for possession of a firearm notwithstanding *Bruen*'s holding that a good cause requirement to obtain a concealed carry license is invalid. See *In re T.F.-G.*, 94 Cal.App.5th at 916; *In re D.L.*, 93 Cal.App.5th 144; *Miller*, 94 Cal.App.5th at 945; *Mosqueda*, 97

Cal.App.5th at 403. A New York trial court, which rejected a criminal defendant's

post-*Bruen* motion to dismiss charges for criminal possession of a weapon,

succinctly analyzed the issue. *People v. Rodriguez,* 171 N.Y.S.3d 802 (Sup. Ct.

NY Cty 2022) (*Rodriguez*). The *Rodriguez* defendant argued that *Bruen*'s

invalidation of the state's "proper cause" licensing requirement "confer[ed] an

unqualified entitlement to possess deadly weapons in public places without

restriction." *Id.* at 804. The court disagreed, reasoning:

> [D]efendant's quarrel lies not with the licensing scheme, but with the
> statutes criminalizing unlicensed possession. In other words, he does not
> seek to demonstrate either that the licensing law was unconstitutional — we
> already know it was — or that it was unfairly applied to him — it wasn't
> applied to him at all — but that the Second Amendment itself, the right to
> bear arms, confers an absolute entitlement to possess concealed firearms in
> public, license be damned. But contrary to defendant's contention, *Bruen*, ...
> did not hold that the State is powerless to criminalize the unlicensed
> possession of firearms on city streets.

*Id.* at 805. Likewise, here, the State's criminalization of the unlicensed possession

of firearms in public remains valid despite *Bruen*'s holding that the City must

discontinue application of a "good cause" requirement in its licensing scheme. On

these grounds, the District Court properly dismissed Plaintiff's first cause of action

for violation of the Second Amendment because the FAC did not allege facts

showing a constitutional violation occurred.

### iv.     The City's CCW Policy was not the "moving force" for the alleged constitutional violation.

Even if Plaintiffs could properly state a Second Amendment claim arising from unlawful arrests and even if the FAC adequately stated a predicate constitutional violation, the first cause of action still fails to state a claim for *Monell* liability because the City's CCW Policy was not the "moving force" behind Plaintiffs' arrests.

"A government entity may not be held liable under 42 U.S.C. § 1983 unless a policy, practice, or custom of the entity can be shown to be a *moving force* behind a violation of constitutional rights." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (citing *Monell*, 436 U.S. at 694). Thus, "[o]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Ewing v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009). "Pointing to a municipal policy action or inaction as a 'but-for' cause is not enough to prove a causal connection under *Monell*. Rather, the policy must be the proximate cause of the section 1983 injury." *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir.1996).

The City's CCW Policy is not the moving force behind Plaintiffs' arrests because no "direct causal link" existed between the policy, which set conditions for

a CCW license, and Plaintiffs' arrests, which were for possession of concealed or loaded weapon. *Johnson v. Dekalb County*, 391 F.Supp.3d 1224 (N.D. Ga. 2019). (*Johnson*) is instructive. There, the officers arrested plaintiff for violating a state law criminalizing disorderly conduct. *Id*. at 1235. After the charges were dropped, he filed a 42 U.S.C. § 1983 *Monell* claim alleging the county's disorderly conduct ordinance interfered with his constitutional rights. *Id*. at 1257–58. The county moved for summary judgment, arguing that because the officers arrested plaintiff under a state law, the county ordinance "cannot be the 'moving force' behind [the] purported constitutional violation." *Id*. at 1258. The district court agreed, dismissing the *Monell* claim because no "causal link" existed between the county's "policy" and the plaintiff's arrest. *Id*. at 1258–59. The district court reasoned that "even absent the purported constitutional deficiencies in [the] County's disorderly conduct ordinance, [the plaintiff] still would have been arrested ... under the [state] statute." *Ibid*.

Similarly, here, as the LAPD officers arrested Plaintiffs for violating state law, the City's policy is not the moving force behind their arrest: Plaintiffs did not violate the policy, which governs the licensing process, but rather state law criminalizing possession of a firearm. The CCW Policy is only "tangentially related" to Plaintiffs' arrests. *Johnson*, 391 F. Supp.3d at 1258. Because the CCW Policy allegedly barred Plaintiffs from obtaining a CCW license, they could not

carry a firearm legally in public. That they still chose to carry a firearm in public did not violate the CCW Policy, and the LAPD officers did not arrest them for violating this policy. Instead, LAPD officers arrested Plaintiffs for actions that violated constitutional state laws, which they do not challenge. That a different licensing regime might have exempted them from Penal Code sections 25400 and 25850 had Plaintiffs successfully applied for a license under that regime, does not transform the invalid CCW Policy into the moving force for their arrests here.

As Plaintiffs cannot state a *Monell* claim against the City for a constitutional violation based on their arrests, the District Court properly dismissed the first cause of action.

> ### d. The District Court properly dismissed Plaintiffs' second cause of action for violation of the Fourteenth Amendment because it was time-barred and non-City residents are not entitled to apply for a CCW permit under California state law.

> #### i.    <u>Matthews' claims were time-barred.</u>

The FAC's second claim, which is asserted by Matthews as a non-California resident, is for a purported violation of the Fourteenth Amendment Right to Travel. The District Court properly found this claim was time-barred because Matthews filed this action more than two years after Matthews' arrest.

"For actions under 42 U.S.C. § 1983, courts apply the forum state's statute of limitations for personal injury actions, along with the forum state's law regarding tolling ... except to the extent any of these laws is inconsistent with federal law." *Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004). California has a two-year statute of limitations for personal injury actions. Cal. Code Civ. Proc. § 335.1. "Although state law determines the length of the limitations period, federal law determines when a civil rights claim accrues." *Morales v. City of Los Angeles*, 214 F.3d 1151, 1153-54 (9th Cir. 2000). Generally, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Gregg v. Hawaii, Dep't of Pub. Safety,* 870 F.3d 883, 885 (9th Cir. 2017)).  In this case, the claim accrued from the date of the arrest, not when the criminal charges were dismissed.

Here, LAPD officers arrested Matthews for violating California Penal Code section 25400(a)(1), and Matthews alleges his injuries "all resulted from being arrested." 1-ER-144-46. LAPD officers arrested Matthews on September 27, 2019, but he waited more than two years after his arrest (May 3, 2022) to file this action. 1-ER-122. Accordingly, his claims are time-barred.

Matthews argues his claim is tolled by the continuing tort doctrine "because the criminal prosecution stemming from his arrest was not dismissed until 12/16/2021, which is within the two year period from the time of his arrest,

9/27/2019, and so 'at least one act falls within the time period.' " Op. Br. at 45 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002); *United States v. Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994)). Under the "continuing tort doctrine[,] [w]hen a tort involves continuing wrongful conduct, the statute of limitations [does not] begin to run until the conduct ends." *Flowers v. Carville*, 310 F.3d 1118, 1126 (9th Cir. 2002) (*Flowers*). However, the continuing tort doctrine applies only when "there is no single incident that can fairly or realistically be identified as the cause of significant harm." *Id*. A "mere continuing impact from past violations is not actionable." *Grimes v. City and County of San Francisco*, 951 F.2d 236, 238-39 (9th Cir. 1991) (*Grimes*).

On this point, *Rodriguez v. County of Los Angeles*, Case No. 2:07-cv-02644-ABC (CTx), 2007 WL 7708555 (C.D. Cal. Dec. 11, 2017) (*Rodriguez*) is instructive. In that case, the plaintiff alleged an officer entered her home without a search warrant in violation of the Fourth and Fourteenth Amendments. *Id*. at *5. Plaintiff further alleged that the police continued to unlawfully investigate her after the search and seizure, and urged the Court to view these acts as a whole and continuing torts. *Ibid.* But the Court found that the "alleged constitutional violation accrued the moment [the officer] wrongfully entered the house, and was complete in itself," holding that the continuing tort doctrine could not salvage plaintiffs claim. *Ibid*.

Here, as in *Rodriguez*, Matthews knew or should have known of his injuries at the time of his arrest which allegedly caused the violation of his Second and Fourteenth Amendment rights. Matthews's arrest serves as the "injury which is the basis" of his claims, not his criminal prosecution. *Canatella v. Van De Kamp*, 486 F.3d 1128, 1132-33 (9th Cir. 2007). Because the "single incident" of his arrest is fairly attributed as the cause of his harm, the continuing tort doctrine does not toll his claim. *Flowers*, 310 F.3d at 1126. The mere "continuing impact" from his allegedly illegal arrest, subsequent prosecution, and eventual dismissal of the action, is insufficient to apply the continuing tort doctrine. *Grimes*, 951 F.2d at 238–39.

Matthews's cited cases are inapposite. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 122 (2002), arose in the specific context of a hostile work environment claim and involved many "acts which ... are part of the same unlawful employment practice[.]" As for *Blizzard*, 27 F.3d 100, 102 (4th Cir. 1994), that case discusses the statute of limitations for the crimes of concealing and receiving stolen property, and does not apply to civil statutes of limitations.

Thus, the statute of limitations bars Matthews's Second and Fourteenth Amendment claims because he filed his lawsuit more than two years after his arrest.

ii.  **The FAC failed to state a cause of action for violation of the Fourteenth Amendment because non-City residents are not eligible for a City issued CCW permit under California state law.**

Even if the second cause of action is not time-barred, it still fails because the FAC does not allege facts showing a violation of the Fourteenth Amendment. Matthews alleges that the City violated his "Fourteenth Amendment Right to Travel by adopting and implementing a policy of a total ban on carriage of handguns in public and enforcing it against Plaintiffs." Op. Br. 44. However, the requirement that only City residents can apply for CCW licenses is a state statutory requirement, not a City requirement. (§ 26155, subd. (a)(3) (requiring that CCW "applicant is a resident of that city"). Matthews' challenge to the City's alleged refusal to issue CCW licenses to non-residents is, thus, directed at the wrong entity; the State is the proper defendant, not the City. See, e.g., *Flanagan v. Harris*, No. LA CV16-06164 JAK (ASx), 2017 WL 729788, at *8-13 (C.D. Cal. Feb. 23, 2017) (dismissing Second Amendment claims against a County Sheriff challenging State laws prohibiting the open carry of guns because the Sheriff "has no responsibility for the enactment of the restrictions on open carry, [so] it is not a proper party to this action"). Thus, the District Court properly dismissed the second cause of action on this basis alone.

## VI.   CONCLUSION

For the foregoing reasons, this Court should affirm the District Court's order dismissing the Amended Complaint in its entirety. Since the City did not violate Plaintiffs' constitutional rights under the Second or Fourteenth Amendment under any theory, the *Monell* claims fail as a matter of law.

Respectfully submitted,

Dated: December 9, 2024

LOS ANGELES CITY ATTORNEY'S OFFICE
Hydee Feldstein Soto
Denise C. Mills
Kathleen A. Kenealy
Shaun Dabby Jacobs


*Merete Rietveld*
Merete Rietveld


***Attorneys for Defendants and Appellees***
CITY OF LOS ANGELES, LOS ANGELES
POLICE DEPARTMENT, AND LOS ANGELES
BOARD OF POLICE COMMISSIONERS

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)**

I am the attorney or self-represented party.

**This brief contains _____ words,** including _____ words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

☐ complies with the word limit of Cir. R. 32-1.

☐ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

☐ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

☐ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

☐ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
　　☐ it is a joint brief submitted by separately represented parties.
　　☐ a party or parties are filing a single brief in response to multiple briefs.
　　☐ a party or parties are filing a single brief in response to a longer joint brief.

☐ complies with the length limit designated by court order dated _____ .

☐ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature**                                                    **Date**
*(use "*s/[typed name]*" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**                                                        *Rev. 12/01/22*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** | 23-3874

The undersigned attorney or self-represented party states the following:

(●) I am unaware of any related cases currently pending in this court.

( ) I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

( ) I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

**Signature** | /s/ Merete Rietveld          **Date** | 12/09/2024

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 17**                                                                 *New 12/01/2018*