# Case No. 23-3874

*In the*

# United States Court of Appeals

*for the*

# Ninth Circuit

---

GARRY MATTHEWS; DOMINIC ROSS HUNN; JAMAR HEARNS,
individually and as class representatives,,
*Plaintiffs-Appellants*,

v.

CITY OF LOS ANGELES; LOS ANGELES POLICE DEPARTMENT;
LOS ANGELES BOARD OF POLICE COMMISSIONERS,
*Defendants-Appellees.*

---

*Appeal from the United States District Court for the Central District of California (Los Angeles),
Case No. 2:22-cv-02944-FLA-PD · Honorable Fernando L. Aenlle-Rocha, District Judge*

## APPELLANTS' REPLY BRIEF

WILLIAM C.C. CLAIBORNE III
**CLAIBORNE LAW**
717 D Street NW, Suite 300
Washington, D.C. 20004
Telephone: (202) 824-0700
claibornelaw@gmail.com

*Attorney for Plaintiffs and Appellants,
Garry Matthews, Dominic Ross Hunn
and Jamar Hearns, individually and as
class representatives*

---


COUNSEL PRESS INC. · (213) 680-2300

PRINTED ON RECYCLED PAPER 

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................. ii

INTRODUCTION ............................................................................1

    A.    City Defendants misunderstand the District Court's opinion and why the District Court erred ............................................8

    B.    The City Defendants' gun control regime was an unconstitutional municipal policy ......................................20

    C.    The City Defendants' and the Chief's CCW polces amounted to municipal policies under *Monell*, and the City's municipal policies were the moving force for Plaintiffs' and putative class members' Constitutional injuries ...............................22

    D.    Mr. Matthews' claims are not time-barred ..........................25

CONCLUSION ............................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Brewster v. City of L.A.*,
  2019 U.S. Dist. LEXIS 225770 (C.D. Cal. 2019) .................................................3

*California, Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't,*
  2024 U.S. Dist. LEXIS 221863 (C.D. Cal. 2024) ................................................8

*Castro v. Cty. of L.A.*,
  833 F.3d 1060 (9th Cir. 2016) ............................................................................23

*Chew v. United States,*
  314 A.3d 80 (D.C. 2024) ...................................................................15, 17, 25

*Cooper v. Dillon*,
  403 F.3d 1208 (11th Cir. 2005) ............................................................................3

*Desert Outdoor Advertising v. City of Moreno Valley*,
  103 F.3d 814 (9th Cir. 1996) .........................................................................7, 10

*District of Columbia v. Heller*,
  554 U.S 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2010) ...................................9

*Dubner v. City and County of San Francisco*,
  266 F.3d 959 (9th Cir. 2001) ..............................................................................20

*Evers v. County of Custer*,
  745 F.2d 1196 (9th Cir. 11984) ............................................................................3

*Grossman v. City of Portland*,
  33 F.3d 1200 (9th Cir. 1994) ....................................................................*passim*

*In re D.L.,*
  93 Cal.App.5th 893 (Cal. Ct. App. 2023)....................................................13, 18

*In re T.F.-G.*,
  94 Cal. App. 5th 893 (Cal. Ct. App. 2023)...........................................13, 17, 18

*Johnson v. Dekalb County*,
  391 F.Supp.3d 1224 (N.D. Ga. 2019)..................................................................10

*Lowry v. City of San Diego*,
  858 F.3d 1248 (9th Cir. 2017) ............................................................................23

*Mann v. Cty. of San Diego*,
    907 F.3d 1154 (9th Cir. 2018) ...........................................................23

*Monell v. Department of Social Services of the City of New York*,
    436 U.S. 658 (1978)........................................................................22, 23

*N.Y. State Rifle & Pistol Ass'n v. 11 Bruen*,
    142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022)...................................*passim*

*Nat'l R.R. Passenger Corp. v. Morgan*,
    536 U.S. 101 (2002).............................................................................25

*People v. Miller*,
    94 Cal. App. 5th 935 (Cal. Ct. App. 2023)...................................16, 18

*People v. Mosqueda*,
    97 Cal. App. 5th 399 (Cal. Ct. App. 2023)...................................*passim*

*Plummer v. United States*,
    983 A.2d 323 (D.C. 2009) ................................................................5, 12

*Sandoval v. Cty. of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) .........................................................*passim*

*Shuttlesworth v. Birmingham*,
    394 U.S. 147 (1969)............................................................................7, 9

*Smith v. Cahoon*,
    283 U. S. 553, 51 S. Ct. 582, 75 L. Ed. 1264 (1931)........................12

*Smith v. District of Columbia*,
    568 F. Supp. 3d 55 (D.D.C. 2021) ....................................................11

*Tobe v. City of Santa Ana* (1995),
    9 Cal. 4th 1069 ....................................................................................1

*United States v. Blizzard*,
    27 F.3d 100 (4th Cir. 1994) ...............................................................25

*United States v. Denton*,
    611 F.3d 646 (9th Cir. 2010) .............................................................11

*Vives v. City of New York*,
    524 F.3d 346 (2d Cir. 2008) ................................................................3

*Wilson v. Hawaii*,
    220 L. Ed. 2d 266 (2024)...........................................................*passim*

iii

*Yang v. Boudreaux*,
    No. 1:21-CV-00148-BAM, 2021 WL 4066460 (E.D. Cal. Sept. 7,
    2021) ................................................................................................20


**Statutes & Other Authorities:**

U.S. Const. Amend I ...............................................................................19, 20

U.S. Const. Amend II .............................................................................*passim*

U.S. Const. Amend IV .................................................................................20

U.S. Const. Amend XIV .........................................................................*passim*

California Penal Code § 25400 ....................................................................16

California Penal Code § 25400(a)(1) and (a)(3) ..........................................11

California Penal Code § 25850 ...............................................................13, 16

California Penal Code § 25850(a) ................................................................11

Constitutional Carry/Unrestricted/Permitless Carry -
    https://www.usconcealedcarry.com/resources/terminology/types-of-
    concealed-carry-licensurepermitting-policies/unrestricted/#:~:text=
    Listed%20below%20are%20the%2029%20states%20that,military)
    %20*%20Idaho%20(PC%2D18)%20*%20Indiana%20(PC%2D18) ..........10

D.C. Code § 22-4504(a) ...............................................................................15

D.C. Code § 22-4506(a) ..........................................................................15, 25

## INTRODUCTION

Appellants' (Plaintiffs below) appeal should be granted.

Appellees (City Defendants below) have failed to carry their burden of showing that Appellants' complaint did not state a cause of action.

City Defendants did not address Plaintiffs' claims on the merits or address Plaintiffs' arguments.

Instead, City Defendants set up a straw man – the naked California licensing scheme without regard to how the local police board or police chief had interpreted and enforced it – and directed its arguments to state court decisions interpreting "facial" challenges to that licensing scheme as limited by state doctrines – inapplicable here – such as California State standing doctrines, plain error review standards, and the California procedural device "demurrer," which forecloses "as-applied" challenges. *People v. Mosqueda*, 97 Cal. App. 5th 399, 413. As *Mosqueda* points out, under the State procedural rules governing demurrer, an as-applied challenge is ripe only after conviction. *Id.* (*quoting Tobe v. City of Santa Ana*, (1995), 9 Cal. 4th 1069, 1085).

But Plaintiffs do not base their claims on the California licensing scheme or challenge the constitutionality of the California licensing scheme. The California licensing scheme does not impose a total ban on the carriage of concealed handguns in public as the City Defendants' municipal policy did. In fact, the

1

underlying California licensing scheme vests discretion in Police Boards and police Chiefs to grant or deny CCWs however they choose.

Rather, Plaintiffs based their claims on how the City Defendants implemented the California licensing scheme according to its own municipal policies.

Plaintiffs plausibly pled that the City, the Board, and the Chief implemented a **municipal policy** of imposing a total ban on the issuance of licenses to carry handguns in public ("CCWs") which the state licensing allowed and then arrested, detained, and directly prosecuted or referred for prosecution persons merely for engaging in the constitutionally protected conduct of carrying a concealed handgun in public in violation of the municipal policy. City Defendants never challenged the plausibility of any of Plaintiffs allegations.

Therefore, Plaintiffs' claims must be analyzed under Supreme Court cases like *Heller, McDonald, and Bruen*, which invalidated total bans on the possession or carriage of handguns.

Plaintiffs' theory of municipal liability is that the City Defendants co-opted the California licensing scheme and made it their own. *E.g., Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 517 (9th Cir. 2018).

Plaintiffs' fundamental legal theory is that City Defendants imposed a total ban on the issuance of licenses for carrying a concealed handgun in public, and

then used the enforcement statutes to arrest people for exercising their Second Amendment rights to carry a handgun in public.

Plaintiffs cited several Ninth Circuit and out of Circuit cases which hold that when a municipality enforces a state statute or state statutory scheme which it is not mandatory to enforce, or when a municipality enforces a state statutory scheme in a way which is different from the terms of the state statutes, the municipality may be liable in section 1983 if its policies and implementations are themselves unconstitutional. *See e.g., Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 517 (9th Cir. 2018); *Evers v. County of Custer*, 745 F.2d 1196, 1203 (9th Cir. 11984)(finding the declaration of a public road by a county's governing body official county policy because the state's policy was discretionary); *Brewster v. City of L.A.*, 2019 U.S. Dist. LEXIS 225770, at *16-17, *21 n. 6 ((C.D. Cal. 2019). *See also Vives v. City of New York*, 524 F.3d 346, 351-353 (2d Cir. 2008) (distinguishing between municipal action pursuant to state laws mandating enforcement, to which *Monell* liability did not apply, and municipal action pursuant to state laws municipalities are "authorized, but not required, to enforce," to which *Monell* liability may apply); *Cooper v. Dillon*, 403 F.3d 1208 (11th Cir. 2005).

City Defendants suggest that *Sandoval* does not turn on the discretionary nature of the statute in that case as Plaintiffs contended in their Opening Brief. However, even if the City Defendants' analysis of the rationale in *Sandoval* is

3

different from how Plaintiffs read it, the City Defendants' construction of *Sandoval* is an independent, alternative basis of municipal liability under which City Defendants are liable under section 1983 for implementing and enforcing an unconstitutional municipal policy which violated Plaintiffs and class members' Second Amendment rights.

Finally, assuming *arguendo* that the California state cases City Defendants cite to had any relevance to this case, those cases are distinguishable at the end of the day because they sever the good clause and good moral character provisions of the California state licensing scheme and then apply the "reformed" statute to the challengers without grappling how they could retroactively apply the reformed statute to persons such as Plaintiffs who are objectively law abiding people without any prior convictions of any kind without offending Due Process given they were injured at the moment their Constitutional right to carry a handgun was "inhibited," that is no later than when the City Defendants enforced its municipal policy against them by arresting them. *Wilson v. Hawaii*, 220 L. Ed. 2d 266, 269 (2024) (Statement regarding denial of *certiorari*, Justice Thomas, joined by Justice Alito). "A constitutional violation accrues the moment the government undertakes an unconstitutional act." *Id.* at 268.

The California state cases, except for *In re D.L.*, 93 Cal.App.5th 893 (Cal. Ct. App. 2023) which notes that the challenger was a minor and a felon, and thus

4

disqualified from exercising Second Amendment rights, do not state whether the challengers in those cases would have otherwise complied with the "reformed" licensing scheme after the "good cause" and the "good moral character" provisions had been severed out.

The California approach of severing the offending parts of the statute and applying it retroactively requires a procedure for people to have an opportunity to show they could retroactively qualify for a CCW under the reformed licensing scheme to satisfy Due Process. [1]

For example, when the Supreme Court invalidated the registration and home carry provisions of the District of Columbia as total bans on the possession and use of handguns in the home the District of Columbia Court of Appeals (not the D.C. Circuit) developed a procedure for applying the invalidated regulations only to pending prosecutions of persons who were not felons (because the Court had observed that felon bans were presumptively Constitutional and the administrative aspects of the statute such as background checks did not offend the Constitution). *Plummer v. United States*, 983 A.2d 323, 342 (D.C. 2009)(developing "*Plummer*

---

[1] The Due process Clause of the Fourteenth Amendment and the other Constitutional procedural. Protections afforded criminal Defendants requires notice and an opportunity to be heard before being prosecuted for a criminal offense. Therefore, retroactive notice and a hearing is a required (but not necessarily a sufficient) Due Process right before being subjected to a retroactive application of a reformed licensing scheme.

hearings" to identify and insulate from prosecution people who would have qualified for registration certificates and licenses under a Constitutional registration licensing scheme).

Plaintiffs, by making this observation about retroactively applying a reformed statute, do not endorse either the California or the District of Columbia approach to retroactively applying a reformed statute. Plaintiffs' point is that under Due Process constraints, if California wished to retroactively apply the reformed licensing scheme to pending prosecutions, it would have to develop a procedure like the "*Plummer* hearings" for affected persons to retroactive comply with the reformed statute. Plaintiffs also observe that all Plaintiffs are objectively law-abiding persons without any convictions and Mr. Matthews had complied with the licensing process in Tennessee. Moreover, Mr. Hearns and Mr. Hunn had to comply with state and federal background checks to purchase their handguns. At the end of the day the State of California approved the return of their guns by the LAPD after charges were dismissed.

Moreover, the approach taken by some of the California courts that the enforcement provisions do not require a Constitutional underlying licensing scheme to satisfy the Second Amendment flies in the face of Supreme Court precedent and analogous Ninth Circuit precedent such as *Grossman*. *N.Y. State Rifle & Pistol Ass'n v. 11 Bruen*, 142 S. Ct. 2111, 2138 n.9, 213 L. Ed. 2d 387

6

(2022) (*quoting Shuttlesworth v. Birmingham*, 394 U.S. 147, 12 151 (1969));

*Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994); *Desert*

*Outdoor Advertising v. City of Moreno Valley*, 103 F.3d 814, 818 (9th Cir. 1996).

Recently, Justice Thomas (joined by Justice Alito) and Justice Gorsuch

writing in separate Statements rejected the State of Hawaii's attempt to deny that to

be Constitutional any enforcement provisions of the state concealed carry licensing

scheme required a licensing scheme that satisfied the Second Amendment. *Wilson*

*v. Hawaii*, 220 L. Ed. 2d 266, 269 (2024). "Had the Hawaii Supreme Court

followed the legislature's lead and tried to give effect to our Second Amendment

jurisprudence, it would have found the licensing regime at issue unconstitutional

and upheld the dismissal of Wilson's public-carry charges." *Wilson v. Hawaii*, 220

L. Ed. 2d at 269 (Thomas, J.); *Id.* at 270 (Gorsuch, J.) (the trouble with Hawaii's

attempt to analyze the enforcement provisions in isolation from the underlying

licensing scheme is that "the [enforcement] statutes under which he was charged

work hand-in-glove with the [underlying licensing scheme].").

In addition to his Second Amendment claim, Mr. Matthews states a

Fourteenth Amendment. The moving force behind Mr. Matthews' injuries from the

Fourteenth Amendment claim is the City Defendants' municipal policies, not the

California residency requirement, *Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 517

(9th Cir. 2018) ("The impoundment of plaintiffs' vehicles was thus not caused by

state law, but by the defendants' policies of impounding vehicles when the driver had never been issued a California driver's license."), because the City Defendants never issued CCWs to anyone. Recently a District Court in the Central District granted plaintiffs motion for a preliminary injunction prohibiting California from refusing to allow non-residents to apply for a CCW licenses within *California, Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't*, 2024 U.S. Dist. LEXIS 221863, *43-44, *61 (C.D. Cal. 2024), because the District Court held that "[t]he State has thus failed to demonstrate that it is likely that its residency requirement to apply for a CCW license is part of a historical tradition of this Nation." *Id.* at *52, *61. So the District Court held that the residency requirement violated the Second Amendment but it did not address the Fourteenth Amendment claim.

This ruling removes any redressability issues with Mr. Matthews' Second Amendment claim. At the very least the Court should remand Mr. Matthews's claims in light of the ruling in *California, Cal. Rifle & Pistol Ass'n v. L.A. Cnty. Sheriff's Dep't.*

### A. City Defendants misunderstand the District Court's opinion and why the District Court erred.

The District Court's fundamental error was that it did not evaluate Plaintiffs' claims under the test established in *Heller* and *Bruen*.

Instead, the District Court merely stated that people have no Constitutional right to carry a handgun in public without a license. This misses the mark. The

government has authority to establish a licensing scheme but only if the licensing scheme complies with the Second Amendment and only if it is not a pretext to ban handguns. "The Second Amendment guaranteed to 'all Americans' the right to bear commonly used arms in public subject to **certain reasonable, well-defined restrictions**." *N.Y. State Rifle & Pistol Ass'n v. Bruen*, 597 U.S. 1, 70 (citing *District of Columbia v. Heller*, 554 U.S 570, 581, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2010)) (emphasis added). "But it's just as true that state licensing regimes can sometimes be so restrictive that they violate the Second Amendment." *Bruen*, 597 U. S., at 38–39, n. 9 (Gorsuch, J).

The wrongdoer here is not the Plaintiffs and the putative class members but the City Defendants who violated their Second Amendment rights by imposing a total ban on the carriage of guns in public and by putting Plaintiffs to the Hobson's choice between forfeiting their Second Amendment rights and disregarding an unconstitutional licensing scheme. But the Supreme Court in *Shuttlesworth* and the Ninth Circuit in *Grossman* authorized Plaintiffs to disregard the unconstitutional licensing scheme. *N.Y. State Rifle & Pistol Ass'n v. 11 Bruen*, 142 S. Ct. at 2138 n.9 (*quoting Shuttlesworth v. Birmingham*, 394 U.S. 147, 12 151 (1969)); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994)(Plaintiff can sue municipality for arresting him pursuant to an unconstitutional parading without permit ordinance even though he did not apply for a license). *Grossman*

did not turn on any "punishment" as City Defendants contend, City Defendants

Answering Brief, ECF p. 24, because he was arrested but not sentenced or fined.

See also *Desert Outdoor Advertising v. City of Moreno Valley*, 103 F.3d 814, 818

(9th Cir. 1996)(Plaintiff could sue for enforcement of unconstitutional statute

against him even though he did not apply for a license).

City Defendants contend that, "Plaintiffs do not cite any case finding *Monell*

liability arising from a municipal policy combined with constitutional state laws in

this way." But Plaintiffs do – Sandoval where the County and the City altered a

state statute with their own definition of "drivers' license." *Sandoval*, 912 F.3d

509, 513 (Section 14602.6 does not define "driver's license."). Johnson v. Dekalb

County, 391 F.Supp.3d 1224 (N.D. Ga. 2019) contradicts the court's holding in

Sandoval that the municipal policy not the state statute was the moving force

behind plaintiffs' Constitutional injuries.

And allowing people to carry a handgun without a license is not the end of

the world. Twenty-nine (29) states currently allow "Constitutional carry," that is

carriage without a license. https://www.usconcealedcarry.com/resources/

terminology/types-of-concealed-carry-licensurepermitting-policies/unrestricted/

#:~:text=Listed%20below%20are%20the%2029%20states%20that,military)%20*

%20Idaho%20(PC%2D18)%20*%20Indiana%20(PC%2D18)

Section 25400(a)(1) and (a)(3) California Penal Code § 25850(a), are regulatory offenses. Both offenses are "wobbler" offenses, and, for law-abiding persons such as Named Plaintiffs, arrests for the offenses usually result in declinations to prosecute, or misdemeanors prosecuted by the City Attorney carrying a maximum of one year.[2]

Moreover, the mere fact that the City Defendants could have adopted and promulgated a Constitutional licensing scheme and a Constitutional gun control policy in some hypothetical counterfactual world does not affect Plaintiffs' claims because Plaintiffs suffered injury from the Second Amendment (and in Mr. Matthews' case the also the Fourteenth Amendment) at the moment their Constitutional right to carry a handgun was "inhibited," that is no later than when the City Defendants enforced their municipal policy against them by arresting them. *Wilson v. Hawaii*, 220 L. Ed. 2d 266, 269 (2024) (Statement regarding denial of *certiorari*, Justice Thomas, joined by Justice Alito). Judge Lambeth of the District of Columbia District Court rejected a similar argument in *Smith v. District of Columbia*, 568 F. Supp. 3d 55, 63 (D.D.C. 2021)("Put simply, the District reasons that because there is a counterfactual world where it had a constitutional

---

[2] A "wobbler" is a California offense which can be punished either as a felony or as a misdemeanor. *See e.g., United States v. Denton*, 611 F.3d 646, 651 (9th Cir. 2010). Under Circuit law, for an uncharged wobbler offense, no presumption applies as to whether the offense is punishable as a felony (more than one year's imprisonment) or a misdemeanor (less than one year's imprisonment). *Id.* 651-652.

gun control regime in place during the arrests that could criminalize plaintiffs' conduct, there was no constitutional violation.").

Moreover, any sort of retroactive application of a "reformed" municipal policy would require a *Plummer* analysis which excluded law-abiding people like Plaintiffs who would have qualified for CCWs under a Constitutional licensing scheme. *See Plummer*, 983 A.2d at 342 (developing "*Plummer* hearings" to identify and insulate from prosecution people who would have qualified for registration certificates and licenses under a Constitutional registration licensing scheme).

Finally, Plaintiffs did not have to apply for CCWs or challenge City Defendants' licensing scheme in order to have standing to bring their claims. Plaintiffs'/ Appellants' Opening Brief, ECF p. 46 *et seq. see also Wilson v. Hawaii*, 220 L. Ed. 2d 266, 270 (2024)) Statement of Justice Thomas, joined by Justice Alito. A defendant can always raise unconstitutionality as a defense "where a statute is invalid upon its face and an attempt is made to enforce its penalties in violation of constitutional right." *Wilson v. Hawaii*, 220 L. Ed. 2d 266, 268 (*quoting Smith v. Cahoon*, 283 U. S. 553, 562, 51 S. Ct. 582, 75 L. Ed. 1264 (1931). Even City Defendants concede this point. City Defendants' Answering Brief, ECF p. 20.

City Defendants insist that this Court analyze Plaintiffs' arrest for violating the "enforcement provisions" of the licensing scheme in isolation from City Defendants' unconstitutional municipal policy of instituting a "no issue" licensing scheme pursuant to which the Chief, acting pursuant to the City's and the Board's policies, never issued CCWs.

City Defendants misunderstand the relationship between section 25850 and the City Defendants' "no issue" licensing scheme.

> Although section 25850 in isolation appears broadly prohibitory, **it exists within a framework of numerous express exemptions, including a discretionary licensing regime under section 26150 et seq.** (See §§ 25900, 26000–26060, 26150, 26155, 26165, 26175, 26185; *D.L., supra*, 93 Cal.App.5th at p. 154, fn. 4.) Specifically, a person licensed under section 26150 to carry a concealed handgun is exempt from section 25850's prohibition on carrying loaded firearms in public. (§ 26010.)
>
> *In re T.F.-G.*, 94 Cal. App. 5th 893, 908 (Cal. Ct. App. 2023) (emphasis added).

"Although framed as a default prohibition, section 25850 is in effect the **enforcement mechanism of a regulatory regime** that grants licenses to those who may lawfully carry firearms and withholds licenses from those who may not." *In re T.F.-G.*, 94 Cal. App. 5th 893, 915 (emphasis added).

As Justice Thomas recently said of the relationship between Hawaii's enforcement mechanism and Hawaii's licensing scheme, "The trouble with this line of reasoning … is that the [enforcement statutes] under which [Plaintiffs were]

charged work hand-in-glove with the [licensing scheme]." *Wilson v. Hawaii*, 220

L. Ed. 2d 266, 270 (2024)) Statement of Justice Thomas, joined by Justice Alito.

Again, to paraphrase Justice Thomas, the charges against Plaintiffs under the

enforcement statutes are constitutionally problematic because the exceptions in

City Defendants' licensing scheme are not broad enough to accommodate the

demands of the Second Amendment. *Id.*

     City Defendants' myopic focus on the enforcement provisions while

ignoring their municipal policy of never issuing CCWs causes City Defendants to

miss the mark. The enforcement provisions and the City Defendants' licensing

scheme work hand-in-glove and must be analyzed as a whole. The California State

appellate decisions which state that a challenge to an enforcement provision do not

implicate the licensing scheme miss the mark. And the California State appellate

decisions which state that the enforcement provisions do not require a licensing

scheme which satisfies the Second Amendment proceed from the obviously flawed

premise that there is no Second Amendment right to carry a concealed handgun in

public when the state outlaws open carry. The Supreme Court in *Bruen* held the

opposite. In a licensing regime such as the City Defendants' where open carry is

prohibited, concealed carry is a right protected by the Second Amendment as

applied to the States through the Fourteenth Amendment. *Bruen*, 597 U.S. at 10

(Second Amendment through the Fourteenth Amendment protect an individual's

right to carry a handgun for self-defense outside the home). The New York licensing scheme at issue in *Bruen* allowed only concealed carry but the Court still struck down as unconstitutional a regulation which burdened only concealed carry of handguns. *Bruen*, 597 U.S. at 12.

The State of New York banned all open carry and allowed concealed carry only with a license. The Court held that the right to concealed carry with a license assumes Constitutional stature when the state bans open carry.

To the District of Columbia Court of Appeals it seemed so obvious that a challenge to the enforcement statute of District's licensing scheme was in fact a challenge to the underlying licensing scheme that the court construed a defendant's challenge to the enforcement statute as a challenge to the underlying licensing scheme. *Chew v. United States,* 314 A.3d 80, 85, n. 2 (D.C. 2024("Although Mr. Chew primarily cites to D.C. Code § 22-4504(a), which prohibits a person from carrying a firearm without a license, we understand his argument to be that the underlying licensing scheme, codified at D.C. Code § 22-4506(a), is unconstitutional.").

Given that City Defendants did not challenge Plaintiffs' allegations that they are challenging the City Defendants' municipal policy of never issuing CCWs it is disingenuous for the City Defendants' to pretend Plaintiffs are challenging the enforcement provisions in isolation. Plaintiffs never concede in their complaint of

in their papers that they are challenging the enforcement provisions in isolation.
City Defendants' Answering Brief at 23-24.

At least two of the California Court of Appeal cases addressing similar
challenges to the application the enforcement provisions when the licensing
scheme was unconstitutional have stated that "defendants' arguments at least as to
section 25400 were based on the flawed premise that section 25400's ban of
concealed firearms was unconstitutional if it was not accompanied by a valid
licensing scheme." *People v. Mosqueda*, 97 Cal. App. 5th 399, 406 (Cal. Ct. App.
2023); *People v. Miller*, 94 Cal. App. 5th 935, 946 (Cal. Ct. App. 2023).

This statement is wrong under Second Amendment law as the cases
discussed below show. First, the statements in *Mosqueda* and *Miller* that an
unconstitutional licensing scheme does not render the enforcement statutes of
§§25400 and 25850 unconstitutional are based on the faulty premise in those cases
that people do not have a Constitutional right to concealed carry where the State
has banned open carry. In a licensing regime such as the City Defendants' where
open carry is prohibited, concealed carry is a right protected by the Second
Amendment as applied to the States through the Fourteenth Amendment. Bruen,
597 U.S. at 10 (Second Amendment through the Fourteenth Amendment protect an
individual's right to carry a handgun for self-defense outside the home). The New
York licensing scheme at issue in Bruen allowed only concealed carry but the

16

Court still struck down as unconstitutional a regulation which burdened only concealed carry of handguns. *Bruen*, 597 U.S. at 12.

The statements in *Mosqueda* and *Miller* do not establish a binding state rule on this court because the decisions rest on an incorrect Second Amendment premise which contradicts binding Supreme Court precedent, the decisions are intermediate appellate decisions (not decisions of the State's highest court), and they do not establish a uniform rule because not all California Court of Appeal cases agree. For example, *In Re T.F.-G.* accepts the defendant's premise that a state may enforce a licensing regime by imposing penalties for noncompliance only if the licensing scheme is Constitutional and the person is otherwise qualified to obtain a license under a Constitutional licensing scheme. *In re T.F.-G.,* 94 Cal. App. 5th 893, 915, 916.

*Miller* and *Mosqueda* do not accept a Second Amendment right to concealed carry even when "open carry" is banned. *People v. Mosqueda*, 97 Cal. App. 5th 399, 406. See *Bruen*, 597 U.S. at 10 (Second Amendment through the Fourteenth Amendment protect an individual's right to carry a handgun for self-defense outside the home). The New York licensing scheme at issue in Bruen allowed only concealed carry but the Court still struck down as unconstitutional a regulation which burdened only concealed carry of handguns. *Bruen*, 597 U.S. at 12.

17

*Wilson v. Hawaii*, 220 L. Ed. 2d 266, 270 (Hawaii's enforcement statutes work "hand-in-glove" with the underlying licensing scheme); *Chew v. United States,* 314 A.3d 80, 85, n. 2 (D.C. 2024(construing challenge to enforcement scheme as a challenge to the underlying licensing scheme).

The California Appellate Courts know that the enforcement provisions and the underlying licensing scheme are joined at the hip and cannot be untangled:

> Miller's arguments in the trial court **implicate an exception to criminal liability for persons licensed to carry a concealed firearm under California law**: "Section 25400 **does not apply to, or affect**, the carrying of a pistol, revolver, or other firearm capable of being concealed upon the person by a person who is authorized to carry that weapon in a concealed manner pursuant to Chapter 4 (commencing with Section 26150)." (§ 25655.)

*People v. Miller*, 94 Cal. App. 5th 935, 939 (emphasis added).

> Although section 25850 in isolation appears broadly prohibitory, **it exists within a framework of numerous express exemptions**, including a discretionary licensing regime under section 26150 et seq. (See §§ 25900, 26000–26060, 26150, 26155, 26165, 26175, 26185; D.L., supra, 93 Cal.App.5th at p. 154, fn. 4.) Specifically, a person licensed under section 26150 to carry a concealed handgun is exempt from section 25850's prohibition on carrying loaded firearms in public. (§ 26010.)

*In re T.F.-G.*, 94 Cal. App. 5th 893, 908 (emphasis added).

Let no mid-level California appellate court put asunder what the California statutory scheme has joined!

The statement in *Mosqueda* and *Miller* that "*Bruen* recognized that historically, if a state banned both open and concealed carry, it was the open carry

prohibition that conflicted with the constitution and was void," *People v. Mosqueda*, 97 Cal. App. 5th 399, 406 (quoting *Miller*, 94 Cal.App.5th 935, 943, is obviously false. If the Supreme Court believed that it would not have invalidated the States concealed carry licensing scheme.  The Supreme Court in *Heller* and *McDonald* and *Bruen* has treated enforcement statutes which criminalize possession of a handgun linked to unconstitutional licensing schemes as joined at the hip. If an enforcement statute did not require a Constitutional underlying licensing scheme the Ct would not have invalidated those schemes.

 And the *Mosqueda* and *Miller* courts know that it is false or they would not have proceeded to reform the State's underlying licensing scheme by severing the "good cause" and "good moral character" provisions before applying the reformed statutes to the Defendants in those cases. *Mosqueda*, 97 Cal. App. 5th 399, 403;

These cases are inapplicable to Plaintiffs' claims because Plaintiffs base their claims on the City Defendants' unconstitutional municipal policy of never issuing CCWs which resulted in a total ban on the carriage of handguns in public. The *Mosqueda* and *Miller*.

Moreover, the Ninth Circuit has rejected this approach in *Grossman* holding that the municipal defendant violated Plaintiff's substantive First Amendment rights by arresting him for parading without a permit when the permit provision was unconstitutional.

19

*Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001) and *Yang v. Boudreaux*, No. 1:21-CV-00148-BAM, 2021 WL 4066460, at *6 (E.D. Cal. Sept. 7, 2021), are inapposite and wrong as the Ninth Circuit explained in Grossman. When a municipality enforces its unconstitutional municipal policy through an arrest, the arresting officer may have qualified immunity from a Fourth Amendment claim but the municipality is liable for violating the substantive Constitutional right, which was the First Amendment in *Grossman* and the Second Amendment here. *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994) ("Where, as here, a local police officer enforces an unconstitutional ordinance, relief lies against the city.").

### B. The City Defendants' gun control regime was an unconstitutional municipal policy.

The City Defendants' construction of *Sandoval* supports Plaintiffs' *Monell* claim because it is an alternative, independent basis for treating the City Defendants' gun control regime as an unconstitutional municipal policy. City Defendants' Answering Brief at 27-29.

The City Defendants contend that the real reason the Ninth Circuit imposed Section 1983 municipal liability on the county is that the County interpreted and implemented a state statutory provision about drivers' licenses differently from how the text of the statute read. The text of the state provision implicitly recognized driver's licenses from foreign jurisdictions by not defining the term

20

"driver's license," City Defendants' Answering Brief at 29; *Sandoval*, 912 F.3d 509, 513 (Section 14602.6 does not define "driver's license.") but the County construction of the statutory provision did not. *Id.*

The City Defendants contend that the County "*misapplied*" the state provision. City Defendants' Answering Brief at 29 (emphasis added). But the court held that, **"[f]ollowing a similar practice of local officials throughout the state**, the Sonoma County Sherriff's Office and the City of Santa Rosa interpreted section 14602.6 as applying to individuals who had never been issued a California driver's license." *Sandoval*, 912 F.3d 509, 513, 514 (emphasis added). The rationale for the holding is that the County and the City employed their own construction of the state statute thereby making the statute their own and converting it from a state policy to a municipal policy. Therefore, the County policy rather than the state policy caused the Plaintiffs' injuries. *Sandoval*, 912 F.3d 509, 517 ("The impoundment of plaintiffs' vehicles was thus not caused by state law, but by the defendants' policies of impounding vehicles when the driver had never been issued a California driver's license."). Likewise, here the City Defendants' municipal policy not the State licensing scheme was the cause and the moving force behind the Plaintiffs' and putative class members' arrests, detentions, and prosecutions. *Id.*

### C. The City Defendants' and the Chief's CCW polices amounted to municipal policies under *Monell*, and the City's municipal policies were the moving force for Plaintiffs' and putative class members' Constitutional injuries.

The City Defendants' and the chief's CCW polices amounted to municipal policies under *Monell*. The City's municipal policies of never issuing CCWs and imposing a total ban on the carriage of handguns outside the home were the moving force for Plaintiffs' and putative class members' Constitutional injuries.

In the analysis of Sandoval above and in Plaintiffs' Opening Brief, ECF p. 32, Plaintiffs explain that the City Defendants' and the chief's CCW polices amounted to municipal policies under *Monell*. The enforcement of the enforcement statutes against Plaintiffs based on the City Defendants' unconstitutional licensing scheme and "no issue" CCW policy was thus not caused by state law, but by the defendants' policies. *Sandoval*, 912 F.3d at 517 ("The impoundment of plaintiffs' vehicles was thus not caused by state law, but by the defendants' policies of impounding vehicles when the driver had never been issued a California driver's license.").

Because City Defendants' municipal policies were themselves unconstitutional Plaintiffs do not have to establish "deliberate indifference" as an element of their Section 1983 claims. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994).

There is no mention of "deliberate indifference" in *Monell* because, as in the this case, the basis of the municipality's liability is enforcement of its unconstitutional municipal policy. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). The district court also erred when it stated that to impose *Monell* liability under § 1983 for a violation of constitutional rights, a plaintiff must show that the municipal policy amounted to deliberate indifference to the plaintiff's constitutional rights. ER-8. That rule only applies to indirect, failure to act *Monell* claims. *Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016) (distinguishing "direct" from "indirect" *Monell* claims, which allege that a municipality violated the constitution through its omissions, and which require a showing of deliberate indifference); *Mann v. Cty. of San Diego*, 907 F.3d 1154, 1164 (9th Cir. 2018); *Lowry v. City of San Diego*, 858 F.3d 1248, 1267 (9th Cir. 2017)(Thomas J., dissenting).

Plaintiffs' claim is the archetypal quasi-legislative *Monell* claim because it involved a written formal policy, which is itself unconstitutional); *Grossman v. City of Portland*, 33 F.3d 1200, 1209 n.18 (9th Cir. 1994) ("Where, as here, a local police officer enforces an unconstitutional ordinance, relief lies against the city.") (*citing Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978)).

Plaintiffs' theory fits under Grossman because a municipal policy is the same as an ordinance under *Monell*.

Two Justices of the Supreme Court (joined by a third) rejected the rationale California appellate courts. But the cases are also distinguishable.

First, the cases use state standing doctrines and the plain error doctrine to evade review of the issues and restrict the Defendants challenges to facial challenges of the licensing scheme without considering any factual issues.

The same rationale applies here. The State licensing scheme does not mandate a total ban on the issuance of CCWs and thus a total ban on the carriage of handguns in public. The State statute did not define the term "good cause" or the rest of the statutory terms. But the City Defendants interpreted and implement the state licensing scheme to impose a total ban on the issuance of CCWs and thus a total ban on the carriage of handguns in public.

So whether the City Defendants relied on the discretion inherent in the State licensing scheme or "following its own policy" simply interpreted the terms in the licensing scheme differently from the state, the City Defendants interpreted and implement the state licensing scheme to impose a total ban on the issuance of CCWs and thus a total ban on the carriage of handguns in public.

In *Chew* the District of Columbia Court of Appeals (not the D.C. Circuit) reviewed a defendant's appeal from his conviction under the District's CPWL

24

statute. Mr. Chew argued that the District's licensing scheme for the public carry of firearms in D.C. Code § 22-4506(a) facially violates the Second Amendment, and so his conviction for violating the enforcement statute was invalid. *Chew v. United States*, 314 A.3d 80, 84.

The Court of Appeals construed defendant's challenge to the CPWL statute as a challenge to the licensing statute. 314 A.3d at 85, n. 2. The Court of Appeals also accepted for its analysis the premise of defendant Chew's argument that an unconstitutional licensing scheme would violate any conviction under the enforcement statute, the CPWL statute.

> **D.  Mr. Matthews' claims are not time-barred**.

Mr. Matthews' claims are not time-barred because of the continuing tort doctrine because the criminal prosecution stemming from his arrest was not dismissed until 12/16/2021, which is within the two-year period from the time of his arrest, 9/27/2019, and so "at least one act falls within the time period." See Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 122 19 (2002)(hostile work environment)); *see e.g., United States v. Blizzard*, 27 F.3d 100, 20 102 (4th Cir. 1994)(certain crimes such as receiving or concealing stolen property are continuing crimes, whose statutes of limitations do not commence until wrongful possession or concealment ends).

## CONCLUSION

This Court should find that the City Defendants' policies, and the Chief's "no-issue" CCW policies were unconstitutional under the Second Amendment and the Fourteenth Amendment, and the City Defendants and the Chief acting pursuant to the City Defendants' policies, violated the Named Plaintiffs' Second Amendment rights and Mr. Matthews's Fourteenth Amendment rights by enforcing their policies against Named Plaintiffs and the putative class members.

Dated: January 13, 2025      Respectfully submitted,

*/s/ William Charles Cole Claiborne III*
WILLIAM CHARLES COLE CLAIBORNE III
Attorney at Law
ClaiborneLaw
717 D Street N.W., Ste 300
Washington, DC 20004-2815
Phone 202/824-0700
Email claibornelaw@gmail.com

*Attorney for Appellants and the putative*
*class members*

26

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s)** | 23-3874

I am the attorney or self-represented party.

**This brief contains** | 5,814 | **words,** including | 0 | words

manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

🔘 complies with the word limit of Cir. R. 32-1.

◯ is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

◯ is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

◯ is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

◯ complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

☐ it is a joint brief submitted by separately represented parties.
☐ a party or parties are filing a single brief in response to multiple briefs.
☐ a party or parties are filing a single brief in response to a longer joint brief.

◯ complies with the length limit designated by court order dated [          ].

◯ is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** | /s/ William Charles Cole Claiborne III | **Date** | January 13, 2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at* forms@ca9.uscourts.gov

**Form 8**          *Rev. 12/01/22*