William Charles Cole Claiborne III
717 D Street N.W., Ste 300
Washington, DC 20004-2815
Phone 202/824-0700
Email claibornelaw@gmail.com

May 21, 2025

Ms. Molly C. Dwyer, Clerk
U.S. Court of Appeals for the Ninth Circuit
95 7th Street San Francisco, CA 94103

Re: *Matthews, et al. v. City of Los Angeles, et al.* 23-3874, FRAPm28(j)
 Supplemental Authority

Dear Ms. Dwyer:

Pursuant to FRAP 28(j) I write to inform this Court of the Supreme Judicial Court of Massachusetts's decision in *Commonwealth v. Donnell*, 495 Mass. 471, 252 N.E.3d 475, 477-78 (Mass. 2025).

The *Donnell* Court struck down the pre-*Bruen* version of a Massachusetts statute criminalizing possession of a firearm by a non-resident of the Commonwealth because the non-resident licensing scheme violated the Second Amendment because it vested too much discretion in the licensing officer. *Commonwealth v. Donnell*, **495 Mass. 471**, 252 N.E.3d 475, 477-78 (Mass. 2025). This opinion strongly supports Plaintiffs' position.

The *Donnell* Court concluded that the constitutionality of the then-effective statutory scheme under which a nonresident of the Commonwealth might be charged with unlawful possession of a firearm absent a temporary license depended on the constitutionally of the licensing scheme. *Donnell*, 495 Mass. at 473, 481. The *Donnell* Court concluded that because the licensing scheme was unconstitutional, any prosecution or conviction based on a law criminalizing possession of a firearm violated the Second Amendment if the licensing scheme itself were unconstitutional. *Id.*

The Court in *Donnell* evaluated the pre-*Bruen* version of the Commonwealth statutory scheme and licensing regime. *Donnell*, 495 Mass. at 473. The Court

1

upheld the updated (post-*Bruen*) version of the licensing law enacted on August 10, 2022, in a different case decided the same day. *See Commonwealth v. Marquis*, 495 Mass. 434, 447 (2025) (explaining distinction between "may issue" and "shall issue" regimes).

  The rationale of this decision is in direct contrast to prior California intermediate state court decisions holding that the constitutionality of California's concealed carry prohibition is not dependent upon the constitutionality of its licensing statutes. *See e.g., People v. Miller*, 94 Cal.App.5th 935, 945 (Cal. Ct. App. 2023). Respectfully submitted,


/s/ William Claiborne
WILLIAM CLAIBORNE

717 D Street, N.W
Suite 300
Washington, DC 20006
Phone 202/824-0700
Email claibornelaw@gmail.com

## CERTIFICATE OF SERVICE

I served the foregoing by electronically filing it with the Court's CM/ECF system which generated a Notice of Filing and effects service upon counsel for all parties in the case. I certify that this supplement has 282 words as calculated by Microsoft Office 365. I declare under penalty of perjury that the foregoing is true and correct.

May 21, 2025

/s/William Claiborne
William Claiborne

 Neutral
As of: March 14, 2025 1:19 AM Z

# Commonwealth v. Donnell

Supreme Judicial Court of Massachusetts

September 9, 2024, Argued; March 11, 2025, Decided

SJC-13561.

**Reporter**
2025 Mass. LEXIS 106 *

COMMONWEALTH vs. DEAN F. DONNELL, JR.

**Prior History:** [*1] Middlesex. COMPLAINT received and sworn to in the Lowell Division of the District Court Department on July 25, 2022.

A motion to dismiss was heard by *John F. Coffey*, J., and a motion for reconsideration was considered by him.

The Supreme Judicial Court granted an application for direct appellate review.

Commonwealth v. Donnell, 2023 Mass. Super. LEXIS 666 (Mass. Super. Ct., Aug. 3, 2023)

## Core Terms

licensing, firearm, nonresident, regulation, renewal, state police, unlawful possession, self-defense, terms and conditions, deem proper, right to bear arms, time of offense, discretionary, restrictions, temporary, sever

**Counsel:** *Ryan J. Rall*, Assistant District Attorney, for the **Commonwealth**.

*Patrick Levin*, Committee for Public Counsel Services, for the defendant.

The following submitted briefs for amici curiae:

*Nicholas M. Berg*, of Illinois, *Jason P. Roskom, Thanithia Billings, & Katherine D. Kearns* for Giffords Law Center to Prevent Gun Violence & another.

*Jason Gerhard*, pro se.

*C.D. Michel & Konstadinos T. Moros*, of California, *& Jason A. Guida* for California Rifle & Pistol Association, Incorporated, & others.

*Erin M. Erhardt*, of Colorado, *Joseph G.S. Greenlee*, of Idaho, *Adam Kraut*, of Pennsylvania, *& Edward F. George, Jr.*, for National Rifle Association of America & another.

*John Parker Sweeney*, of New York, *James W. Porter, III, & William Chadwick Lamar, Jr.*, of Alabama, *James M. Campbell, & Christopher R. Howe* for Gun Owners' Action League, Inc.

*Jay Edward [*2] Simkin*, pro se.

*Andrea Joy Campbell*, Attorney General, *Carlos Cousins, Grace Gohlke, & Nicole Nixon*, Assistant Attorneys General, for the Attorney General.

*John M. Formella*, New Hampshire Attorney General, *Anthony J. Galdieri*, New Hampshire Solicitor General, *& Brandon F. Chase*, Assistant New Hampshire Attorney General, for the State of New Hampshire.

*Joshua M. Daniels & Lisa J. Steele* for Massachusetts Association of Criminal Defense Lawyers.

*James Ostrowski*, of New York, *& Dan Hynes* for New Hampshire Firearms Coalition, Inc., & another.

*Clark M. Neily, III, & Christopher D. Barnewolt*, of the District of Columbia, *& Kevin J. Powers* for Cato Institute.

**Judges:** Present: BUDD, C.J., GAZIANO, KAFKER, WENDLANDT, GEORGES, & WOLOHOJIAN, JJ.

**Opinion by:** GAZIANO

**Opinion**

---

**GAZIANO**, J. The defendant is a New Hampshire resident. On November 8, 2021, he was arrested in Massachusetts for operating a motor vehicle while under the influence of alcohol following a collision on Interstate 495 in Lowell. During a search of the vehicle's passenger compartment, a State police trooper found a handgun and ammunition stored inside a duffel bag. Lacking a Massachusetts nonresident firearm license, the defendant was charged with unlawful possession [*3] of a firearm in violation of G. L. c. 269, § 10 (a) (§ 10 [a]).

In August 2022, the defendant moved to dismiss the unlawful possession charge arguing, inter alia, that the nonresident licensing scheme violated his rights under the Second Amendment to the United States Constitution. In his motion, the defendant relied on the United States Supreme Court's then-recently decided New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1, 142 S. Ct. 2111, 213 L. Ed. 2d 387 (2022) (Bruen). The Bruen decision called into question the discretionary "may issue" language that appeared in the Commonwealth's then-existing nonresident firearm licensing scheme. G. L. c. 140, § 131F (§ 131F), as amended through St. 2014, c. 284, §§ 60, 63.

A judge in the District Court allowed the defendant's motion, concluding that a law-abiding citizen exercising his constitutional right to carry a firearm for self-defense cannot be charged with unlawful possession of a firearm while traveling through the Commonwealth. In allowing the motion, the judge found that § 10 (a) was unconstitutional as applied to the defendant. After the Commonwealth appealed, we granted its application for direct appellate review.

In this case, along with Commonwealth v. Marquis, 495 Mass. 434 (2025), also decided today, we consider the constitutionality of the statutory scheme under which a nonresident of the Commonwealth may be charged with unlawful possession of a firearm absent a temporary license. See G. L. c. 269, § 10 (a); G. L. c. 140, § 131F. Our opinion in [*4] Marquis examines the updated version of the licensing law enacted on August 10, 2022. See St. 2022, c. 175, §§ 17B-22 (effective Aug. 10, 2022). Here, we examine the prior "may issue" version of § 131F in effect at the time of the defendant's arrest. For the reasons discussed below, we hold that the Commonwealth's prior nonresident licensing scheme violates the Second Amendment under the Bruen decision. Accordingly, we affirm the dismissal of the § 10 (a) charge against the defendant.[1]

---

[1] We acknowledge the amicus briefs submitted in support of the defendant by New Hampshire State Representative Jason Gerhard; the National Rifle Association of America and Second Amendment Foundation; Gun Owners' Action League, Inc.; Jay Edward Simkin; the State

*Background*. 1. *Facts*. We recite the relevant facts from the application for criminal complaint. See *Commonwealth v. Ilya I., 470 Mass. 625, 626, 24 N.E.3d 1048 (2015)*. At approximately 2:15 A.M. on November 8, 2021, two State police troopers, Colin DeMagistris and Byron Ramirez, responded to a report of a single-vehicle collision on Interstate 495 North near the Lowell Connector. Upon their arrival, the troopers encountered the defendant sitting on the guardrail next to a white Ford Explorer. After speaking with the defendant, the troopers noticed a strong smell of alcohol on his person. The defendant agreed to perform a series of roadside field sobriety tests at the request of the troopers. Throughout these tests, the defendant displayed signs of intoxication. The troopers concluded that the defendant was under the influence of alcohol, **[*5]** placed him under arrest, and escorted him to the back of the troopers' cruiser.

Once the defendant was secured in the back of the cruiser, DeMagistris conducted an inventory search of the Explorer. A third State police trooper, Christopher Hardy, arrived on scene and assisted with the search. The troopers found several empty beer cans and liquor bottles, along with two twelve-gauge shotgun slugs in the cabin of the car. Inside of a duffel bag in the back of the car, Hardy found a black .40 caliber Smith and Wesson pistol with a single round in the magazine. Along with the firearm, the duffel bag contained a fifteen-round magazine, a twelve-round magazine, and a ten-round magazine, all of which were empty.

The defendant was transported to the State police barracks in Concord. After an observation period, the troopers administered a breath test to the defendant. The breath test result showed a blood alcohol content of 0.083 percent.

2. *Procedural history*. On August 16, 2022, the defendant was arraigned in the District Court on a complaint charging him with unlawful possession of a firearm in violation of *§ 10 (a)*.[2] That same day, the defendant filed a motion to dismiss, asserting that the complaint **[*6]** lacked probable cause and that the United States Supreme Court's decision

---

of New Hampshire; the Massachusetts Association of Criminal Defense Lawyers; New Hampshire Firearms Coalition, Inc., and New Hampshire State Representative J.R. Hoell; the Cato Institute; and California Rifle & Pistol Association, Incorporated, *Second Amendment* Law Center, Inc., Gun Owners of America, Inc., Gun Owners of California, Inc., Gun Owners Foundation, Operation Blazing Sword-Pink Pistols, Second Amendment Defense and Education Coalition, Ltd., and Federal Firearms Licensees of Illinois, Inc. We further acknowledge the amicus briefs submitted in support of the **Commonwealth** by the Giffords Law Center to Prevent Gun Violence and the Brady Center to Prevent Gun Violence; and the Attorney General.

[2] Also in connection with the incident on Interstate 495, the defendant had been arraigned in November 2021 on an earlier criminal complaint charging him with five other firearms-related offenses: possession of a firearm without a firearm identification (FID) card, in violation of *G. L. c. 269, § 10 (h)*; possession of ammunition without an FID card, in violation of *G. L. c. 269, § 10 (h) (1)*; unlawful possession of a large capacity feeding device, in violation of *G. L. c. 269, § 10 (m)*; improper storage of a firearm, in violation of *G. L. c. 140, § 131L (a)*, *(b)*; and carrying a firearm while intoxicated, in violation of *G. L. c. 269, § 10H*. The defendant was also charged in that same initial complaint with operating a motor vehicle while under the influence of intoxicating liquor, in violation of *G. L. c. 90, § 24 (1) (a) (1)*. In December 2021, the **Commonwealth** entered a nolle prosequi on the *§ 10 (m)* charge. The District Court dismissed the other firearms-related charges, the defendant was convicted of operating a motor vehicle while under the influence of intoxicating liquor after a jury trial, and he filed a notice of appeal. The instant appeal comes from the subsequent complaint, alleging a violation of *§ 10 (a)* only, and neither the dismissal of the other charges nor the defendant's conviction is before us.

in *Bruen* rendered *§ 10 (a)* unconstitutional.³ At a hearing on the defendant's motion in October 2022, the judge rejected the defendant's probable cause argument but requested further briefing on the *Bruen* issue. After the parties filed additional briefing, a nonevidentiary hearing was held in March 2023.

On August 3, 2023, the judge issued a written decision allowing the defendant's motion to dismiss. The judge concluded that the **Commonwealth** had failed to meet its burden, at the second step of the *Bruen* analysis, of showing that *§ 10 (a)* "is consistent with this Nation's historical tradition of firearm regulation." *Bruen, 597 U.S. at 17*. Apart from applying the two-part *Bruen* test, the judge reasoned that a nonresident cannot, consistent with the *Second Amendment*, be made a felon by exercising his constitutional right while traveling across State lines. Thus, the judge concluded that the statute was "unconstitutional as applied to this particularly situated defendant." After the **Commonwealth** timely appealed from the judge's rulings, we granted the **Commonwealth**'s request for direct appellate review in February 2024.

*Discussion*. The issue presented in this case is whether the **Commonwealth**'s **[*7]** "may issue" nonresident firearm licensing scheme in force at the time the defendant committed the unlawful possession offense violates the *Second Amendment*.⁴ On appeal, the **Commonwealth** argues that *Bruen* does not preclude it from imposing a licensing requirement on nonresidents. Certainly, the **Commonwealth** has the power to enforce firearm restrictions within its own borders that are consistent with the United States Constitution. See *Marquis, 495 Mass. at ___*. In this case, however, the statutory scheme under which the defendant was charged fails to pass the constitutional test as laid out in *Bruen, 597 U.S. at 17*.

Our discussion begins with a brief overview of the *Second Amendment* and the Supreme Court's decisions in *District of Columbia v. Heller, 554 U.S. 570, 128 S. Ct. 2783, 171 L. Ed. 2d 637 (2008)*; *McDonald v. Chicago, 561 U.S. 742, 130 S. Ct. 3020, 177 L. Ed. 2d 894 (2010)*; and *Bruen, 597 U.S. 1*. Then, we examine the language of the pre-amendment version of *§ 131F* and the constitutionality of the **Commonwealth**'s nonresident firearm licensing scheme as it existed at the time of the offense. Finally, we consider whether the impermissible portions of *§ 131F* may be severed from the remainder of the law.

---

³ Because we conclude that the version of *§ 131F* applicable to the defendant was unconstitutional under the *Second Amendment*, we need not reach the defendant's arguments that the application for criminal complaint failed to establish probable cause with respect to the required elements of *§ 10 (a)*. Further, because we affirm the dismissal of the complaint on *Second Amendment* grounds, we do not reach the defendant's other constitutional arguments, including his contention that his constitutional rights to interstate travel and to equal protection were violated.

⁴ Because the defendant never applied for a firearm license, the defendant does not have standing to bring an as-applied challenge. See *Marquis, 495 Mass. at ___*. Accordingly, we only consider the defendant's facial challenges to the licensing scheme.

1. Second Amendment jurisprudence. The Second Amendment to the United States Constitution provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." The contemporary interpretation of that language and the right it establishes **[*8]** began with Heller, 554 U.S. 570. In Heller, the Supreme Court held that the Second Amendment protected a person's right to bear arms for self-defense, irrespective of his service in a militia. Id. at 580-581 ("Reading the Second Amendment as protecting only the right to 'keep and bear Arms' in an organized militia therefore fits poorly with the operative clause's description of the holder of that right as 'the people'"). Heller concerned challenges to laws in the District of Columbia that required, among other restrictions, that firearms kept in the home be disassembled and unloaded. Id. at 575. The Court employed a historical analysis of the Second Amendment to conclude that the individual right to bear arms for self-defense extends to the home, where "the need for defense of self, family, and property is most acute." Id. at 628. The laws at issue were accordingly struck down as inconsistent with the Second Amendment. Id. at 636. The Heller Court also suggested that, at some point in the future, they would "expound upon the historical justifications for the exceptions we have mentioned if and when those exceptions come before us." Id. at 635.

Two years later, in McDonald, 561 U.S. 742, the Court considered whether the Second Amendment right to bear arms, as interpreted in Heller, applied to the States through the due process clause of the Fourteenth Amendment to the United States Constitution. A plurality concluded that it did, declaring that **[*9]** the "Second Amendment right is fully applicable to the States." Id. at 750. The McDonald Court further emphasized that self-defense was the "central component" of the Second Amendment right to bear arms. Id. at 787, quoting Heller, 554 U.S. at 599.

In November 2021, when the defendant in this case was arrested, Heller and McDonald were the controlling precedent under which we approached the Second Amendment and interpreted Massachusetts firearm restrictions. See **Commonwealth v. Harris, 481 Mass. 767, 773, 119 N.E.3d 1158 (2019)** (rejecting facial challenge under Second Amendment to § 10 [a]); **Commonwealth v. Cassidy, 479 Mass. 527, 539-540, 96 N.E.3d 691**, cert. denied, 586 U.S. 876 (2018) (rejecting Second Amendment challenge to, inter alia, assault weapon statute, G. L. c. 140, § 131M); **Commonwealth v. Johnson, 461 Mass. 44, 57-58, 958 N.E.2d 25 (2011)** (upholding firearm licensing requirements under Heller and McDonald).

Then, in June 2022, the Supreme Court decided Bruen, approximately one month before the **Commonwealth** filed the instant complaint charging the defendant with unlawful possession of a firearm. In Bruen, 597 U.S. at 70-71, the Court struck down the State of New York's firearm licensing scheme requiring applicants to show "proper cause" before they could be issued a permit to carry a firearm for self-defense purposes. The "proper

cause" standard had been interpreted by New York courts to require the applicant to "demonstrate a special need for self-protection distinguishable from that of the general community" (citation omitted). *Id. at 12*. The Court noted that a licensing official's discretion **[*10]** to deny a license was bounded only by a loose requirement that the decision not be "arbitrary and capricious" (citation omitted). *Id. at 13*.

Expanding on the historical analysis from *Heller* and *McDonald*, the Court held that the *Second Amendment* right to bear arms for self-defense extends outside the home. *Bruen, 597 U.S. at 32-33*. The Court further explained that any restriction on that right will be upheld only if "the government … affirmatively prove[s] that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." *Id. at 19*. The Court examined the history of American firearm regulations offered in support of New York's licensing scheme and found no historical analogue. *Id. at 70-71*. Accordingly, the licensing scheme was struck down as inconsistent with the *Second Amendment*. *Id.*

In rejecting the "proper cause" standard, the Supreme Court labeled New York's licensing scheme a "may issue" law "under which authorities have discretion to deny concealed-carry licenses even when the applicant satisfies the statutory criteria, usually because the applicant has not demonstrated cause or suitability for the … license." *Id. at 14-15*. The Court identified Massachusetts as one of only six States, along with the **[*11]** District of Columbia, that had a discretionary "may issue" firearm licensing regime and suggested that these regimes — as "analogues to the 'proper cause' standard" — contained the same or a similar constitutional defect. *Id. at 13-15*. In contrast to these "may issue" schemes, the Court explained that the criteria in a permissible "shall issue" firearm licensing scheme must be based on "narrow, objective, and definite standards" and not on the "appraisal of facts, the exercise of judgment, and the formation of an opinion" (citations omitted). *Id. at 38 n.9*.

Shortly after *Bruen*, and in light thereof, the Legislature amended *§ 131F*. See St. 2022, c. 175, §§ 17B-22. See also Climate Conference and Two Bond Bills, State House News Service, July 21, 2022 (statement of Rep. Michael S. Day on "what we stripped out of our licensing laws in the wake of *Bruen*, which we did to conform with that decision").[5] Of note, the provision that a nonresident license "may" be issued was changed to "shall" be issued. St. 2022, c. 175, § 18. Additionally, discretionary language providing for the

---

[5] We note that each of the remaining "may issue" States has responded similarly to *Bruen* by amending, or otherwise replacing, its discretionary firearm licensing scheme. See *Cal. Penal Code § 26150*, as amended through *2023 Cal. Stat. c. 249 (S.B. 2), § 10*; *Haw. Rev. Stat. §§ 134-2*, *134-9(a)*, as amended by 2023 Haw. Sess. Laws c. 52 (S.B. 1230), §§ 4, 7; *Md. Code Ann., Pub. Safety § 5-306(a)*, as amended through 2023 Md. Laws c. 651 (H.B. 824), § 1; *N.J. Stat. Ann. § 2C:58-4(c)*, as amended through 2022 N.J. Laws c. 131 (Assembly 4769), § 3. Prior to *Bruen*, the District of Columbia's "may issue" licensing regime was permanently enjoined by *Wrenn v. District of Columbia, 864 F.3d 650, 664-667, 431 U.S. App. D.C. 62 (D.C. Cir. 2017)* (striking down *D.C. Code §§ 7-2509.11[1]*, *22-4506[a]-[b]*).

issuance of a nonresident license "subject to such terms and conditions as said colonel [of the State police] may deem proper" was replaced with the condition that a license must be issued "if it appears **[*12]** the applicant is not a prohibited person and is not determined unsuitable to be issued a license as set forth in [*G. L. c. 140, §] 131*." St. 2022, c. 175, § 19.⁶ Finally, in the provision governing renewal of a license, the phrase "if in [the colonel's] discretion" was shortened to "if," thereby providing for the renewal of a license if such renewal is necessary.⁷ St. 2022, c. 175, § 21.

2. Bruen *analysis*. The defendant argues that the pre-*Bruen* licensing scheme under which he was charged was facially unconstitutional because it vested impermissible discretion in the licensing authority to grant or deny firearm licenses to nonresidents.⁸

To succeed on a facial challenge, the defendant must "establish 'that no set of circumstances exists under which [the statute] would be valid.'" *Chief of Police of Worcester v. Holden, 470 Mass. 845, 860, 26 N.E.3d 715 (2015)*, quoting *United States v. Salerno, 481 U.S. 739, 745, 107 S. Ct. 2095, 95 L. Ed. 2d 697 (1987)*. "A statute so questioned is presumed constitutional." *Blixt v. Blixt, 437 Mass. 649, 652, 774 N.E.2d 1052 (2002)*, cert. denied, *537 U.S. 1189, 123 S. Ct. 1259, 154 L. Ed. 2d 1022 (2003)*. "The challenging party bears the burden of demonstrating 'beyond a reasonable doubt that there are no "conceivable grounds" which could support its validity'" (citation omitted). *Gillespie v. Northampton, 460 Mass. 148, 152-153, 950 N.E.2d 377 (2011)*. Conversely, the **Commonwealth** prevails if any application is valid.

At the time of the offense in question, *§ 131F* provided, in relevant part:

> "A temporary license to carry firearms or feeding devices or ammunition therefor, **[*13]** within the **commonwealth**, may be issued by the colonel of state police, or persons authorized by him, to a nonresident or any person not falling within the jurisdiction of a local licensing authority or to an alien that resides outside the **commonwealth** for purposes of firearms competition and subject to such terms and conditions as said colonel may deem proper … ."

---

⁶ It also struck the list of persons under *§ 131F* who were prohibited from obtaining a temporary license, which was separate from a "prohibited person" as defined under *G. L. c. 140, § 131*. St. 2022, c. 175, § 20.

⁷ The amendment also inserted the words "rifles or shotguns" after the word "firearms." St. 2022, c. 175, § 17B.

⁸ The defendant also argues that *§ 131F* provided no opportunity for a nonresident to obtain a firearm for self-defense purposes, instead limiting the issuance of temporary licenses "for purposes of firearms competition." The defendant in *Marquis, 495 Mass. at ___*, asks us to adopt the same interpretation. Because that construction is inconsistent with our long-standing approach to statutory interpretation, we reject it here for the same reasons. See *id.* at (holding, pursuant to last antecedent rule, that firearms competition restriction of *§ 131F* does not apply to nonresidents).

G. L. c. 140, § 131F. With respect to renewal of a temporary nonresident firearm license, § 131F provided: "Such license shall be valid for a period of one year but the colonel may renew such license, if in his discretion, such renewal is necessary." Id.

To evaluate whether a firearm regulation is consistent with the Second Amendment, we apply the two-part Bruen test: "When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Bruen, 597 U.S. at 24. The defendant's possession of a firearm for self-defense purposes is covered by the plain text of the Second Amendment. Id. at 10. Therefore, the determinative question is whether the Commonwealth has demonstrated that the version of its nonresident firearm licensing [*14] scheme in force at the time of the offense was "consistent with this Nation's historical tradition of firearm regulation." Id. at 17.

The nation's historical tradition of firearm regulation, the Commonwealth argues, includes restrictions against nonresidents. Relying on "going armed" laws, surety statutes, and laws preventing dangerous or unfit persons from carrying firearms, the Commonwealth's historical materials mirror those considered by the Supreme Court in Bruen, 597 U.S. at 46-60. While we acknowledge the relevance of those historical regulations to the aspects of the Commonwealth's nonresident firearm licensing scheme that define "prohibited persons," they do not justify the discretion conferred on the State police colonel or his designee to deny a license to an otherwise qualified, law-abiding citizen. Id. at 38-39.

As discussed *supra*, in Bruen, 597 U.S. at 13-15, the Supreme Court indicated that such discretionary "may issue" firearm licensing regimes are presumptively invalid.[9] See id. at 38 n.9 (separating Massachusetts and other "may issue" jurisdictions from forty-three "shall issue" jurisdictions and explaining "nothing in our analysis should be interpreted to suggest the unconstitutionality of the … 'shall issue' licensing regimes"). [*15] See also Maryland Shall Issue, Inc. v. Moore, 116 F.4th 211, 229 (4th Cir. 2024), cert. denied, U.S. Supreme Ct., No. 24-373 (Jan. 13, 2025) (holding that uncertainty caused by "Bruen's invalidation of 'may-issue' licensing laws" does not extend to "shall-issue" licensing laws); McRorey v. Garland, 99 F.4th 831, 836-837 (5th Cir. 2024) (distinguishing

---

[9] We note that the phrase "may issue" does not automatically render a firearm licensing scheme unconstitutional. The Bruen Court suggested that the Connecticut, Delaware, and Rhode Island firearm licensing schemes were constitutionally permissible, despite the discretionary criteria present in each, because of the limits in place on the licensing officer's discretion. See Bruen, 597 U.S. at 13 n.1 ("Three States — Connecticut, Delaware, and Rhode Island — have discretionary criteria but appear to operate like 'shall issue' jurisdictions"). Each of these schemes is distinguishable from § 131F. The Commonwealth's nonresident firearm licensing scheme bears no resemblance to the scheme in Delaware, where a license is not required for open carry. See Del. Code Ann. tit. 11, § 1441. For Connecticut and Rhode Island, State supreme court decisions narrowly interpreted the discretionary provisions of their respective firearm licensing schemes. See Dwyer v. Farrell, 193 Conn. 7, 9 n.2, 12 (1984) (limiting criteria in "suitable person" determinations for firearm licenses); Gadomski v. Tavares, 113 A.3d 387, 392 (R.I. 2015) (holding that suitability requirement does not require demonstration of need).

unconstitutional "may-issue" regimes from "shall-issue" regimes with background check requirements).

Not only did the version of § 131F in force at the time of the offense contain "may issue" language, but it also allowed the licensing official to deny a temporary license to a nonresident based on "such terms and conditions as [the] colonel may deem proper." G. L. c. 140, § 131F. These provisions place § 131F squarely into the category of firearm restrictions that the Supreme Court rejected in Bruen, 597 U.S. at 13-15, 38 n.9. Licensing schemes that confer on officials the unfettered discretion to deny licenses even where the applicant is otherwise qualified do not find support in this nation's history of firearm regulations and cannot be upheld. *Id.*

Because the **Commonwealth** has failed at step two of the Bruen analysis, we hold that the version of the **Commonwealth**'s nonresident firearm licensing scheme in effect at the time of the offense violates the Second Amendment. Accordingly, as the defendant was charged with violating § 10 (a) after the Supreme Court issued Bruen, he is entitled to dismissal of that **[*16]** charge.

3. *Severability*. The **Commonwealth** asks us to sever any impermissible provisions of its scheme. "When a court is compelled to pass upon the constitutionality of a statute and is obliged to declare part of it unconstitutional, the court, as far as possible, will hold the remainder to be constitutional and valid, if the parts are capable of separation and are not so entwined that the Legislature could not have intended that the part otherwise valid should take effect without the invalid part." Boston Gas Co. v. Department of Pub. Utils., 387 Mass. 531, 540, 441 N.E.2d 746 (1982), quoting Opinion of the Justices, 330 Mass. 713, 726, 113 N.E.2d 452 (1953). However, "[i]*f* the court is unable to know whether the Legislature would have enacted a particular bill without the unconstitutional provision, it will not sever the unconstitutional provision, but will strike the entire statute." Mayor of Boston v. Treasurer & Receiver Gen., 384 Mass. 718, 725, 429 N.E.2d 691 (1981). To determine whether a statute is capable of separation, we must consider whether the severed portion "is not so connected with and dependent upon other clauses of the act as to constitute an essential factor of the whole." Worcester County Nat'l Bank, petitioner, 263 Mass. 394, 400, 161 N.E. 797 (1928). See K.J. v. Superintendent of Bridgewater State Hosp., 488 Mass. 362, 373-374, 173 N.E.3d 363 (2021).

As recited above, the previous version of § 131F provided:

> "A temporary license to carry firearms or feeding devices or ammunition therefor, within the **commonwealth**, *may be issued* by the colonel of state police, or persons authorized **[*17]** by him, to a nonresident or any person not falling within the jurisdiction of a local licensing authority or to an alien that resides outside the **commonwealth** for purposes of firearms competition and *subject to such terms and*

*conditions as said colonel may deem proper* … . Such license shall be valid for a period of one year but the colonel may renew such license, *if in his discretion*, such renewal is necessary." (Emphases added.)

G. L. c. 140, § 131F. The constitutional defect in § 131F is found, collectively, in the "may be issued" language, the colonel's discretion to deny an application based on "such terms and conditions as said colonel may deem proper," and in the licensing official's discretion to grant or deny renewal applications. *Id.*

The **Commonwealth** cites to State v. Wade, 476 N.J. Super. 490, 301 A.3d 393 (App. Div. 2023), in support of its request to sever the impermissible portions of § 131F. In Wade, a New Jersey court identified the "proper cause" analogue that existed in the State's pre-Bruen firearm licensing statute and concluded that it was severable from the statute. Wade, supra at 511. Unlike the introductory phrases and repeated references to the colonel's discretion that exist in § 131F, the "justifiable need" provision in the New Jersey licensing statute was the only provision **[*18]** at issue, and it existed independently from other criteria in the statutory regime. Wade, supra at 509. As such, its removal nonetheless left a coherent and complete law. *Id.* The same cannot be said for the **Commonwealth**'s nonresident firearm licensing scheme, where the remainder of the statute is dependent on the invalid portions.

Under the pre-amendment version of the **Commonwealth**'s nonresident firearm licensing scheme, a person's right to carry was treated as a privilege capable of being conferred or revoked regardless of whether the applicant fell into one of the "prohibited person" categories. At every step in the licensing process, the **Commonwealth** had the authority to deny a nonresident applicant his constitutional right based on "such terms and conditions as [the] colonel may deem proper." G. L. c. 140, § 131F. That authority, which the Supreme Court rejected in Bruen, 597 U.S. at 13-15, 38 n.9, was an essential factor of the prior nonresident firearm licensing scheme. Without ruminating as to what permissible language in a "may issue" licensing statute would look like, we hold that § 131F is not capable of separation because the discretionary language was so entwined in the licensing procedure that its removal would not result in a constitutionally **[*19]** enforceable law.

*Conclusion*. Notwithstanding the outcome in this case, we emphasize that the Second Amendment right to bear arms is not absolute. See United States v. Rahimi, 602 U.S. 680, 702, 144 S. Ct. 1889, 219 L. Ed. 2d 351 (2024) (government may temporarily disarm "individual[s] found by a court to pose a credible threat to the physical safety of another"); Bruen, 597 U.S. at 38 n.9 ("it appears that these shall-issue regimes, which often require applicants to undergo a background check or pass a firearms safety course, are designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law abiding, responsible citizens'" [citation omitted]); Heller, 554 U.S. at 626 ("From Blackstone through the [Nineteen]th-[C]entury cases, commentators and courts routinely explained

that the right was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose"); *Maryland Shall Issue, Inc., 116 F.4th at 229* (upholding shall-issue licensing regime requiring background checks and firearm safety training). Our holding today does not, as the **Commonwealth** suggests, preclude it from requiring firearm licenses for persons within its borders. See *Marquis, 495 Mass. at ___.* To be consistent with the *Second Amendment*, the **Commonwealth**'s nonresident firearm licensing scheme cannot vest an official with the discretion to deny a license to a qualified applicant. The defendant **[*20]** was charged under a firearm licensing scheme that did just that. This manner of firearm restriction is no longer permissible. *Bruen, supra.* Accordingly, the allowance of the defendant's motion to dismiss is affirmed.

*So ordered*.

---

**End of Document**