No. 23-3874

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

————

**GARRY MATTHEWS, et al.,**
Plaintiffs and Appellants,

v.

**CITY OF LOS ANGELES, et al.,**
Defendants and Appellees.

_____

Appeal from the United States District Court
for the Central District of California
Case No. 8:22-cv-02944-FLA-PD
Hon. Fernando L. Aenlle-Rocha

_____

## CITY OF LOS ANGELES'S PETITION FOR REHEAING
_____

**HYDEE FELDSTEIN SOTO**, City Attorney (SBN 106866)
**DENISE C. MILLS**, Chief Deputy City Attorney (SBN 191992)
**KATHLEEN A. KENEALY**, Chief Asst. City Attorney (SBN 212289**)**
**SHAUN DABBY JACOBS**, Supervising Asst. City Atty. (SBN 185073)
**MERETE RIETVELD**, Deputy City Attorney (SBN 252069)
200 North Spring Street, City Hall 14th Floor
Los Angeles, California 90012
(213) 421-2228 | Merete.Rietveld@lacity.org

*Attorneys for Defendants and Appellees*
CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT,
AND LOS ANGELES BOARD OF POLICE COMMISSIONERS

**Table of Contents**

INTRODUCTION ..................................................................5

RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ............7

ARGUMENT ......................................................................12

    I.    Rehearing is necessary to address the Memorandum's inconsistency with Supreme Court and Ninth Circuit precedent. .............................................................12

    II.   Rehearing is necessary to correct a factual misunderstanding. ...............................................17

    III.   Rehearing is required to correct an unfounded conclusion that the City's licensing policy "caused" the arrests. ...........21

CONCLUSION .....................................................................23

# Table of Authorities

**Cases**
**Page(s)**

*Cabrera v. City of Huntington Park,*
    159 F.3d 374 (9th Cir.1998) ................................................................ 11

*California River Watch v. City of Vacaville,*
    39 F.4th 624, fn. 3 (9th Cir. 2022) ...................................................... 15

*City of Los Angeles v. Heller,*
    475 U.S. 796 (1986) ............................................................................. 13

*Dubner v. City and County of San Francisco,*
    266 F.3d 959 (9th Cir. 2001) ............................................................... 11

*Ewing v. City of Stockton,*
    588 F.3d 1218 (9th Cir. 2009) ............................................................. 18

*Gerritsen v. City of Los Angeles,*
    994 F.2d 570 (9th Cir. 1993) .......................................................... 13, 14

*Grossman v. City of Portland,*
    33 F.3d 1200 (9th Cir. 1994) ...................................................... passim

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ............................................................................. 11

*Hart v. Parks,*
    450 F.3d 1059 (9th Cir. 2006) ........................................................ 10, 15

*Johnson v. Dekalb County,*
    391 F.Supp.3d 1224 (N.D. Ga. 2019) .................................................. 19

*Kassas v. State Bar of Calif.,*
    49 F.4th 1158 (9th Cir. 2022) ............................................................. 18

*Monell v. Department of Social Services of the City of New York*,
    436 U.S. 658 (1978) .................................................................. 6, 8, 18

*People v. Mosqueda*,
    97 Cal.App.5th 399 (Cal. Ct. App. 2023) ............................................ 20

*People v. Rodriguez*,
    171 N.Y.S.3d 802 (Sup. Ct. NY Cty. 2022) ........................................ 17

*Pierson v. Ray*,
    386 U.S. 547 (1967) .................................................................... 10, 11

*Sandoval v. County of Sonoma*,
    912 F.3d 509 (9th Cir. 2018) ............................................................ 12

*Shuttlesworth v. Birmingham*,
    394 U.S. 147 ................................................................................ 16

*State Rifle & Pistol Assn., Inc. v. Bruen*,
    142 S.Ct. 2111 (2022) ............................................................ 7, 16, 17

*Van Ort v. Estate of Stanewich*,
    92 F.3d 831 (9th Cir.1996) ............................................................... 18

## Statutes

42 U.S.C. § 1983 ......................................................................... passim
Cal. Pen. Code, § 25400 ............................................................. 6, 11, 14
Cal. Pen. Code, § 25850 ............................................................. 6, 11, 14
Cal. Pen. Code, § 26150 ..................................................................... 15
Cal. Pen. Code, § 26150, subd. (a) .......................................................... 6
Cal. Pen. Code, § 26155 ..................................................................... 15

## INTRODUCTION

This Court should grant rehearing because the unpublished Memorandum reaches a legal conclusion inconsistent with Supreme Court and Ninth Circuit case law, and is based on a misunderstanding of the facts. This case arises from Plaintiffs' arrests for carrying concealed and loaded weapons in violation of state law. Plaintiffs' complaint alleged the arrests violated 42 U.S.C. § 1983 because the City maintained an unconstitutional concealed weapon licensing policy which prevented them from obtaining a license to lawfully carry a concealed or loaded weapon in public. The District Court dismissed the action, and this Court reversed as to the cause of action arising from Plaintiffs Dominic Hunn and Jamar Hearns' arrests.[1]

The City asks this Court to grant rehearing on three grounds: First, the Memorandum held that, contrary to established law, Plaintiffs alleged a constitutional violation arising from an arrest made with probable cause pursuant to valid state laws because "if" the City

---

[1] This Court also affirmed the District Court's order to the extent it dismissed as time-barred Plaintiff Garry Matthews's cause of action for violation of the Fourteenth Amendment. The City does not challenge this portion of the order.

had a different policy, the officers "would have" lacked probable cause. Memo. at 3–4. Second, the Memorandum erroneously found that the operative complaint alleged the Plaintiffs "would have" obtained licenses "if" the City had a different policy, however, the complaint did not allege such facts. Third, the Memorandum holds that the City's policy "caused" their arrests for violation of state law because "if" the City had a different policy, Plaintiffs "would have" such licenses, and the officers "would have" lacked probable cause to arrest them. Memo. at 3–4. This hypothetical situation is not logically consistent because "if" Plaintiffs had licenses exempting them from prohibitions on carrying concealed and loaded weapons in public, why would police officers arrest them for violating these prohibitions? Moreover, this hypothetical still does not show that the City's licensing policy was "the moving force" behind their arrests under state law as required to state a § 1983 cause of action under *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978).

For these reasons, the City asks this Court to grant rehearing.

## RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the 2020 arrest of plaintiff Dominic Hunn for carrying a concealed firearm, and the 2022 arrest of plaintiff Jamar Hearns for carrying a loaded firearm in violation of California Penal Code sections 25400 and 25850. When the LAPD officers arrested Plaintiffs, California state law provided that gun owners who obtain a license from the local county sheriff are exempt from these laws. Cal. Pen. Code § 26150, subd. (a). To obtain such a license, applicants had to meet several requirements under state law, including passing a background check, completing a firearm safety course, being of "good moral character," and showing "good cause." Pen. Code §§ 26150, subd. (a)(1), (2), (4); 26155, subd. (a)(1), (4). The City also had a licensing policy requiring a showing of "good cause." 1-ER-129.

Hunn and Hearns did not have concealed carry licenses. The day after Hearns's arrest, the United States Supreme Court filed *State Rifle & Pistol Assn., Inc. v. Bruen*, 142 S.Ct. 2111 (2022) (*Bruen*), holding that government entities may not condition the issuance of a concealed carry license on a discretionary finding of an individual's showing of "proper cause." *Id.* at 2122–2123. The California Attorney General

7

immediately informed law enforcement agencies that they could no longer enforce "good cause" licensing requirements. 1-ER-10, fn. 2.

Plaintiffs filed a class action case against the City of Los Angeles under 42 U.S.C. § 1983 asserting their arrests violated the Second Amendment because *Bruen* invalidated the City's licensing policy. Dkt 26.1 at 129:19-23. Although LAPD officers arrested them for violating state law, Plaintiffs sought damages for "being arrested under [the City's] unconstitutional policy." 1-ER-145:8–10, 150. Plaintiffs did not allege that Plaintiffs met other requirements for a concealed carry license (i.e., passing a background check, completion of the firearm safety course), which the *Bruen* decision did not invalidate.

The City moved to dismiss, arguing that *Bruen*'s invalidation of the licensing policy's "good cause" requirement did not invalidate state laws prohibiting possession of a concealed or loaded weapon. Thus, no alleged facts showed a § 1983 violation because plaintiffs may not base a constitutional violation on arrests made pursuant to valid state laws. 1-ER-96. In the same vein, the City's licensing policy was not the "moving force" behind Plaintiffs' arrests as required by *Monell*, 436 U.S. 658. 1-ER-96–97.

8

The District Court agreed, holding "*Bruen* did not create, and Plaintiffs cite no authority establishing, a constitutional right to carry publicly a concealed firearm without a license. ... Plaintiffs argue that, because Defendants' application of the 'good cause' requirement is now unconstitutional following *Bruen*, they were permitted to disregard California's licensing requirement completely. That is not what *Bruen* commands.... Plaintiffs have failed to allege a constitutional right of which they were deprived, and therefore, have failed to plead *Monell* liability." 1-ER-10–11.

On appeal, Plaintiffs asserted they "do not [] challenge the constitutionality of any aspect of the California regulatory scheme," but that they stated a constitutional violation because their arrests constituted an "enforcement" of the City's licensing policy. Op. Br. 13, 20. They argued they were entitled, due to the City's invalid licensing policy, to "ignore" the law regulating firearms and "engage with impunity" in carrying concealed weapons in public. Op. Br. 3, 11-12, & 40.

The City, in its Answering Brief, argued that Plaintiffs cannot state a constitutional violation based on an arrest made with probable

9

cause pursuant to valid state laws. Ans. Br. 18. In reply, Plaintiffs did not respond to this argument but broadly asserted the City "violated the Second Amendment … by arresting them just for engaging in the constitutionally protected conduct of carrying a concealed handgun in public …." Op. Br. 8.

This Court reversed on a ground it raised *sua sponte*. This Court held that Plaintiffs adequately alleged that "*if* Los Angeles had a constitutional shall-issue licensing regime … Hunn and Hearns *would have* had such licenses, and the officers *would have* lacked probable cause to arrest them. Accordingly, Hunn and Hearns adequately allege that Los Angeles's no-issue policy caused their arrests."[2] Memo. at 4 (emphasis added).

In other words, this Court reasoned that a plaintiff can state a constitutional violation arising from an arrest made with probable cause pursuant to a valid state law *if* the officers *would have* lacked probable cause under a different set of facts. Plaintiffs did not make this

---

[2]     This Court also reversed on the ground that Plaintiffs have standing, a point which City did not dispute, and the District Court's order did not address.

argument, and it is contrary to long-established Ninth Circuit case law holding that probable cause to arrest the plaintiff pursuant to valid laws is an absolute defense to a claim for false arrest pursuant to Section 1983. *Pierson v. Ray*, 386 U.S. 547 (1967); *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006); *Grossman v. City of Portland*, 33 F.3d 1200, 1203–1204 (9th Cir. 1994).

This Court also concluded that the "operative complaint plausibly alleges that Hunn and Hearns would have obtained CCW licenses if Los Angeles had a constitutional policy." Memo at 3. Plaintiffs' complaint did not allege this. And Plaintiffs took a different position in their briefing: instead of claiming they could have met all the requirements for a concealed carry license (other than the invalidated "good cause" requirement), Plaintiffs argued that they were entitled to "ignore" laws regulating the possession of concealed and loaded weapons "with impunity." Op. Br. 4, 11, 12, 40.

Based on the above legal error and misunderstanding of the alleged facts, this Court reversed the District Court's order dismissing Plaintiff's § 1983 claim for violation of the Second Amendment, and

11

remanded the matter. The City respectfully asks this Court to reconsider this ruling.

## ARGUMENT

### I. Rehearing is necessary to address the Memorandum's inconsistency with Supreme Court and Ninth Circuit precedent.

The City is not aware of any case holding that a plaintiff can state a constitutional violation based on an arrest made with probable cause under valid state laws. Yet the Memorandum held that an arrest *can* give rise to a constitutional violation "if" the officers "would have" lacked probable cause under a different set of facts. Supreme Court and Ninth Circuit hold to the contrary. The courts have repeatedly held that to state a § 1983 claim arising from an arrest, the plaintiff must demonstrate a lack of probable cause or the unconstitutionality of the law justifying the arrest. Given the inconsistency of the Memorandum's holding with established law, rehearing is warranted.

The existence of probable cause or other justification vitiates a claim for unlawful arrest. *Pierson v. Ray*, 386 U.S. 547, 555 (1967) partially overruled on other grounds, *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001); *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380

(9th Cir.1998) ("[t]o prevail on [a] section 1983 claim for false arrest ... [the plaintiff] would have to demonstrate that there was no probable cause to arrest him."). Where a § 1983 plaintiff's constitutional claim stems from the alleged unconstitutionality of the law "justifying" his arrest, a plaintiff may state a constitutional injury based on an arrest for violating that law. *Grossman v. City of Portland*, 33 F.3d 1200, 1203 (9th Cir. 1994).

Here, it is undisputed that the officers had probable cause to arrest Hunn and Hearns under Penal Code sections 25400 and 25850, *and* that these statutes are valid state laws. In the City's Answering Brief, the City made this point, arguing that Plaintiffs cannot state a constitutional violation based on an arrest made with probable cause pursuant to valid state laws. Ans. Br. 18. Plaintiffs did not respond to this argument in their reply but broadly asserted that the "enforcement of the enforcement statutes [sic] against Plaintiffs based on the City Defendants' unconstitutional licensing scheme and 'no issue' [concealed carry] policy was thus not caused by state law, but by the defendants' policies." Reply at 22.

In support for the above, Plaintiffs cited to *Sandoval v. County of Sonoma*, 912 F.3d 509 (9th Cir. 2018) where the plaintiffs sued a county for impounding their vehicles pursuant to a Vehicle Code section. *Id*. at 513. The County argued it could not be liable under § 1983 merely for enforcing state law. *Id*. at 517. The Ninth Circuit held the County did *not* enforce state law because they misinterpreted the Vehicle Code: thus, "[t]he impoundment of the plaintiffs' vehicles was *not* caused by state law, but the defendant's policies of impounding vehicles…." *Ibid*. Here, Plaintiffs cite to this quote, but at the same time, expressly does *not* challenge the validity of the state laws under which they were arrested or argue that the City had misinterpreted those state laws.

Plaintiffs also cited to *Grossman v. City of Portland*, 33 F.3d 1200, 1209 fn. 18 (9th Cir. 1994), for the principle that, "Where [] a local police officer enforces an unconstitutional ordinance, relief lies against the City." Reply at 20. As explained in the Answering Brief, *Grossman* involved a plaintiff cited for violating a city ordinance, and the plaintiff sued alleging the ordinance was unconstitutional. Here, by contrast, LAPD officers arrested Plaintiffs for violating state laws which Plaintiffs do *not* challenge as unconstitutional.

14

*Grossman*, in fact, pointed to the holding in *City of Los Angeles v. Heller,* 475 U.S. 796 (1986), that "when a person sues under § 1983 for an allegedly unconstitutional arrest the city cannot be held liable absent a constitutional violation by the arresting officer," and the "finding of probable cause and reasonable force obviated the plaintiff's constitutional claim, because it meant that the plaintiff had suffered no constitutional injury." *Grossman*, 33 F.3d at 1203, citing *Heller*, 475 U.S. at 797. *Grossman* then distinguished *Heller*: "Here, by contrast, [the plaintiff's] constitutional claim does not stem from an absence of probable cause to arrest, but from the alleged unconstitutionality of the ordinance justifying the arrest. … [I]f the ordinance is unconstitutional, [the plaintiff] suffered constitutional injury despite the ordinance's applicability to his conduct." *Grossman* at 1203–1204.

*Grossman* also analogized to *Gerritsen v. City of Los Angeles*, 994 F.2d 570 (9th Cir. 1993), where the plaintiff sued the City under Section 1983 alleging a City permit scheme for distributing handbills violated the First Amendment. *Grossman*, 33F.3d at 1294; *Gerritsen* at 573–574. The Ninth Circuit in *Gerritsen* upheld the § 1983 action based on the

15

enforcement of the unconstitutional permit requirement against the plaintiff. *Gerritsen* at 580.

Here, unlike *Grossman* and *Gerritsen*, Plaintiffs do not allege LAPD officers arrested them for violating an unconstitutional law. Plaintiffs were arrested for violating Penal Code sections 25400 and 25850 which they expressly do not challenge. Op. Br. 20. Instead, Plaintiffs assert that a related City policy was invalid, and that their arrests for violating the Penal Code constituted an enforcement of the City's policy. *Grossman* and *Gerritsen* are distinguishable because, here, the targeted unconstitutional policy was not the law enforced against Plaintiffs. Plaintiffs do not cite to any case holding that a plaintiff may bring a § 1983 claim based on an arrest pursuant to valid state law if a related local policy is unconstitutional.

In reversing the District Court's order, this Court *sua sponte* reasoned that Plaintiffs adequately alleged a constitutional violation arising from their arrests because the officers *would have* lacked probable cause *if* the City had a different licensing policy. Plaintiffs did not raise this argument in their briefs, and the City did not have a chance to respond to it. More importantly, this holding is contrary to

long-established Supreme Court and Ninth Circuit case law establishing that probable cause to arrest the plaintiff for violating a valid law is an absolute defense to any claim pursuant to § 1983. *Pierson v. Ray*, 386 U.S. 54; *Hart v. Parks*, 450 F.3d 1059, 1069 (9th Cir. 2006); *Grossman*, 33 F.3d at 1204.

For these reasons, this Court should grant rehearing. See *California River Watch v. City of Vacaville*, 39 F.4th 624, 633, fn. 3 (9th Cir. 2022) (granting rehearing based on mistake of law).

## II. Rehearing is necessary to correct a factual misunderstanding.

The Memorandum held that "if" the City had a different licensing policy, Hunn and Hearns "would have" a concealed carry license and the officers "would have" lacked probable cause to arrest them. Memo. at 4. This Court based this holding on the finding that the "operative complaint plausibly alleges that Hunn and Hearns would have obtained CCW licenses if Los Angeles had a constitutional policy." *Id.* at 3. The operative First Amended Complaint (FAC) did not allege this.

The FAC alleged that the City's licensing policy was so restrictive "that there were no actions that the Plaintiffs or the other class members could have taken during the relevant time period that would

17

have allowed them to carry a handgun for general self-defense…" 1-ER-129. The FAC did not allege that Plaintiffs "would have" applied for a license under a different policy, or that Plaintiffs met the myriad other conditions for a concealed carry license. See Pen. Code, §§ 26150, 26155[3] (requiring applicants pass a background check, complete a firearm safety course, and be of "good moral character).

On the contrary, instead of alleging that Plaintiffs met or could have met state licensing requirements (other than "good cause") such that they were eligible for a license and would have applied for one but for the City's invalid "good cause" requirement, Plaintiffs asserted on pages 4, 11, 12 and 40 of their opening brief that the entire plaintiff class was entitled to "ignore" the law and "engage in impunity" in unrestricted possession of concealed and loaded weapons in public. Op. Br. 4, 11–12, 40.

In support of this position, Plaintiffs claimed that "[t]he Supreme Court itself in *Bruen* confirmed a longstanding Supreme Court precedent that 'a person faced with such an unconstitutional licensing

---

[3] The City cites to the versions of these statutes that were in effect at the time of Plaintiffs' arrests.

law may ignore it and engage with impunity in the exercise of the right of free expression for which the law purports to require a license.' " Op. Br. 11–12. Plaintiffs mis-cited to footnote 9 in *Bruen* as "quoting" *Shuttlesworth v. Birmingham*, 394 U.S. 147 for this principle. But *Bruen* did not endorse this quote from *Shuttlesworth,* a First Amendment case. Instead, *Bruen* merely cited *Shuttlesworth* for the point that licensing regimes which require applicants to undergo a background check or pass a firearms safety course are valid because they "contain only 'narrow, objective, and definite standards' guiding licensing officials." *Bruen*, 142 S.Ct. at 2138, fn. 9, quoting *Shuttlesworth*, 69 S.Ct. 935. This is a far cry from Plaintiffs' claim that *Bruen*'s "citation to *Shuttlesworth* makes clear that this First Amendment principle"—namely, that "a person faced with such an unconstitutional licensing law may ignore it" —"is also applicable to Second Amendment cases." Op. Br. 40.

No court has endorsed Plaintiffs' position, that they were entitled to "ignore" state prohibitions on carrying concealed and loaded weapons in public because a locality had an invalid licensing policy. And other

courts have expressly rejected it. In *People v. Rodriguez,* 171 N.Y.S.3d 802 (Sup. Ct. NY Cty. 2022), the court held:

> [D]efendant's quarrel lies not with the licensing scheme, but with the statutes criminalizing unlicensed possession. In other words, he does not seek to demonstrate either that the licensing law was unconstitutional — we already know it was — or that it was unfairly applied to him — it wasn't applied to him at all — but that the Second Amendment itself, the right to bear arms, confers an absolute entitlement to possess concealed firearms in public, license be damned. But contrary to defendant's contention, *Bruen,* ... did not hold that the State is powerless to criminalize the unlicensed possession of firearms on city streets.

*Id.* at 805. Here, the Memorandum implicitly accepts this dangerous position, and expressly makes a finding the record does not support: that Plaintiffs' "operative complaint plausibly alleges that Hunn and Hearns would have obtained [concealed carry] licenses if Los Angeles had a constitutional policy." Memo. at 3.

Rehearing is necessary to correct this factual misunderstanding. See *Kassas v. State Bar of Calif.*, 49 F.4th 1158, 1160 (9th Cir. 2022) (rehearing appropriate when the court's decision was based on a misunderstanding of the material facts).

### III.   Rehearing is required to correct an unfounded conclusion that the City's licensing policy "caused" the arrests.

The Memorandum holds that the City's policy "*caused* their arrests" for violation of state law because "if" the City had a different policy, Plaintiffs "would have had" such licenses, and then the officers "would have" lacked probable cause to arrest them. Memo. at 3–4 (emphasis added). This hypothetical is not consistent with logic. "If" Plaintiffs had licenses exempting them from prohibitions on carrying concealed and loaded weapons in public, why would police officers arrest them for violating these prohibitions? What this hypothetical scenario does not show is that, here, the City's licensing policy "caused" the arrests as required by *Monell*, 436 U.S at 694.

*Monell* holds that to be liable under 42 U.S.C. § 1983, a plaintiff must show that a government entity's policy, practice, or custom is the "moving force" behind a violation of constitutional rights. *Monell*, 436 U.S at 694. There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation," and the policy must be "the proximate cause of the section 1983 injury." *Ewing*

*v. City of Stockton*, 588 F.3d 1218, 1235 (9th Cir. 2009); *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 837 (9th Cir.1996).

The City's Answering Brief asserted that no "direct causal link" existed between the City's licensing policy, which set conditions for a concealed carry license, and Plaintiffs' arrests, which were for possession of concealed or loaded weapons in public in violation of the Penal Code. As the LAPD officers arrested Plaintiffs for violating *state law*, the City policy was not the moving force behind their arrest: Plaintiffs did not violate the policy, which governs the licensing process, but rather state law criminalizing possession of a firearm. Thus, the policy was only "tangentially related" to Plaintiffs' arrests. See *Johnson v. Dekalb County*, 391 F.Supp.3d 1224 (N.D. Ga. 2019) (no "causal link" existed between county's disorderly conduct ordinance and their arrests for violating state law criminalizing disorderly conduct).

Plaintiffs argued that the officers exercised their discretion to arrest them, "interpret[ing] and implement[ing] the state licensing scheme to impose a total ban on the issuance of [concealed carry licenses] and thus a total ban on the carriage of handguns in public." Reply at 24. But the officers did not need to interpret or implement

22

state or City requirements for a license; Plaintiffs did not *apply* for a license and the officers were not charged with evaluating whether Plaintiffs qualified for a license under the several statutory and City requirements. Instead, the officers merely applied the Penal Code in arresting Plaintiffs, finding probable cause to arrest Plaintiffs for possessing a concealed or loaded weapon in public without qualifying for one of the "numerous statutory exceptions to these prohibitions." *People v. Mosqueda*, 97 Cal.App.5th 399, 405 (Cal. Ct. App. 2023).

Because probable cause supported the arrests, and the state laws Plaintiffs violated are constitutional, the City's licensing policy's unconstitutional "good cause" requirement was not the proximate cause for Plaintiffs' arrests. The Memorandum's hypothetical reasoning that "if" the City had a different policy, the Plaintiffs "would have" applied for a license, and any arrest "would have" lacked probable cause does not show a "direct causal link" between the City's policy and the arrests that actually took place.

This Court should grant rehearing to correct this error.

## CONCLUSION

Plaintiffs' position that the Plaintiff class was entitled to "ignore" state law and "engage with impunity" in carrying concealed and loaded

weapons in public is dangerous and unsupported by case law. *Bruen* plainly did not hold that an invalid concealed carry licensing policy gave authorization to all citizens to carry concealed and loaded weapons without being regulated by the state, and Plaintiffs misrepresented *Bruen*'s reference to *Shuttleworth* in arguing that *Bruen* endorsed such lawless behavior. Op. Br. 40.

Rehearing is required to correct the Memorandum's implicit endorsement of the claim that plaintiff class members are entitled to "ignore" the law, and to correct the Memorandum's holding inconsistent

*///*

with established law and based on a misunderstanding of the facts. The City respectfully petitions this Court for rehearing to correct the Memorandum's legal errors and factual misunderstanding.

Respectfully submitted,

Dated: August 25, 2025

LOS ANGELES CITY ATTORNEY'S OFFICE
Hydee Feldstein Soto
Denise C. Mills
Kathleen A. Kenealy
Shaun Dabby Jacobs

/s/ Merete Rietveld
Merete Rietveld

*Attorneys for Defendants and Appellees*
CITY OF LOS ANGELES, LOS ANGELES POLICE DEPARTMENT, AND LOS ANGELES BOARD OF POLICE COMMISSIONERS